**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

District of Delaware

Case number *(if known)*: _____ Chapter 15

☐ Check if this is an
amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

| | |
|---|---|
| 1. **Debtor's name** | Spark Networks, Inc. |

2. **Debtor's unique identifier**

**For non-individual debtors:**

☑ Federal Employer Identification Number (EIN)   2 0 –8 9 0 1 7 3 3

☐ Other _____. Describe identifier _____.

**For individual debtors:**

☐ Social Security number:   xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN): **9** xx – xx – ____ ____ ____ ____

☐ Other _____. Describe identifier _____.

3. **Name of foreign representative(s)**

Adrian Frankum

4. **Foreign proceeding in which appointment of the foreign representative(s) occurred**

German StaRUG Proceeding

5. **Nature of the foreign proceeding**

*Check one:*

☐ Foreign main proceeding
☑ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

6. **Evidence of the foreign proceeding**

☐ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☑ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.
Order appointing restructuring officer; see Exhibit 2. Resolution authorizing participation in StaRUG proceeding and appointing Foreign Representative; see Exhibit 3.  Restructuring Plan; see Exhibit 4.

7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)
☑ Yes

| Debtor | Spark Networks, Inc. | Case number (if known) |
|--------|----------------------|------------------------|
|        | Name                 |                        |

**8.  Others entitled to notice**

Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

**9.  Addresses**

**Country where the debtor has the center of its main interests:**

United States

**Debtor's registered office:**

251 Little Falls Drive
Number      Street

P.O. Box

Wilmington, New Castle        DE      19808
City            State/Province/Region      ZIP/Postal Code

United States
Country

**Individual debtor's habitual residence:**

Number      Street

P.O. Box

City            State/Province/Region      ZIP/Postal Code

Country

**Address of foreign representative(s):**

485 Lexington Avenue, 10th Floor
Number      Street

P.O. Box

New York                        NY      10017
City            State/Province/Region      ZIP/Postal Code

United States
Country

**10.  Debtor's website** (URL)

https://www.spark.net

**11.  Type of debtor**

*Check one:*

☑  Non-individual (*check one*):

　　☑  Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

　　☐  Partnership

　　☐  Other.  Specify: _____

☐  Individual

Debtor    Spark Networks, Inc._____    Case number *(if known)*_____
              Name

| | |
|---|---|

**12. Why is venue proper in *this district*?**

*Check one:*

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✘ /s/ Adrian Frankum_____    Adrian Frankum_____
    Signature of foreign representative              Printed name

Executed on    11/17/2023_____
                      MM  / DD / YYYY

✘ _____    _____
    Signature of foreign representative              Printed name

Executed on    _____
                      MM  / DD / YYYY

**14. Signature of attorney**

✘ /s/ Zachary I. Shapiro_____    Date    11/17/2023_____
    Signature of Attorney for foreign representative          MM   / DD / YYYY

Zachary I. Shapiro_____
Printed name
Richards, Layton & Finger, P.A._____
Firm name
One Rodney Square, 920 North King Street_____
Number        Street
Wilmington_____    DE        19801_____
City                                                           State        ZIP Code

(302) 651-7819_____    shapiro@rlf.com_____
Contact phone                                          Email address

5103_____    DE_____
Bar number                                               State

## Exhibit 1

**Corporate Ownership Statement**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| SPARK NETWORKS SE, <u>et al.</u>,[1] | Case No. 23-_____ (___) |
| Entities that are subject to a foreign proceeding. | (Joint Administration Requested) |

**CORPORATE OWNERSHIP STATEMENT AND LIST OF EQUITY
INTEREST HOLDERS PURSUANT TO FED. R. BANKR. P. 1007(a)(4) AND 7007.1**

Pursuant to Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Spark Networks, Inc. states as follows:

| Debtor | Name and Address of Equity Interest Holder | Percentage of Interests Held |
|---|---|---|
| Spark Networks, Inc. | Spark Networks SE<br>Kohlfurter Str. 41/43<br>10999 Berlin | 100% |

---

[1]     The debtors in these chapter 15 cases are the following three entities (the last four digits of their respective federal taxpayer identification numbers, if any, follow in parentheses):  Spark Networks SE (N/A), a stock corporation in the form of a *Societas Europaea* organized under German law; Spark Networks, Inc. (1733), a Delaware corporation; and Zoosk, Inc. (3601), a Delaware corporation.  The Chapter 15 Debtors' noticing address in these Chapter 15 Cases is Kohlfurter Str. 41/43, 10999 Berlin.

**Exhibit 2**

**Order Appointing Restructuring Officer (with English translation)**

Abschrift

## Amtsgericht Charlottenburg
Restrukturierungsgericht
Az.:    36s RES 6525/23



Eingegangen

31.10.2023

Brinkmann & Partner mbB

## Beschluss

In der Restrukturierungssache

**Spark Networks SE**,
Kohlfurter Straße 41 / 43, 10999 Berlin,
vertreten durch die geschäftsführenden Direktoren
Colleen Birdnow Brown und Kristie Goodgion,
Registergericht: Amtsgericht München Register-Nr.: HRB 232591
- Schuldnerin -

Verfahrensbevollmächtigte:
Rechtsanwälte **Brinkmann & Partner**, Colmarer Straße 5, 60528 Frankfurt,
Gz.: 062334-2023/

hat das Amtsgericht Charlottenburg durch die Richterin am Amtsgericht Wenzel am 30.10.2023

beschlossen:

Zum Restrukturierungsbeauftragten wird von Amts wegen

**Rechtsanwalt Dr. Philipp Hackländer**
**Rahel-Hirsch-Straße 10, 10557 Berlin**

bestellt.

Der Restrukturierungsbeauftragte steht unter der Aufsicht des Restrukturierungsgerichts. Das Gericht kann jederzeit einzelne Auskünfte oder einen Bericht über den Sachstand verlangen.

Stellt der Restrukturierungsbeauftragte Umstände fest, die eine Aufhebung der Restrukturierungs-sache nach § 33 StaRUG rechtfertigen, hat er diese dem Restrukturierungsgericht unverzüglich mitzuteilen.

Dem Restrukturierungsbeauftragten wird aufgegeben, die Verhandlungen zwischen den Beteilig-

ten zu fördern. Der Beauftragte unterstützt außerdem die Schuldnerin und die Gläubiger bei der Ausarbeitung und Aushandlung des Restrukturierungskonzepts und des auf ihm basierenden Plans.

Der Beauftragte prüft die Forderungen, Absonderungsanwartschaften, gruppeninternen Drittsicherheiten und Anteils- und Mitgliedschaftsrechte der Planbetroffenen; ist eine Restrukturierungsforderung, Absonderungsanwartschaft oder gruppeninterne Drittsicherheit oder ein Anteils- und Mitgliedschaftsrecht dem Grunde oder der Höhe nach streitig oder zweifelhaft, weist er die anderen Planbetroffenen darauf hin und wirkt auf eine Klärung des Stimmrechts im Wege einer gerichtlichen Vorprüfung nach den §§ 47 bis 48 StaRUG hin.

<u>Der Beauftragte wird aufgefordert, die Auswahl der Planbetroffenen sowie die Bildung der Gruppen auf ihre Nachvollziehbarkeit und tatsächliche Schlüssigkeit rechtlich zu überprüfen und dem Gericht hierzu schnellstmöglich zu berichten.</u>

Wenn zugunsten der Schuldnerin eine Stabilisierungsanordnung erlassen wird, prüft der Restrukturierungsbeauftragte fortlaufend, ob die Anordnungsvoraussetzungen fortbestehen und ob ein Aufhebungsgrund vorliegt. Zu diesem Zweck untersucht der Beauftragte die Verhältnisse der Schuldnerin. Zugleich steht dem Beauftragten das Recht zu, gegenüber dem Gericht die Gründe für die Aufhebung der Anordnung geltend zu machen.

Legt die Schuldnerin einen Restrukturierungsplan zur gerichtlichen Bestätigung vor, nimmt der Restrukturierungsbeauftragte Stellung zur Erklärung der Schuldnerin nach § 14 Absatz 1 StaRUG (zu den Aussichten, dass durch den Plan die drohende Zahlungsunfähigkeit der Schuldnerin beseitigt wird und dass durch den Plan die Bestandsfähigkeit der Schuldnerin sicher- oder wiederhergestellt wird). In diesem Bericht stellt der Beauftragte auch die Zweifel am Bestehen oder an der Höhe einer Restrukturierungsforderung, einer Absonderungsanwartschaft, einer gruppeninternen Drittsicherheit oder eines Anteils- und Mitgliedschaftsrechts nach § 76 Absatz 2 Nummer 1 Halbsatz 4 StaRUG oder einen diesbezüglichen Streit dar.

Die Schuldnerin ist verpflichtet, dem Gericht und dem Restrukturierungsbeauftragten jede wesentliche Änderung mitzuteilen, welche den Gegenstand des angezeigten Restrukturierungsvorhabens, die Darstellung des Verhandlungsstands und die Restrukturierungsplanung betrifft (§ 32 Absatz 2 StaRUG).

Die Schuldnerin ist verpflichtet, dem Restrukturierungsgericht den Eintritt einer Zahlungsunfähigkeit im Sinne des § 17 Absatz 2 der Insolvenzordnung unverzüglich anzuzeigen (§ 32 Ab-

satz 4 StaRUG).

Die Schuldnerin ist verpflichtet, dem Gericht unverzüglich anzuzeigen, wenn das Restrukturierungsvorhaben keine Aussicht auf Umsetzung hat, insbesondere, wenn infolge der erkennbar gewordenen ernsthaften und endgültigen Ablehnung des vorgelegten Restrukturierungsplans durch Planbetroffene nicht davon ausgegangen werden kann, dass die für eine Planannahme erforderlichen Mehrheiten erreicht werden können (§ 32 Absatz 4 StaRUG).

Der Schuldnerin wird aufgegeben, dem Restrukturierungsbeauftragten Zahlungen anzuzeigen und Zahlungen außerhalb des gewöhnlichen Geschäftsbetriebes nur zu tätigen, wenn der Beauftragte zustimmt (§ 76 Absatz 2 Nummer 3 StaRUG),

Stellt der Restrukturierungsbeauftragte Umstände fest, die eine Aufhebung der Restrukturierungssache nach § 33 StaRUG rechtfertigen, hat er diese dem Restrukturierungsgericht unverzüglich mitzuteilen (§ 76 Absatz 1 StaRUG).

Dem Restrukturierungsbeauftragten wird die Befugnis übertragen, die wirtschaftliche Lage der Schuldnerin zu prüfen und deren Geschäftsführung zu überwachen (§ 76 Absatz 2 Nummer 2a StaRUG).

Der Restrukturierungsbeauftragte wird gemäß § 76 Absatz 6 StaRUG beauftragt, die dem Gericht obliegenden Zustellungen durchzuführen. Zur Durchführung der Zustellung und zur Erfassung in den Akten kann der Beauftragte sich Dritter, insbesondere auch eigenen Personals, bedienen. Er hat die von ihm nach § 184 Absatz 2 Satz 4 der Zivilprozessordnung angefertigten Vermerke unverzüglich zu den Gerichtsakten zu reichen.

Der angemessene Stundensatz für das Honorar des Restrukturierungsbeauftragten wird (soweit der Beauftragte persönlich tätig wird) auf 350,00 EUR festgesetzt. Soweit der unterstützende Einsatz qualifizierter Mitarbeiter erforderlich ist, erhält der Restrukturierungsbeauftragte auch für deren Tätigkeit ein Honorar; insoweit wird der angemessene Stundensatz auf 200,00 EUR festgesetzt. Ausgehend von dem vorgelegten Stundenbudget wird der Höchstbetrag für das Honorar auf 20.000,00 EUR festgesetzt.

Die Schuldnerin wird aufgefordert, einen Kostenvorschuss in Höhe von 20.000,00 Euro unverzüglich bei Gericht einzuzahlen.

Reichen die der Ermittlung des Höchstbetrags zugrunde gelegten Stundenbudgets für eine sachgerechte Wahrnehmung der Aufgaben und Befugnisse nicht aus, legt der Restrukturierungsbe

auftragte Grund und Ausmaß des Erhöhungsbedarfs unverzüglich dem Restrukturierungsgericht dar.

## Rechtsbehelfsbelehrung:

Gegen die Entscheidung kann die sofortige Beschwerde (im Folgenden: Beschwerde) eingelegt werden (§ 40 Absatz 1 Satz 1 StaRUG).

Die Beschwerde ist binnen einer Notfrist von **zwei Wochen** bei dem

       Amtsgericht Charlottenburg
       Amtsgerichtsplatz 1
       14057 Berlin

einzulegen.

Jeder betroffene Gläubiger kann die erste gerichtliche Entscheidung in einer öffentlichen Restrukturierungssache außerdem aus Gründen der internationalen Zuständigkeit mit der sofortigen Beschwerde anfechten, § 84 Absatz 2 Satz 3 StaRUG, Artikel 102c § 4 EGInsO, Artikel 5 EuInsVO. Mit dieser Beschwerde kann nur die internationale Zuständigkeit angegriffen werden.

Die Frist beginnt mit der Verkündung der Entscheidung oder, wenn diese nicht verkündet wird, mit deren Zustellung beziehungsweise in öffentlichen Restrukturierungssachen mit der wirksamen öffentlichen Bekanntmachung gemäß § 86 StaRUG im Internet (www.restrukturierungsbekanntmachungen.de). Die öffentliche Bekanntmachung genügt zum Nachweis der Zustellung an alle Beteiligten, auch wenn das Gesetz neben ihr eine besondere Zustellung vorschreibt, § 86 Absatz 3 StaRUG. Sie gilt als bewirkt, sobald nach dem Tag der Veröffentlichung zwei weitere Tage verstrichen sind, § 86 Absatz 1 Satz 2 StaRUG. Für den Fristbeginn ist das zuerst eingetretene Ereignis (Verkündung, Zustellung oder wirksame öffentliche Bekanntmachung) maßgeblich.

Die Beschwerde ist schriftlich einzulegen oder durch Erklärung zu Protokoll der Geschäftsstelle des genannten Gerichts. Sie kann auch vor der Geschäftsstelle jedes Amtsgerichts zu Protokoll erklärt werden; die Frist ist jedoch nur gewahrt, wenn das Protokoll rechtzeitig bei dem oben genannten Gericht eingeht. Eine anwaltliche Mitwirkung ist nicht vorgeschrieben.

Die Beschwerde ist von dem Beschwerdeführer oder seinem Bevollmächtigten zu unterzeichnen.

Die Beschwerdeschrift muss die Bezeichnung der angefochtenen Entscheidung sowie die Erklärung enthalten, dass Beschwerde gegen diese Entscheidung eingelegt werde.

Rechtsbehelfe können auch als **elektronisches Dokument** eingereicht werden. Eine einfache E-Mail genügt den gesetzlichen Anforderungen nicht.

Rechtsbehelfe, die durch eine Rechtsanwältin, einen Rechtsanwalt, durch eine Notarin, einen Notar, durch eine Behörde oder durch eine juristische Person des öffentlichen Rechts einschließlich der von ihr zur Erfüllung ihrer öffentlichen Aufgaben gebildeten Zusammenschlüsse eingereicht werden, sind **als elektronisches Dokument** einzureichen, es sei denn, dass dies aus technischen Gründen vorübergehend nicht möglich ist. In diesem Fall bleibt die Übermittlung nach den allgemeinen Vorschriften zulässig, wobei die vorübergehende Unmöglichkeit bei der Ersatzeinreichung oder unverzüglich danach glaubhaft zu machen ist. Auf Anforderung ist das elektronische Dokument nachzureichen.

Elektronische Dokumente müssen
- mit einer qualifizierten elektronischen Signatur der verantwortenden Person versehen sein oder
- von der verantwortenden Person signiert und auf einem sicheren Übermittlungsweg eingereicht werden.

Ein elektronisches Dokument, das mit einer qualifizierten elektronischen Signatur der verantwortenden Person versehen ist, darf wie folgt übermittelt werden:

- auf einem sicheren Übermittlungsweg oder
- an das für den Empfang elektronischer Dokumente eingerichtete Elektronische Gerichts- und Verwaltungspostfach (EGVP) des Gerichts.

Wegen der sicheren Übermittlungswege wird auf § 130a Absatz 4 der Zivilprozessordnung verwiesen. Hinsichtlich der weiteren Voraussetzungen zur elektronischen Kommunikation mit den Gerichten wird auf die Verordnung über die technischen Rahmenbedingungen des elektronischen Rechtsverkehrs und über das besondere elektronische Behördenpostfach (Elektronischer-Rechtsverkehr-Verordnung - ERVV) in der jeweils geltenden Fassung sowie auf die Internetseite www.justiz.de verwiesen.

Wenzel
Richterin am Amtsgericht

**Convenience Translation of**
**Court Order of the Berlin Restructuring Court, dated 30 October 2023**

36s RES 6525/23

In the restructuring matter

Spark Networks SE,
Kohlfurter Straße 41 / 43, 10999 Berlin,
represented by the Managing Directors
Colleen Birdnow Brown and Kristie Goodgion,
Register court: Munich Local Court Register no.: HRB 232591
- Debtor -

The following person is appointed ex officio as Restructuring Officer
**Attorney Dr. Philipp Hackländer**
Rahel-Hirsch-Straße 10, 10557 Berlin

The Restructuring Officer is under the supervision of the restructuring court. The court can request individual information or a report on the status of the restructuring matter at any time.

If the Restructuring Officer identifies circumstances that justify the restructuring case being set aside in accordance with § 33 StaRUG, he must inform the restructuring court of these without any undue delay.

The Restructuring Officer is tasked with facilitating the negotiations between the parties involved. The Restructuring Officer also supports the Debtor and the creditors in drawing up and negotiating the restructuring concept and the restructuring plan based on it.

The Restructuring Officer shall review the claims, rights to separate satisfaction, intra-group third-party collateral as well as share and membership rights of the parties affected by the restructuring plan; if a restructuring claim, right to separate satisfaction or intra-group third-party collateral or a share and membership right is disputed or doubtful in terms of reason or amount, the Restructuring Officer shall inform the other parties affected by the plan and work towards clarification of the voting right by way of a preliminary court review in accordance with §§ 47 to 48 StaRUG.

The Restructuring Officer is requested to legally review the selection of the persons affected by the restructuring plan and the formation of the groups for their comprehensibility and factual conclusiveness and to report to the court on this as soon as possible.

If a stabilization order is issued in favor of the Debtor, the Restructuring Officer continuously examines whether the conditions for the order continue to exist and whether there are grounds for setting aside the order. To this end, the Restructuring Officer examines the Debtor's

1

**Convenience Translation of**
**Court Order of the Berlin Restructuring Court, dated 30 October 2023**

economic and financial conditions. At the same time, the Restructuring Officer has the right to assert the reasons for the lifting of the order to the court.

If the Debtor submits a restructuring plan for court confirmation, the Restructuring Officer comments on the Debtor's declaration pursuant to § 14 (1) StaRUG (on the prospects that the restructuring plan will eliminate the Debtor's impending insolvency and that the plan will secure or restore the Debtor's ability to continue as a going concern). In this restructuring report, the Restructuring Officer shall also state any doubts regarding the existence or amount of a restructuring claim, a right to separate satisfaction, an intra-group third-party security or a share and membership right pursuant to § 76 (2) no. 1, half-sentence 4 StaRUG or a dispute in this regard.

The Debtor is obliged to notify the court and the Restructuring Officer of any material change that affects the subject matter of the notified restructuring project, the presentation of the status of negotiations and the restructuring plan (§ 32 (2) StaRUG).

The Debtor is obliged to notify the restructuring court immediately of the occurrence of insolvency within the meaning of § 17 (2) of the Insolvency Code (§ 32 (4) StaRUG).

The Debtor is obliged to notify the court without any undue delay if the restructuring plan has no prospect of implementation, in particular if, as a result of the serious and final rejection of the submitted restructuring plan by those affected by the plan that has become apparent, it cannot be assumed that the majorities required for plan acceptance can be achieved (§ 32 (4) StaRUG).

The Debtor is required to notify the Restructuring Officer of payments and to make payments outside the ordinary course of business only if the Restructuring Officer agrees (§ 76 (2) no. 3 StaRUG).

If the Restructuring Officer identifies circumstances that justify cancellation of the restructuring case in accordance with § 33 StaRUG, he must notify the restructuring court of these without any undue delay (§ 76 (1) StaRUG).

The Restructuring Officer is authorized to review the Debtor's financial situation and monitor its management (§ 76 (2) no. 2a StaRUG).

Pursuant to § 76 (6) StaRUG, the Restructuring Officer is instructed to carry out the service of documents incumbent on the court. The Restructuring Officer may use third parties, in particular his own staff, to carry out the service and to record it in the files. He or she must submit the notes made by him or her in accordance with § 184(2) sentence 4 of the Code of Civil Procedure to the court files without any undue delay.

**Convenience Translation of**
**Court Order of the Berlin Restructuring Court, dated 30 October 2023**

The appropriate hourly rate for the Restructuring Officer's fee is set at EUR 350.00 (insofar as the Restructuring Officer acts personally). Insofar as the supportive deployment of qualified employees is required, the Restructuring Officer shall also receive a fee for their work; in this respect, the appropriate hourly rate is set at EUR 200.00. Based on the hourly budget submitted, the maximum amount for the fee is set at EUR 20,000.00.

The Debtor is requested to pay an advance on costs in the amount of EUR 20,000.00 to the court without any undue delay.

If the hourly budgets used as a basis for determining the maximum amount are not sufficient for the proper performance of the tasks and powers, the Restructuring Officer shall immediately explain the reason for and extent of the need for an increase to the restructuring court.

Legal remedies:

An immediate appeal (hereinafter: Appeal) can be lodged against the decision (§ 40 (1) sentence 1 StaRUG).

The complaint must be lodged within a mandatory notice period of two weeks with the

Charlottenburg Local Court
Local court square 1
14057 Berlin

Any affected creditor may also challenge this first court decision in a public restructuring case on grounds of international jurisdiction by means of an immediate appeal, § 84 (2) sentence 3 StaRUG, Article 102c Section 4 EGInsO, Article 5 EuInsVO. Only international jurisdiction can be challenged with this appeal.

The time period begins when the decision is announced or, if it is not announced, when it is served or, in public restructuring cases, when the effective public announcement pursuant to § 86 StaRUG is published on the Internet (www.restrukturierungsbekanntmachung.de). The public announcement is sufficient proof of service on all parties involved, even if the law prescribes special service in addition to it, § 86 (3) StaRUG. It is deemed to have been effected as soon as two further days have elapsed after the day of publication, § 86 (1) sentence 2 StaRUG. The event that occurred first (promulgation, service or effective public announcement) is decisive for the start of the time period.

The appeal must be lodged in writing or by declaration for the record at the registry of the aforementioned court. It may also be declared for the record before the registry of any local court; however, the deadline is only met if the record is received by the above-mentioned court on time. The participation of a lawyer is not required.

**Convenience Translation of**
**Court Order of the Berlin Restructuring Court, dated 30 October 2023**

The complaint must be signed by the complainant or his/her authorized representative.

The notice of appeal must contain the name of the contested decision and a statement that an appeal is being lodged against this decision.
|
Legal remedies can also be submitted as an electronic document. A simple e-mail does not meet the legal requirements.

Legal remedies submitted by a lawyer, a notary, a public authority or a legal entity under public law, including the associations formed by it to perform its public duties, must be submitted as an electronic document, unless this is temporarily impossible for technical reasons. In this case, transmission shall remain permissible in accordance with the general provisions, whereby the temporary impossibility must be substantiated at the time of the substitute submission or immediately thereafter. The electronic document must be submitted upon request.

Electronic documents must |be provided with a qualified electronic signature of the person responsible or |signed by the person responsible and submitted via a secure transmission channel.

An electronic document bearing a qualified electronic signature of the person responsible may be transmitted as follows:
|on a secure transmission channel or
|to the court's electronic court and administrative mailbox (EGVP) set up for the receipt of electronic documents.

With regard to secure transmission channels, reference is made to § 130a (4) of the Code of Civil Procedure. With regard to the other requirements for electronic communication with the courts, please refer to the Ordinance on the Technical Framework Conditions for Electronic Legal Transactions and on the Special Electronic Mailbox for Public Authorities (Electronic Legal Transactions Ordinance - ERVV) as amended and to the website www.justiz.de.

Charlottenburg Local Court - Restructuring Court - 30.10.2023

## Exhibit 3

**Resolution Authorizing Participation in StaRUG Proceeding and
Appointing Foreign Representative**

**Execution Version**

**SPARK NETWORKS, INC.**
**(a Delaware corporation)**
**Action by Unanimous Written Consent of the Board of Directors**
**October 8, 2023**

Pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, the undersigned, being the sole member of the board of directors (the "Board") of Spark Networks, Inc., a Delaware corporation (the "Company", and together with its subsidiaries and affiliates, the "Spark Group"), hereby consent by this Action by Unanimous Written Consent of the Board of Directors to the adoption of the following resolutions with the same force and effect as if they had been unanimously adopted by a duly convened meeting of the Board:

**WHEREAS**, the Company is a direct subsidiary of Spark Networks SE, a European stock corporation (Societas Europaea, SE), having its corporate seat Munich, Germany with office address at Kohlfurter Str. 41/43, 10999 Berlin, Germany, registered with the commercial register of the local court of Munich, Germany, under registration number HRB 232591 ("Parent");

**WHEREAS**, on or about March 11, 2022, Parent entered into that certain Financing Agreement among the Parent, Spark Networks, Inc., a Delaware corporation ("Spark Networks US"), Zoosk, Inc., a Delaware corporation ("Zoosk", and together with the Parent and Spark Networks, each, a "Borrower" and, collectively, the "Borrowers"), MGG Investment Group LP ("MGG") (as administrative agent for the lenders), and the other parties thereto (as amended, restated, supplemented or otherwise modified prior to the date hereof, the "Financing Agreement");

**WHEREAS**, Parent, Spark Networks US and Zoosk are debtors under the Financing Agreement, and Spark Networks Services GmbH, Spark Networks USA, LLC, Smooch Labs Inc., MingleMatch, Inc., Spark Networks Limited and LOV USA, LLC (collectively, the "Guarantors", and together with the Borrowers, the "StaRUG Parties") are guarantors under the Financing Agreement;

**WHEREAS**, the board of directors of Parent (the "Parent Board") authorized Parent on June 1, 2022, to engage Moelis & Company ("Moelis"), a global independent investment bank, to evaluate strategic alternatives for Parent, including a potential sale, merger or other similar transaction (the "Strategic Alternatives Process"), and, throughout the Strategic Alternatives Process, Moelis engaged in active dialogue with the potential counterparties and assisted Parent's management and the Parent Board in evaluating options;

**WHEREAS**, the Strategic Alternatives Process, which continued through 2022 and into 2023, did not result in any binding offers;

**WHEREAS**, on or about March 29, 2023, Parent entered into that certain Amendment No. 2 to Financing Agreement and Forbearance Agreement, among the Borrowers, MGG and the other parties thereto (as same has been amended on numerous occasions pursuant to the Amendments (as defined below)), (the "Forbearance Agreement") pursuant to which MGG agreed, subject to the terms and conditions set out therein, not to exercise remedies as a result of certain events of default that had occurred under the Financing Agreement (the "Forbearance");

**WHEREAS**, due to the ongoing events of default under the Financing Agreement, Parent, MGG and the other parties to the Forbearance Agreement have entered into a number of amendments to the Forbearance Agreement, in order to extend the Forbearance period, to ensure that MGG continues to refrain from exercising its remedies under the Financing Agreement, as a result of the events of default, including Amendment No. 1 to Forbearance Agreement, dated May 15, 2023, Amendment No. 2 to Forbearance Agreement, dated May 25, 2023, Amendment No. 3 to Forbearance Agreement and Financing Agreement, dated June 15, 2023, Amendment No. 4 to Forbearance Agreement, dated July 14, 2023, Amendment No. 5 to Forbearance Agreement, dated July 21, 2023, Amendment No. 6 to Forbearance Agreement, dated July 28, 2023, Amendment No. 7 to Forbearance Agreement, dated August 4, 2023, Amendment No. 8 to Forbearance Agreement, dated August 11, 2023, Amendment No. 9 to Forbearance Agreement and Amendment No. 5 to Financing Agreement, dated September 1, 2023, Amendment No. 10 to Forbearance Agreement, dated September 8, 2023, Amendment No. 11 to Forbearance Agreement, dated September 15, 2023, Amendment No. 12 to Forbearance Agreement, dated September 22, 2023, and Amendment No. 13 to Forbearance Agreement, dated September 29, 2023 (the "Amendments");

**WHEREAS**, in June 2023, Parent with the assistance of its financial advisor, Ankura Consulting, LLC ("Ankura"), delivered a bottoms-up, step-by-step operational performance improvement plan with a fully integrated financial model, including restructuring options and future capital and liquidity requirements of the StaRUG Parties (the "Business Plan");

**WHEREAS**, in July 2023, the Parent Board retained Ernst & Young GmbH Wirtschaftsprüfungsgesellschaft Strategy and Transactions ("EY") to evaluate and issue an IDW S6 restructuring opinion which was completed and issued in August 2023 and which confirmed the StaRUG Parties' funding need in order to execute under the Business Plan;

**WHEREAS**, the Parent Board has carefully considered funding and restructuring options including a potential private placement and has held corresponding discussions with certain shareholders and other potential investors but which has not produced any viable funding or investment scenarios;

**WHEREAS**, the Board has carefully considered the financial restructuring of the Spark Group under the German Corporate Stabilization and Restructuring Act (the "StaRUG"), and the Board has evaluated the advantages and disadvantages of the StaRUG restructuring and has concluded that the StaRUG restructuring would resolve the balance sheet over-indebtedness and the strengthening of Parent's equity while providing the StaRUG Parties with continued support and necessary funding from MGG to execute under the Business Plan;

**WHEREAS**, in order to ensure that the Forbearance continues during the StaRUG proceedings, MGG has agreed to enter into the Amended and Restated Forbearance Agreement and Collateral Agent Advance Agreement (the "A&R Forbearance Agreement") together with Parent and the other parties thereto, pursuant to which, among other things, (a) MGG will agree, on the terms and subject to the conditions set out therein, not to exercise remedies as a result of the events of default described therein, while the StaRUG proceedings are ongoing, (b) MGG will agree to provide the Company with interim liquidity in order to meet working capital needs while the StaRUG proceedings are ongoing, and (c) MGG will make certain amendments to the Financing Agreement while the StaRUG proceedings are ongoing, including deferring the September 30, 2023 principal repayment;

**WHEREAS**, MGG has agreed to vote in favor of the StaRUG and support the restructuring of the StaRUG Parties' balance sheet and operations;

**WHEREAS**, MGG and the StaRUG parties have agreed to enter into amendment no. 7 to the Financing Agreement ("Amendment No. 7") as part of the StaRUG, (the Financing Agreement, as amended by Amendment No. 7 is referred to as the "Amended Financing Agreement") to modify the Financing Agreement, to among other things, (i) amend the leverage ratios, (ii) waive all amounts due under the Financing Agreement at the time of the approval of the StaRUG plan, should the Berlin Bankruptcy Court (as defined below) grant such approval, in excess of $100,000,000 such that the principal amount owed to MGG under the Amended Financing Agreement following approval of the StaRUG plan will be $100,000,000 and (iii) make available to the Borrowers a new revolving loan commitment (the "Revolving Commitment") in an amount of $10,000,000 (collectively, the "Financing Agreement Amendments");

**WHEREAS**, the StaRUG Parties will each be subject to the jurisdiction of the Berlin Local Court Charlottenburg – Restructuring Court – (the "Berlin Bankruptcy Court") and, as such, each is a beneficiary of the StaRUG plan, and Spark Networks US, Zoosk, and the Guarantors, to the extent necessary, appropriate or required by the Berlin Bankruptcy Court, will actively participate in the StaRUG to ensure a worldwide restructuring of the StaRUG Parties' balance sheet and operations;

**WHEREAS**, the Board has had the opportunity to consult with the management and the legal and financial advisors of the Company regarding the material terms of the StaRUG; and

**WHEREAS**, to facilitate the worldwide implementation and effectuation of the StaRUG plan and to obtain recognition and comity of the StaRUG plan, if approved by the Berlin Bankruptcy Court, the StaRUG Parties will take all necessary and appropriate steps to seek such recognition and comity, by and through their duly appointed foreign representative, in any jurisdiction where the StaRUG Parties operate or have assets or in any jurisdiction where the foreign representative deems necessary or appropriate to achieve the implementation of the approved StaRUG plan.

In consideration of the above:

**RESOLVED**, that the Board hereby approves (a) the Company's entry into the A&R Forbearance Agreement, (b) the Company's entry into Amendment No. 7 to document the Financing Agreement Amendments, and (c) the Company's participation in the StaRUG by and through the duly appointed foreign representative;

**RESOLVED**, that in the business judgment of the Board, it is desirable, and in the best interests, to the extent necessary or required by the Berlin Bankruptcy Court, of the Company and the other StaRUG Parties to participate in the StaRUG;

**RESOLVED**, that the Board hereby appoints Adrian Frankum as the foreign representative of the Company, to represent the Company seeking recognition and to commence any proceeding in connection therewith in any jurisdiction which is necessary or appropriate, including in the United States pursuant to chapter 15 of title 11 of the United States Code ("Chapter 15"), to implement and give effect to the StaRUG, and to take such actions necessary and to execute and deliver, for and on behalf of the StaRUG Parties, any agreements, documents and instruments and the like in connection therewith;

**RESOLVED**, that for the purposes of these resolutions, the term "Authorized Person" shall mean and include any director, manager or officer, or any designee of any of them, of the Company, as well as any person with relevant powers granted by the Company, and Adrian Frankum;

**RESOLVED**, that, in addition to the specific authorizations heretofore conferred upon the Authorized Persons, each Authorized Person be, and hereby is, authorized with full power of delegation, in the name and on behalf of the Company, to take or cause to be taken any and all such further actions and to execute and deliver or cause to be executed or delivered, and to amend, supplement or otherwise modify from time to time, any and all such agreements, documents certificates, instruments, statements, notices, undertakings, amendments and other writings, and to incur and to pay or direct payment of all such fees and expenses, including filing fees, as in the judgment of the Authorized Person shall be necessary, desirable or appropriate to effectuate the purpose and intent of any and all of the foregoing resolutions adopted herein;

**RESOLVED**, that the signature of any director or Authorized Person may, but need not, be a facsimile or electronic signature imprinted or otherwise reproduced on the documents, and for that purpose the Company hereby adopts as binding upon it the facsimile signature of any present or future director or Authorized Person, notwithstanding the fact that at the time the documents shall be executed, authenticated or delivered or disposed of such person shall have ceased to be a director or Authorized Person of the Company and that, in case any director or Authorized Person of the Company whose facsimile signature shall appear on the documents shall cease to hold such office before the documents have been executed, authenticated and delivered or disposed of by the Company, such documents nevertheless may be executed, authenticated and delivered or disposed of and such documents shall be valid as though such person had not ceased to hold such position with the Company; and that any such documents as shall have been so executed, authenticated, delivered or disposed of are hereby adopted by the Company as its binding obligations;

**RESOLVED**, that any and all lawful actions and transactions by any Authorized Person, or at the direction of an Authorized Person, for and on behalf and in the name of the Company with respect to any transactions contemplated by the foregoing resolutions, before the adoption of the foregoing resolutions be, and they hereby are, ratified, authorized, approved, adopted and consented to in all respects for all purposes;

**RESOLVED**, that the Authorized Persons shall be, and each of them individually hereby is, authorized, directed and empowered, in the name and on behalf of the Company, to retain: (a) Jones Day; (b) EY; (c) Brinkmann & Partner; (d) Ankura; (e) Richards, Layton & Finger, P.A., as Delaware Chapter 15 counsel; (f) Kroll Restructuring Administration LLC, as noticing agent; and (g) such additional professionals, including attorneys, accountants, financial advisors, investment bankers, actuaries, consultants, experts, agents or brokers (together with the foregoing identified firms, the "Professionals"), in each case as in any such Authorized Person's judgment may be necessary, desirable or appropriate in connection with the StaRUG and other related matters, on such terms as such Authorized Person or Authorized Persons shall approve and such Authorized Person's retention thereof to constitute conclusive evidence of such Authorized Person's approval and the necessity, desirability or appropriateness thereof;

**RESOLVED**, that all acts lawfully done or actions lawfully taken by any Authorized Person, or at the direction of an Authorized Person, or by any of the Professionals at the direction

4

DocuSign Envelope ID: 70CC4915-D712-4356-AA5C-0F546ECE6C72

of an Authorized Person, in connection with the StaRUG or any proceedings related thereto, or any matter related thereto, be, and hereby are, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Company; and

**RESOLVED**, these resolutions may be executed in any number of counterparts, each of which when so executed will be deemed an original, but all such counterparts together will constitute one and the same instrument.

**THIS RESOLUTION** is dated as stated at the beginning of this document:

DocuSigned by:

*Colleen Birdnow Brown*

97FB8BF6C2F1466

Colleen Birdnow Brown

## Exhibit 4

**Restructuring Plan**

# Restrukturierungsplan

in der öffentlichen Restrukturierungssache der

### Spark Networks SE
**mit Verwaltungssitz in Berlin,
eingetragen im Handelsregister
des Amtsgerichts München
HRB 232591**

Amtsgericht Charlottenburg

– Restrukturierungsgericht –

Aktenzeichen: 36s RES 6525/23

# Restructuring Plan

in the public restructuring case of

### Spark Networks SE
**with its office in Berlin,
registered with
the Local Court Munich
HRB 232591**

Local Court Charlottenburg

– Restructuring Court –

Case number: 36s RES 6525/23

*Für Zwecke des Restrukturierungsverfahrens gemäß Sta-RUG ist ausschließlich die deutsche Sprachfassung dieses Restrukturierungsplans maßgeblich. Die englische Sprachfassung dient lediglich der besseren Verständlichkeit für internationale Verfahrensbeteiligte.*

*For the purposes of the restructuring proceedings pursuant to StaRUG, only the German language version of this Restructuring Plan shall be authoritative. The English language version merely serves the purpose of better comprehensibility for international parties to the proceedings.*

## Inhaltsverzeichnis

A. Zusammenfassung ....................................................5

B. Darstellender Teil ................................................ 12

  I.  Schuldnerbezogene Angaben............................ 12

    1.  Firma, Sitz, Adresse ................................... 12

    2.  Registergericht, Registernummer, Grundkapital ............................... 12

    3.  Gesetzliche Vertreter.................................. 12

    4.  Unternehmensgegenstand ........................... 13

    5.  Aktionärsstruktur ...................................... 14

    6.  Finanzierungsstruktur................................. 15

  II.  Verfahrensbezogene Angaben ........................ 15

    1.  Zugangsvoraussetzungen des StaRUG........ 15

    2.  Restrukturierungsgericht, Aktenzeichen ..... 17

    3.  Restrukturierungsbeauftragter.................... 17

  III.  Unternehmens- und krisenbezogene Angaben.. 17

    1.  Wirtschaftliche Situation des Schuldners und Krisenanalyse ............................................. 17

      a)  Allgemeine Informationen.................... 17

      b)  Erwerb von Zoosk, Inc. in 2019 ............ 18

      c)  Krisenanalyse – Wirtschaftliche Lage der Spark-Gruppe ........................................ 19

      d)  Krisenanalyse – Wirtschaftliche Lage der Schuldnerin........................................... 22

      e)  Anpassung der Finanzierungsvereinbarung mit MGG als Folge der Krise und weitere Restrukturierungsmaßnahmen vor dem StaRUG-Verfahren .............................. 23

    2.  Angaben zur Vermögenslage der Schuldnerin .............................................. 28

      a)  Aktuelle Vermögenslage ...................... 28

      b)  Zukünftige Vermögenslage unter Planannahmen ...................................... 29

      c)  Zukünftige Vermögenslage ohne Restrukturierungsplan .......................... 31

    3.  Angaben zu Arbeitnehmern und zur Arbeitnehmervertretung ............................ 31

    4.  Angaben zur Unternehmensgruppe ............ 32

      a)  Allgemeine Angaben ............................ 32

## Table of Contents

A. Summary ............................................................. 5

B. Descriptive Part ................................................12

  I.  Debtor-related information .......................12

    1.  Company name, registered office, address...................................................12

    2.  Commercial register, register number, registered share capital ......................12

    3.  Legal representatives............................12

    4.  Object and purpose of business...........13

    5.  Shareholder structure ..........................14

    6.  Financing structure..............................15

  II.  Procedure-related information .................15

    1.  Entry requirements of StaRUG ...........15

    2.  Restructuring Court, case number.......17

    3.  Restructuring officer ...........................17

  III.  Business and crisis-related information ....17

    1.  Economic situation of the debtor and crisis analysis .....................................17

      a)  General information......................17

      b)  Acquisition of Zoosk, Inc. in 2019 18

      c)  Crisis analysis – Economic situation of Spark Group ............................19

      d)  Crisis analysis – Economic situation of Debtor .......................................22

      e)  Modification of the Financing Agreement with MGG as consequence of the crisis and other restructuring measures pre-StaRUG ........................................23

    2.  Information on Debtor's financial situation..............................................28

      a)  Current financial situation .............28

      b)  Future financial situation under plan assumptions ...................................29

      c)  Future financial situation without Restructuring Plan .......................31

    3.  Information on employees and employee representation....................31

    4.  Information on the company group .....32

b) Zusätzliche Angaben zu verbundenen Unternehmen, die Sicherheiten gestellt haben, welche in den Restrukturierungsplan einbezogen werden .................. 33

IV. Restrukturierungsbezogene Angaben .............. 33

1. Beschreibung der Maßnahmen zur Bewältigung der Krise ................. 33

a) Planbasierte Maßnahmen auf Fremdkapitalseite .................. 34

b) Planbasierte Maßnahmen auf Eigenkapitalseite .................. 36

c) Maßnahmen außerhalb des Restrukturierungsplans .................. 40

2. Neue Finanzierung im Sinne von § 12 StaRUG ................. 41

3. Auswirkungen auf Arbeitnehmer ............... 41

4. Auswirkungen auf verbundene Unternehmen bezüglich von ihnen gestellter Sicherheiten, die in den Restrukturierungsplan einbezogen werden ................. 42

V. Angaben zu den Planbetroffenen .................. 43

1. Identität der Planbetroffenen .................. 43

2. Auswahl der Planbetroffenen .................. 45

3. Einteilung der Planbetroffenen in Gruppen  47

4. Vorgesehene Restrukturierungsbeiträge nach Gruppen .................. 48

5. Angaben zu den Stimmrechten ................. 49

VI. Vergleichsrechnung zu den Befriedigungsaussichten mit und ohne Restrukturierungsplan.................. 50

VII. Gesetzliche Erklärungen ........................... 51

1. Beseitigung der drohenden Zahlungsunfähigkeit und Sicherstellung der Bestandsfähigkeit ........................ 51

2. Gewährleistung der Zahlungsfähigkeit während des Restrukturierungszeitraums.... 52

VIII. Erläuterung weiterer Regelungen des Gestaltenden Teils des Plans .................. 52

C. Gestaltender Teil ................. 53

I. Gruppenbildung ................. 53

a) General information....................... 32

b) Additional disclosures on affiliated companies the collateral provided by which is included in the Restructuring Plan .................. 33

IV. Restructuring-related information............ 33

1. Description of the measures taken to overcome the crisis............................ 33

a) Plan-based measures on debt site .. 34

b) Plan-based measures on equity side ................. 36

c) Measures in addition to the Restructuring Plan .................. 40

2. New financing within the meaning of Sec. 12 StaRUG .................. 41

3. Effects on employees .................. 41

4. Effects on affiliated companies with regard to collateral provided by them that is included in the Restructuring Plan .................. 42

V. Information on the Plan-Affected Parties . 43

1. Identity of the Plan-Affected Parties... 43

2. Selection of the Plan-Affected Parties 45

3. Allocation of the Plan-Affected Parties into groups .................. 47

4. Planned restructuring contributions by group .................. 48

5. Information on voting rights .............. 49

VI. Comparative calculation of the prospects of satisfaction with and without Restructuring Plan .................. 50

VII. Mandatory declarations .................. 51

1. Eliminating the threat of insolvency and ensuring viability.................. 51

2. Ensuring solvency during the restructuring period .................. 52

VIII. Explanation of further regulations of the Constructive Part of the plan.............. 52

C. Constructive Part .................. 53

I. Group formation .................. 53

II. Stipulations for changing the legal status of the Plan-Affected Parties by group .......... 53

II.  Regelungen zur Änderung der Rechtsstellung der Planbetroffenen nach Gruppen ....................... 53

   1.  Teilerlass und Anpassung MGG-Darlehen . 53

   2.  Erlass der Zoosk-Notes ............................... 54

   3.  Aktionäre..................................................... 55

III. Gesellschaftsrechtliche Maßnahmen ................ 55

   1.  Vereinfachte Kapitalherabsetzung auf null und gleichzeitige Erhöhung des herabgesetzten Grundkapitals gegen Bareinlage mit Bezugsrechtsausschluss ...... 55

   2.  Satzungsänderungen.................................... 57

      a)  Änderung von Grundkapital und Aktien in der Satzung der Schuldnerin.................. 57

      b)  Aufhebung des Genehmigten Kapitals 2022 gemäß § 4 Abs. 3 der Satzung der Schuldnerin............................................ 58

      c)  Aufhebung des Genehmigten Kapitals 2020/I gemäß § 4 Abs. 4 der Satzung der Schuldnerin..................................... 58

      d)  Aufhebung des Bedingten Kapitals 2020/I gemäß § 4 Abs. 5 der Satzung der Schuldnerin............................................ 58

   3.  Zuzahlung in die freie Kapitalrücklage ....... 59

   4.  Handelsregisteranmeldung .......................... 59

IV. Weitere Regelungen .......................................... 59

   1.  Bereitstellung von Mitteln gemäß § 64 Abs. 3 StaRUG ..................................................... 59

   2.  Offensichtliche Fehler ................................. 60

   3.  Salvatorische Klausel .................................. 60

   4.  Gerichtliches Planabstimmungsverfahren; keine Planüberwachung ............................... 61

   1.  Partial waiver and amendment of MGG Loan ...................................................53

   2.  Waiver of Zoosk Notes .......................54

   3.  Shareholders.......................................55

III. Corporate law measures............................55

   1.  Simplified capital decrease to zero and simultaneous increase of the reduced share capital against cash contribution with exclusion of subscription rights ..55

   2.  Amendment of the Articles of Association...........................................57

      a)  Amendment of share capital and shares in the Articles of Association of Debtor ......................................57

      b)  Cancellation of the Authorized Capital 2022 pursuant to Art. 4 para. 3 of the Articles of Association of Debtor ......................................58

      c)  Cancellation of the Authorized Capital 2020/I pursuant to Art. 4 para. 4 of the Articles of Association of Debtor ......................................58

      d)  Cancellation of Conditional Capital 2020/I pursuant to Art. 4 para. 5 of the Articles of Association of Debtor...........................................58

   3.  Cash contribution to the capital reserve ................................................59

   4.  Registration with commercial register 59

IV. Further Provisions....................................59

   1.  Provision of funds pursuant to Sec. 64 (3) StaRUG............................59

   2.  Obvious mistakes ...............................60

   3.  Severability Clause .............................60

   4.  Court proceeding for voting on the plan; no plan monitoring .............................61

A. **Zusammenfassung**

A. **Summary**

Der Restrukturierungsplan wird von der Spark Networks SE mit Verwaltungssitz in Berlin sowie eingetragen im Handelsregister des Amtsgerichts München unter HRB 232591 („**Schuldnerin**") vorgelegt. Ziel ist eine finanzielle Restrukturierung als Begleitmaßnahme zur operativen Neuausrichtung der Spark-Gruppe außerhalb des StaRUG-Verfahrens. Durch den Restrukturierungsplan soll eine Insolvenz der Schuldnerin vermieden werden, indem bestandsgefährdende Risiken beseitigt und eine ohne den Restrukturierungsplan vorliegende bilanzielle Überschuldung aufgelöst wird. Zusätzlich gewähren die Darlehensgeber der Schuldnerin, MGG (wie nachstehend definiert), die benötigte Interim-Finanzierung (wie nachstehend definiert), um bestimmte Verfahrensschritte im Restrukturierungsverfahren zu erreichen und die außerhalb des Restrukturierungsverfahrens stattfindende operative Restrukturierung durchzuführen. Mit diesen Maßnahmen soll sichergestellt werden, dass der operative Betrieb der Schuldnerin bzw. ihrer Tochterunternehmen saniert und fortgeführt werden kann. Durch den Restrukturierungsplan werden die finanziellen Maßnahmen, insbesondere die notwendige Entschuldung der Schuldnerin und die Stärkung ihres Eigenkapitals, geregelt, während die Schuldnerin daneben auch diverse operative Sanierungsmaßnahmen auf Grundlage eines vom Verwaltungsrat der Schuldnerin im Juli 2023 beschlossenen Gesamt-Restrukturierungskonzepts durchführt.

The Restructuring Plan is proposed by Spark Networks SE, with its head office in Berlin, registered with the commercial register of the Local Court of Munich under register number HRB 232591 ("**Debtor**"). The aim is financial restructuring as an accompanying measure to the out-of-court operational restructuring of the Spark Group. The Restructuring Plan is intended to prevent the insolvency of Debtor by eliminating risks that could jeopardize its continued existence and resolving any balance sheet over-indebtedness that would have existed without the Restructuring Plan. In addition, Debtor's lenders, MGG (as defined below), have agreed to provide Debtor much-needed Interim Financing (as defined below) to achieve certain procedural steps in the StaRUG proceedings and the out-of-court operational restructuring. These measures are intended to ensure that the operations of Debtor and its subsidiaries can be restructured and continued. The Restructuring Plan regulates the financial measures, in particular the necessary debt relief of Debtor and the strengthening of its equity, while Debtor also implements various operational restructuring measures pursuant to an overall restructuring concept adopted by the Debtor's administrative board in July 2023.

Das dem Restrukturierungsplan zugrunde liegende Gesamt-Restrukturierungskonzept wird durch einen unabhängigen Sanierungsgutachter – Ernst & Young GmbH Wirtschaftsprüfungsgesellschaft Strategy and Transactions – im Wege eines Sanierungsgutachtens in Anlehnung an IDW S6 und unter

The overall restructuring concept on which the Restructuring Plan is based is validated by an independent restructuring expert – Ernst & Young GmbH Wirtschaftsprüfungsgesellschaft Strategy and Transactions – in the form of a restructuring opinion based on IDW S6 and taking into account the highest court rulings.

Berücksichtigung der höchstrichterlichen Recht-
sprechung validiert.

In den Restrukturierungsplan wird eine besicherte Darlehensverbindlichkeit in Höhe von USD 100.000.000,00 zuzüglich kapitalisierter Zinsen (das „**MGG-Darlehen**" und der zugrundeliegende Vertrag vom 11. März 2022 in der durch die Änderungsvereinbarungen Nr. 1 bis 6 geänderten Fassung die „**Finanzierungsvereinbarung**") der Schuldnerin und bestimmter weiterer Mitglieder der Spark-Gruppe gegenüber einer Reihe von Gesellschaften der MGG-Gruppe, die von der MGG Investment Group LP als Agentin und Sicherheitenagentin angeführt werden (gemeinsam „**MGG**" oder „**Planbetroffene Finanzgläubiger**"), einbezogen. Zum Zeitpunkt der Vorlage dieses Restrukturierungsplans beträgt der gesamte ausstehende Darlehensbetrag USD 107.615.030,87 (inkl. aufgelaufener Zinsen und eines Teils der Interim-Finanzierung (wie nachstehend definiert)).

Darüber hinaus bezieht der Restrukturierungsplan unbesicherte Verbindlichkeiten der Schuldnerin aus sogenannten „Zoosk Holdback Notes" in Höhe von aktuell insgesamt USD 13.710.109,97 („**Zoosk-Notes**") ein. Die Zoosk-Notes resultieren aus dem Erwerb der Zoosk, Inc. durch die Schuldnerin im Jahr 2019 und wurden an die damaligen Anteilseigner ausgereicht, von denen die Schuldnerin die Anteile an der Zoosk, Inc. erwarb. MGG hat die Zoosk-Notes käuflich erworben.

Daneben werden die Aktionäre der Schuldnerin als Inhaber von Anteils- und Mitgliedschaftsrechten im Sinne von § 9 Abs. 1 S. 2 Nr. 4 StaRUG („**Planbetroffene Aktionäre**" und zusammen mit den Planbetroffenen Finanzgläubigern die „**Planbetroffenen**") in den Restrukturierungsplan einbezogen.

Included in the Restructuring Plan is a secured loan facility in the amount of USD 100,000,000.00 plus capitalized interest (the "**MGG Loan**" and the underlying agreement dated as of March 11, 2022, as amended pursuant to amendments No. 1 through 6, the "**Financing Agreement**") made to Debtor and certain other members of the Spark Group by several companies of the MGG group represented by MGG Investment Group LP as agent and collateral agent (together, "**MGG**" or "**Plan-Affected Financial Creditors**"). At the time of the submission of this Restructuring Plan, the aggregate outstanding principal amount of the MGG Loan is USD 107,615,030.87 (incl. accrued interest and part of the Interim Financing (as defined below)).

In addition, the Restructuring Plan includes unsecured liabilities of the Debtor from so-called "Zoosk Holdback Notes" in the total current amount of USD 13,710,109.97 ("**Zoosk Notes**"). The Zoosk Notes result from the acquisition of Zoosk, Inc. by the Debtor in 2019 and were issued to the former shareholders from which the Debtor acquired the shares in Zoosk, Inc. MGG acquired the Zoosk Notes by way of a purchase agreement.

In addition, the shareholders of Debtor shall be included in the Restructuring Plan as holders of share and membership rights within the meaning of Sec. 9 (1) sent. 2 no. 4 StaRUG ("**Plan-Affected Shareholders**" and together with the Plan Affected Financial Creditors, the "**Plan-Affected Parties**").

Wesentliche Bestandteile des dem Restrukturierungsplan und der außergerichtlich stattfindenden operativen Restrukturierung zugrunde liegenden Gesamt-Restrukturierungskonzepts sind überblicksartig:

- eine Umstrukturierung des operativen Geschäftsbetriebs durch Auslagerung wesentlicher Teile des Marketings sowie der technischen Entwicklung, Systempflege und des Kundenservices. Hiermit ist auch eine Reduzierung der Arbeitnehmer in der Spark-Gruppe verbunden;

- ein Teilforderungserlass der Darlehensverbindlichkeiten der Spark-Gruppe aus dem MGG-Darlehen gegenüber MGG, soweit sie zum Zeitpunkt der gerichtlichen Bestätigung dieses Restrukturierungsplans USD 100.000.000,00 übersteigen, d.h. voraussichtlich insgesamt USD 16.943.800,85 (inkl. Interim-Finanzierung und aufgelaufener Zinsen). Der Gesamtbetrag der Darlehensverbindlichkeiten, der Gegenstand des Teilforderungserlasses ist, schließt alle neuen Verpflichtungen aus der Interim-Finanzierung ein; allerdings bezieht sich der Teilforderungserlass durch MGG nur auf die Darlehensverbindlichkeiten, die vor der Einleitung des Sanierungsverfahrens nach dem StaRUG bestanden;

- eine Anpassung der Covenants der Finanzierungsvereinbarung mit MGG, die Wiederherstellung der Finanzierungsvereinbarung im Übrigen mit einem reduzierten Zinssatz von SOFR[1]+850, einem hinausgeschobenen

Key elements of the overall restructuring concept underlying the Restructuring Plan and the related out-of-court operational restructuring are summarized as follows:

- a restructuring of business operations by outsourcing significant parts of marketing as well as technology engineering, maintenance functions and most customer service. This is also associated with a reduction in the number of employees in the Spark Group;

- a partial waiver of claims for the loan liabilities of Spark Group deriving from the MGG Loan to the extent such claims exceed USD 100,000,000.00 at the time of the court confirmation of the Restructuring Plan, i.e. an estimated total amount of USD 16,943,800.85 (incl. Interim Financing and accrued interest). The total amount of loan liabilities which is subject to such waiver will include any new obligations under the Interim Financing, but, for the avoidance of doubt, MGG's partial claim waiver shall only relate to the obligations incurred prior to the commencement of restructuring proceedings pursuant to StaRUG;

- a modification of covenants of the Financing Agreement with MGG, as the reinstatement of the remaining Financing Agreement with a reduced interest rate of SOFR[1]+850, a postponed amortization schedule and the original maturity

---

[1]   US-amerikanischer Referenzzinssatz // U.S. reference interest rate Secured Overnight Financing Rate („**SOFR**").

Tilgungsplan und der ursprünglichen Laufzeit des MGG-Darlehens bis 11. März 2027 sowie das Einräumen einer neuen revolvierenden Kreditlinie in Höhe von maximal USD 10.000.000,00 durch MGG nach Abschluss des StaRUG-Verfahrens;

ending on March 11, 2027 as well as the provision of a new revolving loan facility in the maximum amount of USD 10,000,000.00 by MGG after going through the StaRUG process;

- ein vollständiger Forderungserlass durch MGG betreffend die Zoosk-Notes, wodurch die Schuldenlast der Schuldnerin zum Zeitpunkt der Planbestätigung um voraussichtlich USD 13.851.262,72 (USD 13.710.109,97 inkl. bis dahin auflaufender Zinsen) reduziert wird;

- a full waiver of claims by MGG regarding the Zoosk Notes leading to a reduction of Debtor's debt burden at the time of the plan confirmation in the estimated amount of USD 13,851,262.72 (USD 13,710,109.97 incl. interest accrued by then);

- eine vereinfachte Kapitalherabsetzung auf null mit anschließender Kapitalerhöhung um EUR 120.000 unter Bezugsrechtsausschluss für die bisherigen Aktionäre; und

- a simplified capital decrease to zero with a subsequent capital increase of EUR 120,000 with exclusion of subscription rights for the existing shareholders; and

- eine Liquiditätszufuhr in Gesamthöhe von mehr als USD 20.000.000 durch die Kapitalerhöhung, durch eine Zuzahlung in die freie Kapitalrücklage und durch die Interim-Finanzierung.

- a liquidity injection in the total amount of more than USD 20,000,000 through the capital increase, a contribution in the free capital reserve and the Interim Financing.

Zur Zeichnung der neu ausgegebenen Aktien zugelassen werden soll ausschließlich die MGG SPV 33 LLC („**MGG Investor**"), eine nach dem Recht des US-Bundesstaates Delaware gegründete Gesellschaft mit beschränkter Haftung (*limited liability company*) mit Sitz in New York, Vereinigte Staaten, die von den MGG-Gesellschaften im Verhältnis ihrer Beteiligung an den MGG-Darlehen gehalten wird.

Only MGG SPV 33 LLC ("**MGG Investor**"), a limited liability company incorporated under the laws of the US federal state of Delaware with its registered office in New York, United States, which is held by the MGG entities in proportion to their contributions under the MGG Loan, is to be admitted to subscribe for the newly issued shares.

Die Spark-Gruppe erhält von MGG im Rahmen einer Stillhalte- und Zwischenfinanzierungsvereinbarung eine Interim-Finanzierung in Höhe von USD 11.000.000 mit der Option, diesen Betrag im

Under a forbearance and interim loan agreement, Spark Group receives an interim financing from MGG in an amount up to USD 11,000,000, with the potential to increase

alleinigen Ermessen von MGG Investment Group LP auf bis zu USD 14.000.000 anzuheben, in Form eines Kreditrahmens („**Interim-Finanzierung**"), um die Liquidität während des StaRUG-Verfahrens sicherzustellen. Die Interim-Finanzierung wird unter der Bedingung verschiedener Meilensteine im Rahmen der Durchführung der Restrukturierungssache gewährt und der geltenden Finanzierungsvereinbarung unter Erhöhung des ausstehenden Darlehensbetrags unterstellt. Zur Klarstellung: Der Teilerlass der Forderungen aus dem MGG-Darlehen bezieht sich nur auf die Darlehensverbindlichkeiten, die vor der Einleitung des Restrukturierungsverfahrens gemäß StaRUG entstanden sind, und beinhaltet keinen Teilverzicht auf neu entstandene Darlehensverbindlichkeiten aus der Interim-Finanzierung. MGG deckt daher unter Berücksichtigung der beträchtlichen Forderungsverzichte den vom Sanierungsgutachten festgestellten Eigenkapitalbedarf von USD 20.000.000 (einschließlich Interim-Finanzierung, Kapitalerhöhungsbetrag und Zuzahlung in die Kapitalrücklage).

Ohne die Implementierung der unter dem Restrukturierungsplan vorgesehenen sowie der außergerichtlichen operativen Restrukturierungsmaßnahmen sowie der darauf bedingten Interim-Finanzierung müsste die Schuldnerin unverzüglich einen Insolvenzantrag stellen. Dies würde aller Voraussicht nach zur Verwertung des an MGG verpfändeten Vermögens der Schuldnerin – einschließlich ihrer Beteiligung an den Gesellschaften der Spark-Gruppe – führen. Eine solche insolvenzbedingte Verwertung hätte erhebliche negative Auswirkungen auf das operative Geschäft der Schuldnerin, könnte zu einem immensen Reputationsverlust bei ihren Kunden führen und erhebliche Wertverluste verursachen, den Verlust von Arbeitsplätzen riskieren und aufgrund der umfassenden Besicherung zugunsten von MGG bei anderen Gläubigern zu einem

this amount to USD 14,000,000 at MGG Investment Group LP's sole discretion ("**Interim Financing**") to ensure liquidity during the StaRUG proceeding. This Interim Financing is conditional to certain milestones within the entrance and execution of the restructuring case and is governed by the Financing Agreement increasing the outstanding principal loan amount. For the avoidance of doubt, the partial waiver of claims regarding the MGG Loan relates only to obligations incurred prior to the commencement of restructuring proceedings pursuant to StaRUG and does not include a partial waiver of any new obligations incurred under the Interim Financing. Therefore, taking into consideration the substantial debt waivers, MGG covers the equity capital needs of USD 20,000,000 identified by the restructuring opinion (inclusive of the Interim Financing, the capital increase and the contribution in the capital reserve).

Without the implementation of the restructuring measures provided for under the Restructuring Plan and the out-of-court operational restructuring measures as well as the Interim Financing conditional to them, Debtor would have to file for insolvency without undue delay. This would in all probability lead to the liquidation of the assets of Debtor pledged to MGG – including its shares in the companies of the Spark Group. Such an insolvency-related liquidation would have a significant negative impact on Debtor's operating business, could lead to an immense loss of reputation among its customers and cause significant losses in value, loss of jobs and, due to the comprehensive collateralization in favor of MGG, result in a complete loss of claims held by other creditors. Such liquidation therefore leaves significantly

vollständigen Forderungsausfall führen. Eine derartige Verwertung lässt daher deutlich geringere Befriedigungsaussichten als im Fall der Fortführung des Unternehmens der Schuldnerin unter Umsetzung der im Restrukturierungsplan vorgesehenen Maßnahmen.

Das vorliegende Restrukturierungskonzept ist in seinen wesentlichen Teilen das Ergebnis der Verhandlungen zwischen den Planbetroffenen Finanzgläubigern und der Schuldnerin.

Alle verbundenen Unternehmen der Schuldnerin im Sinne von § 15 AktG sind Begünstigte dieses Restrukturierungsplans in Bezug auf die Schuldnerin (als oberste Holdinggesellschaft der Spark-Gruppe) und der vom Restrukturierungsgericht zu erlassenden Beschlüsse. Dies gilt insbesondere für diejenigen Mitglieder der Spark-Gruppe, die gesamtschuldnerisch (zusammen mit der Schuldnerin) oder als Garanten für die Darlehensverbindlichkeiten aus der Finanzierungsvereinbarung haften. Dies betrifft die Spark Networks, Inc. und Zoosk, Inc. sowie die Spark Networks Services GmbH, Spark Networks USA, LLC, Smooch Labs, Inc., Minglematch, Inc., Spark Networks Limited, und Lov USA, LLC.

Die Schuldnerin ist das einzige Unternehmen der Spark-Gruppe, das diesen Restrukturierungsplan vorlegt und damit formal Beteiligte des Verfahrens gemäß StaRUG ist. Dennoch profitieren die übrigen Mitglieder der Spark-Gruppe unmittelbar von den Rechtswirkungen dieses Restrukturierungsplans, insbesondere von einer Schuldenreduzierung in Bezug auf Verbindlichkeiten, für die das betreffende Konzernunternehmen Mitschuldner oder Garant ist. Aus diesem Grund sind auch Spark Networks, Inc. and Zoosk, Inc. (zusammen mit den Kreditgaranten)

lower prospects of satisfaction than in the case of the continuation of the business of Debtor with the implementation of the measures provided for in the Restructuring Plan.

The main parts of the proposed restructuring concept are the result of negotiations between the Plan-Affected Financial Creditors and Debtor.

All affiliated entities of Debtor in the meaning of Sec. 15 German Stock Corporation Act (*Aktiengesetz,* "**AktG**") may be beneficiaries of this Restructuring Plan regarding Debtor (being the top-level holding company of Spark Group) and of the related court orders to be issued by the Restructuring Court. This is in particular the case for those members of the Spark Group that are jointly and severally liable (together with Debtor) or as guarantors with respect to the loan liabilities under the Financing Agreement. This concerns Spark Networks, Inc. and Zoosk, Inc. as well as Spark Networks Services GmbH, Spark Networks USA, LLC, Smooch Labs, Inc., Minglematch, Inc., Spark Networks Limited, and Lov USA, LLC.

Debtor is the only entity which submits this Restructuring Plan and, thus, which is formally before the Restructuring Court. Nonetheless, the other members of the Spark Group (including Spark Networks, Inc. and Zoosk, Inc.) directly benefit from the legal effects of this Restructuring Plan, in particular from a debt reduction with respect to liabilities for which the group company concerned is a co-borrower or a guarantor. For this reason, also Spark Networks, Inc. and Zoosk, Inc. (along with the loan guarantors) are subject to this Restructuring

von diesem Restrukturierungsplan betroffen. Im Zu-sammenhang mit diesem Restrukturierungsplan wirken die Beschlüsse des Restrukturierungsge-richts auch zu Gunsten derjenigen Gesellschaften der Spark-Gruppe, die nicht der formale Antragstel-ler im Hinblick auf diesen Restrukturierungsplan sind; allgemein gesprochen sind sämtliche der o. g. Gesellschaften insoweit von der Entscheidungsge-walt des Restrukturierungsgerichts betroffen.

Plan: In connection with this Restructuring Plan, also those entities that are not the formal applicant with respect to this Restructuring Plan benefit from the orders of the Restructur-ing Court; generally speaking, all of the afore-mentioned entities are subject to the jurisdic-tion of the Restructuring Court in this respect.

**B.   Darstellender Teil**

**I.   Schuldnerbezogene Angaben**

**1.   Firma, Sitz, Adresse**

Die Schuldnerin hat die Rechtsform einer europäischen Aktiengesellschaft (*Societas Europaea*) und führt die Firma

**Spark Networks SE**.

Satzungsgemäßer Sitz der Schuldnerin ist München, Deutschland. Ihre Hauptverwaltung befindet sich in der Kohlfurter Straße 41/43, 10999 Berlin, Deutschland.

**2.   Registergericht, Registernummer, Grundkapital**

Die Schuldnerin ist im Handelsregister des Amtsgerichts München unter HRB 232591 eingetragen.

Das Grundkapital der Schuldnerin beträgt EUR 2.661.385,00. Es ist in 2.661.385 auf den Namen lautende Stückaktien eingeteilt.

**3.   Gesetzliche Vertreter**

Die Schuldnerin hat gemäß § 6 der Satzung eine monistische Unternehmensleitungs- und Kontrollstruktur.

**B.   Descriptive Part**

**I.   Debtor-related information**

**1.   Company name, registered office, address**

The Debtor has the legal form of a European public limited-liability company (*Societas Europaea*) and has the corporate name

**Spark Networks SE**.

The registered office of Debtor is Munich, Germany. Its head office is located at Kohlfurter Straße 41/43, 10999 Berlin, Germany.

**2.   Commercial register, register number, registered share capital**

Debtor is registered with the commercial register of the Local Court of Munich under register number HRB 232591.

The share capital of Debtor amounts to EUR 2,661,385.00. It is subdivided into 2,661,385 registered no-par value shares.

**3.   Legal representatives**

Debtor has a one-tier management and administrative system.

Die folgenden geschäftsführenden Direktoren führen die Geschäfte der Schuldnerin, indem sie die Grundlinien und Vorgaben umsetzen, die der Verwaltungsrat der Schuldnerin aufstellt:

- Colleen Brown, Vereinigte Staaten, 4. August 1958;

- Kristie Goodgion, Vereinigte Staaten, 14. April 1979.

### 4.     Unternehmensgegenstand

Gegenstand der Schuldnerin ist gemäß § 3 der Satzung die Beteiligung an und die Gründung sowie die Leitung von Unternehmen oder die Verwaltung von Beteiligungen an Unternehmen sowie die Bereitstellung von Verwaltungs- und Holdingsfunktionen für diese Beteiligungsunternehmen, die in folgenden Geschäftsfeldern oder Teilbereichen davon tätig sind:

- der Betrieb und die Erbringung von Onlinediensten in den Bereichen Partnervermittlung, Dating und Kontaktanbahnung;

- die Entwicklung, der Betrieb und das Vermarkten von Software, die Wartung von Kontaktnetzwerken, das Design und die Herstellung von Computerprogrammen zur Datenverarbeitung und -verfolgung;

- das Design und die Errichtung von Homepages und Internetseiten, Kommunikationsdiensten und Unterhaltungsdiensten;

- das Veranstalten und Durchführen von gesellschaftlichen Events, Werbungs- und Vermarktungsdiensten und E-Commerce-Tätigkeit.

The following managing directors are managing Debtor by implementing the principles and guidelines established by the administrative board of Debtor:

- Colleen Brown, United States, August 4, 1958;

- Kristie Goodgion, United States, April 14, 1979.

### 4.     Object and purpose of business

The object and purpose of Debtor according to § 3 of the articles of association is the investment in as well as the establishment and managing of companies or the administration of equity interests in companies as well as the provision of administrative and holding functions for its affiliated companies that operate in the following business areas or parts thereof:

- the operation and the provision of services in particular in the areas of matchmaking, dating and contact initiation;

- the development, operation and marketing of software, maintenance of networks of contacts, design and creation of computer programs for data processing and tracking;

- the design and creation of homepages and internet web sites, communication services and entertainment services;

- The arranging and conducting of social events, advertising and marketing services and e-commerce activity.

Die Schuldnerin kann in den genannten Geschäftsfeldern auch selbst tätig werden. Sie ist berechtigt, alle Geschäfte und Maßnahmen vorzunehmen, die mit den vorstehenden Tätigkeitsgebieten in Zusammenhang stehen oder sonst geeignet sind, dem Gesellschaftszweck der Schuldnerin unmittelbar oder mittelbar zu dienen.

### 5.    Aktionärsstruktur

Die Schuldnerin hat gemäß § 6 Abs. 1 ihrer Satzung Namensaktien im Sinne von § 67 AktG ausgegeben. Das von der Schuldnerin geführte Aktienregister weist aktuell sieben Aktionäre auf. Von den 2.661.385 auf den Namen lautenden Stückaktien werden derzeit 37.600 von der Schuldnerin als eigene Aktien gehalten.

Die Aktien der Schuldnerin waren im Rahmen einer sog. American Depository Shares („ADS")-Struktur an dem Nasdaq Capital Market, New York, USA, gelistet. Dabei wurden die Aktien der Schuldnerin nicht selbst gehandelt, sondern ein Teil der Aktien vermittelt über sog. American Depository Receipts („ADRs"). Diese ADRs werden von einer US-Bank, welche einen Teil der eigentlichen Aktien hält, als Wertpapierzertifikat für die von ihr gehaltenen Aktien an der Emittentin ausgestellt. Ein ADR-Zertifikat repräsentiert eine Aktie (oder einen Bruchteil einer Aktie) der jeweiligen ausländischen Emittentin und wird an der US-amerikanischen Börse gehandelt. Derartige Strukturen werden aufgesetzt, da die Wertpapierabwicklung (*settlement*) von ADRs in den USA wesentlich reibungsloser funktioniert als von deutschen Aktien. In Übereinstimmung mit dem ADR-Programm der Schuldnerin repräsentiert jedes ADR ein Zehntel der Stammaktie der Schuldnerin. Mittlerweile wurde die Börsennotierung der ADR aufgehoben (sog. Delisting). Seither werden die ADS „over the

Debtor is entitled to carry out itself activities and operations in the aforementioned lines of business. It is entitled to carry out all transactions and actions which are related to the aforementioned lines of business or otherwise appropriate to serve directly or indirectly the objects of Debtor.

### 5.    Shareholder structure

Pursuant to Sec. 6 (1) of its Articles of Association, Debtor has issued registered shares within the meaning of Sec. 67 AktG. The share register kept by the Debtor currently shows seven shareholders. Of the 2,661,385 registered shares, 37,600 are held by Debtor as treasury shares.

The shares of Debtor were listed on the Nasdaq Capital Market, New York, USA, as part of a so-called American Depository Shares ("ADS") structure. The shares of the Debtor were not traded themselves but a part of the shares brokered via so-called American Depository Receipts ("ADRs"). These ADRs are issued by a US bank, which holds a part of the the shares, as a securities certificate for the shares it holds in the issuer. An ADR certificate represents one share (or a fraction of a share) of the respective foreign issuer and is traded on the U.S. stock exchange. Such structures are set up because the settlement of ADRs in the U.S. is much smoother than that of German shares. In accordance with Debtor's ADR program, each ADR represents one tenth of Debtor's ordinary shares. In the meantime, the stock exchange listing of the ADRs has been delisted (so-called delisting). Since then, the ADSs have been traded "over the counter" ("OTC")

counter" („**OTC**") am OTCQX® Best Market unter der Kennzeichnung LOVLY gehandelt.

on the OTCQX® Best Market under the designation LOVLY.

### 6. Finanzierungsstruktur

### 6. Financing structure

Die Spark-Gruppe finanziert sich hauptsächlich über das MGG-Darlehen in Höhe von USD 100.000.000,00. Daneben hat die Schuldnerin mit Stand zum 30. September 2023 Verbindlichkeiten aus konzerninterner Finanzierung in Höhe von USD 59.103.547,57. Dem stehen Forderungen der Schuldnerin in Höhe von USD 159.565,98 gegenüber ihren Tochtergesellschaften gegenüber.

Spark Group mainly finances itself through the MGG Loan in the amount of USD 100,000,000.00. In addition, as of September 30, 2023, Debtor has intercompany loan payables of USD 59,103,547.57, which are offset by intercompany loan receivables of USD 159,565.98 from Debtor's subsidiaries.

### II. Verfahrensbezogene Angaben

### II. Procedure-related information

### 1. Zugangsvoraussetzungen des StaRUG

### 1. Entry requirements of StaRUG

Die Schuldnerin ist drohend zahlungsunfähig und kann daher gemäß § 29 Abs. 1 StaRUG die Verfahrenshilfen des Stabilisierungs- und Restrukturierungsrahmens in Anspruch nehmen. Ohne diese Inanspruchnahme und die auf die Durchführung des Restrukturierungsverfahrens bedingte Interim-Finanzierung wäre die Schuldnerin nicht in der Lage, ihre Verbindlichkeiten innerhalb des Prognosezeitraums des § 18 Abs. 2 InsO zu bedienen, zumal mit einer sofortigen Fälligstellung des MGG-Darlehens gerechnet werden müsste. Diesbezüglich wird auf die als **Anlage 1** beigefügte Liquiditätsplanung (unter Außerachtlassung der Planmaßnahmen und der auf die Durchführung des Restrukturierungsverfahrens bedingten Interim-Finanzierung) verwiesen. Ferner wird auf die Darstellung der wirtschaftlichen Verhältnisse der Schuldnerin unter B.III.1. verwiesen.

Debtor is threatened with insolvency and can therefore take advantage of the procedural assistance provided by the stabilization and restructuring framework pursuant to Sec. 29 (1) StaRUG. Without this utilization and the Interim Financing conditional to the implementation of the restructuring proceedings, Debtor would not be able to pay its liabilities within the forecast period of Sec. 18 (2) of the German Insolvency Code ("**InsO**"), especially since an immediate repayment of the MGG Loan would have to be expected. In this regard, reference is made to the liquidity planning (not considering the plan measures and the Interim Financing conditional on the implementation of the restructuring proceedings) attached as **Annex 1**. Furthermore, reference is made to the description of the economic circumstances of the Debtor under B.III.1.

Die Schuldnerin trifft aktuell keine Insolvenzantragspflicht. Sie ist weder zahlungsunfähig im Sinne des § 17 InsO noch überschuldet im Sinne des § 19

Debtor is currently not obliged to file for insolvency. It is neither insolvent within the meaning of Sec. 17 InsO nor overindebted within the

InsO. Zur Widerlegung einer etwaigen Zahlungsunfähigkeit wird zum einen auf den aus **Anlage 2** folgenden Liquiditätsplan zum Zeitpunkt der Planvorlage verwiesen. Die Liquidität der Schuldnerin als Holdinggesellschaft ergibt sich hierbei aus der Liquidität ihrer operativen Tochtergesellschaften. Aus diesem Grund wird dem Restrukturierungsplan neben einem Liquiditätsstatus auf Einzelgesellschaftsebene auch ein konsolidierter Liquiditätsstatus auf Gruppenebene zum Nachweis der Zahlungsfähigkeit beigefügt.

Zum anderen gewährt MGG der Schuldnerin die Interim-Finanzierung in Form eines Kreditrahmens, dessen Nutzung an den Liquiditätsbedarf und das Erreichen bestimmter Verfahrensschritte des StaRUG-Verfahrens geknüpft ist. Während des StaRUG-Verfahrens stehen der Schuldnerin somit hinreichende liquide Mittel zur Verfügung. Im Rahmen der Stillhalte- und Zwischenfinanzierungsvereinbarung hat MGG zudem erklärt, die laut der Finanzierungsvereinbarung eingetretenen Kündigungsrechte während der Durchführung des StaRUG-Verfahrens nicht auszuüben.

Eine insolvenzrechtliche Überschuldung der Schuldnerin im Sinne von § 19 InsO besteht aktuell nicht, da unter Berücksichtigung der Maßnahmen des Restrukturierungsplans (vgl. Begründung zu § 34 Abs. 3 StaRUG-RegE, BT-Drucks. 19/24181, S. 137) eine positive Fortbestehensprognose besteht. Ein Zustandekommen des Restrukturierungsplans und seine plangemäße Umsetzung sind nach Einschätzung der Schuldnerin überwiegend wahrscheinlich, da das Restrukturierungsvorhaben mit Unterstützung des Großgläubigers MGG durchgeführt wird.

Schließlich wird auf die als **Anlage 3** beigefügte Erklärung zur Bestandsfähigkeit gemäß § 14 Abs. 1 StaRUG verwiesen.

meaning of Sec. 19 InsO. In order to refute any inability to pay, reference is made to the liquidity planning at the time of submission of the Restructuring Plan as shown in **Annex 2**. The liquidity of Debtor as a holding company is derived from the liquidity of its operating subsidiaries. For this reason, the Restructuring Plan is not only supplemented by a liquidity status at individual company level, but also by a consolidated liquidity status at Spark Group level to demonstrate solvency.

On the other hand, MGG is granting Debtor Interim Financing in the form of a credit facility, the use of which is linked to liquidity needs and the achievement of certain procedural steps in the StaRUG proceedings. Debtor thus has sufficient liquid funds at its disposal during the StaRUG proceedings. Under the forbearance and interim loan agreement, MGG has also declared that it will not exercise its termination rights under the Financing Agreement during the implementation of the StaRUG proceedings.

Debtor is currently not overindebted under insolvency law within the meaning of Sec. 19 InsO because, considering the measures of the Restructuring Plan (cf. explanatory memorandum to Sec. 34 (3) StaRUG-RegE, BT-Drucks. 19/24181, p. 137), there is a positive prognosis for its continued existence. Debtor believes that it is highly likely that the Restructuring Plan will be implemented as planned, as the restructuring project will be carried out with the support of the main creditor, MGG.

Finally, reference is made to the statement of viability according to Sec. 14 (1) StaRUG attached as **Annex 3**.

**2.    Restrukturierungsgericht, Aktenzeichen**

Die Anzeige des Restrukturierungsvorhabens erfolgte beim Amtsgericht Charlottenburg – Restrukturierungsgericht –. Die Restrukturierungssache wird unter dem Aktenzeichen 36s RES 6525/23 geführt. Frühere Restrukturierungssachen betreffend die Schuldnerin existieren nicht.

**3.    Restrukturierungsbeauftragter**

Das Amtsgericht Charlottenburg – Restrukturierungsgericht – bestellte mit Beschluss vom 30. Oktober 2023

> Dr. Philipp Hackländer
> c/o White & Case Insolvenz GbR
> John F. Kennedy-Haus
> Rahel Hirsch-Straße 10
> 10557 Berlin

zum Restrukturierungsbeauftragten.

**III.    Unternehmens- und krisenbezogene Angaben**

**1.    Wirtschaftliche Situation des Schuldners und Krisenanalyse**

**a)    Allgemeine Informationen**

Schuldnerin ist die oberste Muttergesellschaft der „**Spark-Gruppe**" (näher zu dieser unter nachstehendem Abschnitt B.III.4.) und übt ausschließlich Holdingfunktionen aus.

Die wichtigsten Tochtergesellschaften sind Spark Networks Services GmbH, eine Gesellschaft mit beschränkter Haftung deutschen Rechts, Spark Net-

**2.    Restructuring Court, case number**

Notification of the restructuring project was made to the Local Court Charlottenburg – Restructuring Court –. The restructuring case is filed under case number 36s RES 6525/23. Prior restructuring cases with regard to Debtor do not exist.

**3.    Restructuring officer**

By court order dated October 30, 2023, the Local Court Charlottenburg – Restructuring Court – appointed

> Dr. Philipp Hackländer
> c/o White & Case Insolvenz GbR
> John F. Kennedy-Haus
> Rahel-Hirsch-Straße 10
> 10557 Berlin

as restructuring officer.

**III.    Business and crisis-related information**

**1.    Economic situation of the debtor and crisis analysis**

**a)    General information**

Debtor is the ultimate parent of "**Spark Group**" (as further described under Section B.III.4. below) and has holding functions solely.

The main subsidiaries consist of Spark Networks Services GmbH, a limited liability company under German law, Spark Networks, Inc., a limited liability company under the laws of

works, Inc., eine Gesellschaft mit beschränkter Haftung nach dem Recht des US-Bundesstaates Delaware, und Zoosk, Inc., eine Gesellschaft mit beschränkter Haftung nach dem Recht des US-Bundesstaates Delaware.

Die Spark-Gruppe ist gemessen am Umsatz das viertgrößte Online-Dating-Unternehmen in Nordamerika und Europa. Die Spark-Gruppe fokussiert sich auf die demographische Gruppe der über 40-Jährigen und auf glaubensbasierte Beziehungen. Sie unterhält ein Portfolio mehrerer Plattform-Marken, die für Kunden weltweit zugänglich sind. Der derzeitige Schwerpunkt liegt in den USA. Die wichtigsten Plattform-Marken der Spark-Gruppe umfassen Zoosk, Elite Singles und Silver Singles, welche hauptsächlich auf den nordamerikanischen Markt abzielen.

### b)   Erwerb von Zoosk, Inc. in 2019

Im Laufe des Jahres 2019 erwarb die Spark-Gruppe sämtliche Anteile an Zoosk, Inc., einer Gesellschaft mit beschränkter Haftung nach dem Recht des US-Bundesstaates Delaware. Der Erwerb wurde fremdfinanziert. Die Fremdfinanzierung wurde am 11. März 2022 durch das MGG-Darlehen über USD 100.000.000,00 refinanziert. Darlehensnehmer sind die Schuldnerin, Spark Networks, Inc. und Zoosk, Inc. Zusätzlich traten folgende Tochtergesellschaften der Schuldnerin der Finanzierungsvereinbarung mit MGG als Garanten bei: Spark Networks Services GmbH, Spark Networks USA, LLC, Smooch Labs, Inc., Minglematch, Inc., Spark Networks Limited, LOV USA, LLC. Das MGG-Darlehen wurde ursprünglich mit einem jährlichen Zinssatz verzinst, der dem britischen London Inter-Bank Offered Rate, kurz LIBOR-Satz, zuzüglich 7,50 Prozentpunkte bzw. dem Referenzsatz (wie in der Finanzierungsvereinbarung definiert) zuzüglich 6,50 Prozentpunkte entspricht. Im Zuge mehrerer

Delaware, and Zoosk, Inc., a limited liability company under the laws of Delaware.

Spark Group is the fourth largest online dating company across North America and Europe by revenue. The Spark Group focuses on the demographic group of age over 40 and faith-based affiliations. It operates a portfolio of several brands accessible to customers across the globe. The current focus is on the USA. The main brands of Spark Group comprise Zoosk as well as Elite Singles and Silver Singles, which mainly target the Northern American markets.

### b)   Acquisition of Zoosk, Inc. in 2019

In the course of 2019, Spark Group acquired all shares of Zoosk, Inc., a Delaware corporation. The acquisition was financed by a loan facility. The loan facility was refinanced on March 11, 2022, by the MGG Loan of USD 100,000,000.00. Borrowers of the MGG Loan are Debtor, Spark Networks, Inc. and Zoosk, Inc. Additionally, the following subsidiaries of Debtor entered into the Financing Agreement with MGG to act as guarantors: Spark Networks Services GmbH, Spark Networks USA, LLC, Smooch Labs, Inc., Minglematch, Inc., Spark Networks Limited, LOV USA, LLC. Borrowings under the MGG Loan originally accrued interest at a rate per annum equal to the British London Inter-Bank Offered Rate, short LIBOR rate, plus 7.50 percentage points or the Reference Rate (as defined in the Financing Agreement), plus 6.50 percentage

Stillhaltevereinbarungen wurde der Zinssatz inzwischen auf den US-amerikanischen Referenzzinssatz SOFR zuzüglich 10,5 Prozentpunkte erhöht. Das MGG-Darlehen ist nach ursprünglicher Finanzierungsvereinbarung seit 30. Juni 2023 bis 11. März 2027 in vierteljährlichen Tilgungsraten zur Rückzahlung fällig und ist im Wesentlichen durch das gesamte Vermögen der Schuldnerin, Spark Networks, Inc., Zoosk, Inc. sowie deren jeweilige Tochtergesellschaften als Garanten besichert.

Die Anteile an diversen Gesellschaften der Spark-Gruppe wurden als Sicherheiten für das MGG-Darlehen an MGG verpfändet. Pfandgläubiger ist MGG Investment Group LP als Sicherheitenagent für die darlehensgebenden MGG-Gesellschaften. Einige Unternehmen der Spark-Gruppe haben ebenfalls Sicherungsverträge nach New Yorker, englischem und deutschem Recht abgeschlossen, in denen sie ein Sicherungsrecht an ihren gesamten Vermögenswerten zur Besicherung des MGG-Darlehens eingeräumt haben.

### c)    Krisenanalyse – Wirtschaftliche Lage der Spark-Gruppe

Seit dem Geschäftsjahr 2020 sind die Umsätze und das Ergebnis der Spark-Gruppe rückläufig. Die Spark-Gruppe sieht die Hauptursache für den Rücklauf in einer unzureichenden Marketingstrategie, technischen Schwierigkeiten im Umgang mit den wesentlichen Applikationen bedingt durch den Wissens-Abfluss resultierend aus der personellen Neuausrichtung der Vorjahre sowie dem Umgang mit Betrugsprofilen und weiteren Cyber-Angriffen auf die Plattformen. Ineffiziente Marketingausgaben haben zu einem Rückgang der Abonnenten bei allen Marken geführt, was in den letzten drei Jahren zu einem Rückgang des Cashflows und der Gewinnmargen der Spark-Gruppe geführt hat.

points as the case may be. In the course of several forbearance agreements, the interest rate has been increased to the U.S. reference rate SOFR plus 10.5 percentage points. The MGG Loan is under the original Financing Agreement due for repayment in quarterly installments from June 30, 2023 until March 11, 2027, and is secured by substantially all of the assets of Debtor, Spark Networks, Inc., Zoosk, Inc. and their respective subsidiary guarantors.

The shares of several of the Spark Group entities have been pledged to MGG as collateral for the MGG Loan. The pledges are held by MGG Investment Group LP as collateral agent of the lending MGG entities. Certain of the entities within the Spark Group have also entered into all asset security documents, governed by New York, English and German law, as applicable, pursuant to which they have granted a lien over substantially all of their assets as collateral for the MGG Loan.

### c)    Crisis analysis – Economic situation of Spark Group

Since the financial year 2020, the Spark Group's revenue and earnings have been declining. The Spark Group attributes the main reason for the decline to insufficient marketing strategy, technical difficulties in handling the main applications due to the knowledge run-off resulting from the personnel realignment in previous years and the handling of fraud profiles and further cyber-attacks on the platforms. Inefficient marketing spend has led to declining subscribers across the brands which has resulted in a reduction of Spark Group's cash flow and profit margins over the last three years.

| In Millions USD | FY 2020 | FY 2021 | FY 2022 | 9/30/23 YTD |
|---|---|---|---|---|
| Revenue | 233.0 | 216.9 | 187.8 | 120.9 |
| Gross profit | 90.5 | 84.9 | 69.9 | 50.4 |
| Net loss | (46.6) | (68.2) | (44.2) | (41.7) |
| Adjusted EBITDA | 37.7 | 33.0 | 18.5 | 14.1 |

Die Spark-Gruppe finanziert sich hauptsächlich über das MGG-Darlehen in Höhe von USD 100.000.000,00.

Aufgrund des Kapitaldienstes und hohen Abschreibungen im Jahr 2020 im Zusammenhang mit der Finanzierung der Übernahme der Zoosk, Inc. durch die Spark-Gruppe waren die Jahresergebnisse der Spark-Gruppe seit dem Geschäftsjahr 2020 durchgehend negativ. Die kumulierten Verluste in den Geschäftsjahren von 2020 bis 2022 betrugen rund USD 158.953.000.

Bedingt durch die rückläufigen Ergebnisse war der operative Cash Flow im Geschäftsjahr 2022 negativ und nicht ausreichend, um diverse Covenants gemäß der Finanzierungsvereinbarung zu erfüllen. Im Zeitraum vom 31. Dezember 2020 bis zum 30. September 2023 wurde der Barmittelbestand innerhalb der Spark-Gruppe um USD 15.500.000 verbraucht.

Spark Group mainly finances itself through the MGG Loan in the amount of USD 100,000,000.00.

Due to debt service and high depreciation and amortization in 2020 in connection with the financing of the acquisition of Zoosk, Inc. by the Spark Group, the Spark Group's operating results have been consistently negative since the financial year 2020. The accumulated losses in the financial years from 2020 to 2022 amounted to approx. USD 158,953,000.

Due to the declining earnings the operative cash flow has been negative in the financial year 2022 and not sufficient to enable Spark Group to comply with various covenants in the Financing Agreement. During the period from December 31, 2020, to September 30, 2023, cash reserves of Spark Group have been reduced by USD 15,500,000.

| In Millions USD | FY 2020 | FY 2021 | FY 2022 | 9/30/2023 |
|---|---|---|---|---|
| Cash and cash equivalent | 19.3 | 16.1 | 11.4 | 3.8 |

Zum Zeitpunkt der Veröffentlichung des IFRS-Abschlusses der Spark-Gruppe zum 31. Dezember 2022 enthielt der Prüfungsbericht der unabhängigen Wirtschaftsprüfungsgesellschaft der Spark-Gruppe

As of the date of the filing of the December 31, 2022 IFRS financial statements, Spark Group's independent registered public accounting firm's report contained an explanatory paragraph that expresses substantial doubt about

einen erläuternden Absatz, in dem erhebliche Zwei-fel an der Fähigkeit der Spark-Gruppe zur Fortfüh-rung der Geschäftstätigkeit innerhalb eines Jahres nach der Veröffentlichung des Abschlusses geäu-ßert wurden. Die wichtigsten Umstände, die zu die-ser Schlussfolgerung führten, waren die Tatsache, dass das Unternehmen wiederkehrende Verluste aus dem operativen Geschäft erwirtschaftet hat, ein an-haltender Rückgang der Einnahmen, Wertminde-rungen des Zoosk-Firmenwerts und der immateriel-len Vermögenswerte, Mittelabflüsse aus dem opera-tiven Geschäft und ein Defizit im Umlaufvermögen.

Die in dem erläuternden Absatz des Berichts der Wirtschaftsprüfungsgesellschaft geäußerten erheb-lichen Zweifel an der Fortführungsfähigkeit der Schuldnerin und ihrer Tochtergesellschaften führten dazu, dass die Spark-Gruppe bestimmte Verpflich-tungen aus der Finanzierungsvereinbarung mit MGG nicht einhielt. Dies erlaubte es MGG, sämtli-che Rechte im Rahmen der Finanzierungsvereinba-rung auszuüben, einschließlich, das MGG-Darlehen ganz oder teilweise fällig zu stellen. Infolgedessen war das Unternehmen nach IFRS verpflichtet, das MGG-Darlehen als kurzfristige Verbindlichkeit, die von den Kreditgebern jederzeit für fällig erklärt werden kann, auszuweisen. Die Spark-Gruppe er-füllt keine der in der Finanzierungsvereinbarung festgelegten Covenants mehr.

Aufgrund der anhaltenden Verletzung mehrerer Covenants gemäß der Finanzierungsvereinbarung schloss die Spark-Gruppe diverse Nachträge und Stillhaltevereinbarungen hinsichtlich des MGG-Darlehens ab (ausführlich hierzu unter nachstehen-dem Abschnitt B.III.1.e)). In diesem Zusammen-hang holte die Spark-Gruppe ein Sanierungsgutach-ten von Ernst & Young GmbH Wirtschaftsprü-fungsgesellschaft Strategy and Transactions ein,

Spark Group's ability to continue as a "going concern" within one year after the date that the financial statements were issued. Principal conditions and events leading to this conclu-sion were that Spark Group has generated re-curring losses from operations, continued de-cline in revenues, incurred impairment charges to its Zoosk goodwill and intangible assets, cash outflows from operations and has a work-ing capital deficiency.

The issuance of an opinion with an explanatory paragraph expressing substantial doubt about the ability of Debtor and its subsidiaries to con-tinue as a going concern caused Spark Group to fail to comply with certain obligations of the Financing Agreement with MGG. This eventu-ally permitted MGG to exercise all rights and remedies under the Financing Agreement, in-cluding declaring all or any portion of the MGG Loan outstanding to be accelerated and due and payable. As a result, Spark Group was required, under IFRS, to reclassify the MGG Loan as a short-term liability, which is subject to be declared due by the lenders at any point in time. The Spark Group is not in compliance with all of the covenants in the Financing Agreement.

Because of its continuing covenant default, Spark Group has negotiated several amend-ments to the Financing Agreement and multi-ple forbearance agreements with respect thereto (see more detailed under Sec-tion B.III.1.e) below). In connection with that process, Spark Group obtained a restructuring opinion from Ernst & Young GmbH Wirtschaftsprüfungsgesellschaft Strategy and Transactions based on IDW S6 and taking into

welches in Anlehnung an IDW S6 und unter Berücksichtigung der höchstrichterlichen Rechtsprechung erstellt wurde. Das Sanierungsgutachten vom 11. August 2023 wies einen Finanzierungsbedarf der Schuldnerin in Höhe von USD 20.000.000 aus, der vorzugsweise über eine Eigenkapitaleinlage befriedigt werden solle.

Die Ungewissheit, ob die Spark-Gruppe in der Lage ist, ihren Geschäftsbetrieb fortzuführen, hat zu wesentlichen und negativen Auswirkungen auf den Aktienkurs der Schuldnerin geführt, was sich wiederum negativ auf die Fähigkeit der Spark-Gruppe auswirkt, ausreichende Finanzmittel für den Geschäftsbetrieb aufzubringen und den Geschäftsbetrieb fortzuführen.

Die Spark-Gruppe hat kürzlich wesentliche Schwachstellen in ihrem internen Kontrollsystem für die Finanzberichterstattung festgestellt. Die Spark-Gruppe ist der Ansicht, dass das Unvermögen, ein wirksames System der internen Kontrolle über die Finanzberichterstattung zu unterhalten, das Vertrauen der Anleger in die Fähigkeit der Spark-Gruppe, ihre Finanzlage, Betriebsergebnisse und Cashflows korrekt zu berichten, beeinträchtigt hat.

d)    Krisenanalyse – Wirtschaftliche Lage der Schuldnerin

Die Schuldnerin befindet sich gegenwärtig in einer Ergebnis- und Liquiditätskrise, hat aber grundlegende operative und finanzielle Umstrukturierungsmaßnahmen eingeleitet, um den Turnaround zu schaffen. Diese Umstrukturierungsmaßnahmen werden in nachfolgendem Abschnitt B.IV.1. näher beschrieben.

Die Schuldnerin hat kein eigenständiges operatives Geschäft. Sie erbringt lediglich administrative Leistungen für Gesellschaften der Spark-Gruppe.

account the highest court rulings. The restructuring opinion dated August 11, 2023, detected a funding demand of Debtor in an amount of USD 20,000,000 to be made preferably in equity.

Uncertainty regarding Spark Group's ability to continue as a going concern has resulted in material and adverse impacts on the price of its common stock, negatively impacting its ability to raise sufficient funds for operations and continue as a going concern.

Spark Group previously identified material weaknesses in its internal control over financial reporting. Spark Group believes that its inability to maintain an effective system of internal control over financial reporting has adversely affected investor confidence in Spark Group's ability to report accurately its financial condition, results of operations and cash flows.

d)    Crisis analysis – Economic situation of Debtor

Debtor is currently in a profitability and liquidity crisis, but has initiated fundamental operating and financial restructuring measures to achieve a turnaround. Those restructuring measures are further described in Section B.IV.1. below.

Debtor has no stand-alone operations. It only provides administrative services for companies of the Spark Group.

Die wesentlichen Vermögenswerte der Schuldnerin umfassen die Beteiligungen an der Spark Networks, Inc. und der Spark Network Services GmbH, die in den Geschäftsjahren 2020 bis September 2023 wesentlichen Abschreibungen unterlagen und zusammen zum Stichtag 30. September 2023 noch mit einem Buchwert in Höhe von USD 184.661.543,84 in der US-GAAP-Bilanz der Schuldnerin erfasst sind. Das Umlaufvermögen der Schuldnerin zum 30. September 2023 beträgt USD 4.895.560,53.

The main assets of Debtor comprise shareholdings in Spark Network Services, Inc. and Spark Network Services GmbH, which were subject to material depreciation in the financial years 2020 through September 2023 and by September 30, 2023, are shown with a book value of USD 184,661,543.84 in Debtor's US GAAP financial statements. Current assets of Debtor amount to USD 4,895,560.53 by September 30, 2023.

e)  **Anpassung der Finanzierungsvereinbarung mit MGG als Folge der Krise und weitere Restrukturierungsmaßnahmen vor dem StaRUG-Verfahren**

e)  **Modification of the Financing Agreement with MGG as consequence of the crisis and other restructuring measures pre-StaRUG**

Als sich der Zustand des Geschäftsbetriebs verschlechterte, formulierten, bewerteten und implementierten der Verwaltungsrat und das Managementteam der Schuldnerin zahlreiche Maßnahmen zur Kostensenkung und Umsatzsteigerung, um die Liquidität zu verbessern und das Unternehmen zu entschulden. Leider erwiesen sich diese Maßnahmen als unzureichend, um den anhaltenden Rückgang des Geschäftsbetriebs der Spark-Gruppe zu verhindern.

As operations degraded, Debtor's administrative board and management team formulated, evaluated and implemented numerous cost reduction and revenue enhancement actions in an attempt to enhance liquidity and de-lever the company. Unfortunately, these actions proved insufficient to prevent the continued decline of the Spark Group's operations.

Im Zeitraum von Juli 2022 bis Februar 2023 trieb die Spark-Gruppe einen möglichen Verkauf ihrer gesamten Vermögensgegenstände voran. Der M&A-Prozess wurde durch eine weltweit agierende Investment Bank (Moelis & Company) im Auftrag der Schuldnerin durchgeführt und hierbei nahezu 100 potenzielle Finanz- und strategische Investoren angesprochen. Fünf verschiedene potenzielle Käufer meldeten anfängliches Interesse an. Die Geschäftsleitung der Spark-Gruppe und die Investmentbank führten aktiv mit jedem der fünf potenziellen Käufer Verhandlungen, hielten zahlreiche Treffen ab und gewährten Zugang zu einem Daten-

Between July 2022 and February 2023, the Spark Group entertained a potential sale of substantially all of its assets. The M&A process was conducted by a global investment bank (Moelis & Company) retained by Debtor, reaching out to nearly 100 potential strategic and financial investors. Five separate potential buyers showed initial interest. The Spark Group's management and the investment bank actively engaged each of the five potential buyers, held numerous meetings, and provided access to a data room with robust diligence. Ultimately, after further discussion and diligence, each potential buyer withdrew their proposal

raum, in dem die potenziellen Käufer eine umfassende Prüfung vornehmen konnten. Nach weiteren Gesprächen und Prüfungen zogen schließlich alle potenziellen Käufer ihre Angebote zurück (von denen keines jemals in einem Term Sheet näher spezifiziert wurde). Keines der genannten Angebote hätte die ausstehenden Verbindlichkeiten unter dem MGG-Darlehen abgedeckt und somit zu einem positiven Kaufpreis für das Eigenkapital geführt. Letztendlich war somit keiner der potenziellen Käufer bereit, eine endgültige Vereinbarung zum Erwerb der Spark-Gruppe zu schließen. Infolgedessen gab es trotz der von der Spark-Gruppe im Zusammenhang mit dem M&A-Prozess eingesetzten Zeit und Ressourcen keinen Interessenten, der an der Übernahme einiger oder aller Vermögenswerte der Spark-Gruppe interessiert gewesen wäre.

Infolge der vorbeschriebenen Entwicklungen wurde auch die Finanzierungsvereinbarung mit MGG mehrfach angepasst. Am 19. August 2022 schloss die Schuldnerin die 1. Änderungsvereinbarung zur Finanzierungsvereinbarung ab, in der bestimmte finanzbezogene Covenants in Bezug auf die Prüfung der vierteljährlichen Verschuldungsquote der Schuldnerin und der Mindestausgaben der Schuldnerin geändert wurden. Am 29. März 2023 schloss die Schuldnerin die 2. Änderungsvereinbarung zur Finanzierungsvereinbarung, die, unter den Voraussetzungen, dass die Schuldnerin ein Gutachten zu den Fortführungsaussichten einholt und einen Finanzberater hinzuzieht, eine Stillhaltevereinbarung enthielt, die einen Stillhaltezeitraum bis zum 15. Mai 2023 gewährte und die Definition des bereinigten EBITDA in der Finanzierungsvereinbarung änderte.

Am 15. Mai 2023 schloss die Schuldnerin die 1. Änderungsvereinbarung zur Stillhaltevereinbarung ab, welche u. a. den Stillhaltezeitraum bis zum 25. Mai 2023 verlängerte.

(none of which were ever specified in more detail through a term sheet). None of these aforementioned proposals would ever have covered the outstanding debt of the MGG Loan and, therefore, none of them would have resulted in a positive equity purchase price. Ultimately, no potential buyer was willing to enter into a definitive agreement to acquire Spark Group. Consequently, Spark Group was left with no entity interested in purchasing some or all of Spark Group's assets, in spite of the time and resources Spark Group had used in connection with the M&A process.

Because of the developments described above, the Financing Agreement with MGG was amended on several occasions as well. On August 19, 2022, Debtor entered into amendment no. 1 to the Financing Agreement, which revised certain financial covenants related to the testing of Debtor's quarterly leverage ratio and Debtor's minimum market spend. On March 29, 2023, Debtor entered into amendment no. 2 to the Financing Agreement containing a forbearance agreement which granted forbearance until May 15, 2023, with respect to Debtor's receipt of a going concern opinion on the condition that Debtor retains a financial advisor, and amended the definition of Adjusted EBITDA in the Financing Agreement.

On May 15, 2023, Debtor entered into amendment no. 1 to the forbearance agreement which, *inter alia,* extended the forbearance termination date to May 25, 2023.

Am 25. Mai 2023 schloss die Schuldnerin die 2. Änderungsvereinbarung zur Stillhaltevereinbarung ab, welche den Stillhaltezeitraum bis zum 15. Juni 2023 verlängerte.

Am 15. Juni 2023 schloss die Schuldnerin die 3. Änderungsvereinbarung zur Stillhaltevereinbarung, welche den Stillhaltezeitraum bis zum 14. Juli 2023 u. a. unter der Bedingung verlängerte, dass die Schuldnerin einen Wirtschaftsprüfer mit der Erstellung eines IDW S6-Sanierungsgutachtens beauftragt.

Seit dem 14. Juli 2023 und bis zum 20. Oktober 2023 schloss die Schuldnerin mit MGG die Änderungsvereinbarungen Nr. 4 bis 14 zur Stillhaltevereinbarung sowie Änderungsvereinbarung Nr. 1 zur 14. Änderungsvereinbarung zur Stillhaltevereinbarung ab, in welchen der Stillhaltezeitraum sukzessive bis zum 19. Dezember 2023 verlängert wurde. Änderungsvereinbarung Nr. 14 umfasst verschiedene Meilensteine in Bezug auf das Restrukturierungsverfahren, die erfüllt werden müssen, um das Stillhalten aufrecht zu erhalten.

Bereits vor und auch während des Stillhaltezeitraums (einschließlich der verschiedenen Änderungsvereinbarungen) arbeiteten der Verwaltungsrat und das Managementteam der Schuldnerin unermüdlich daran, alternative Restrukturierungsoptionen zu ermitteln.

Während des Stillhaltezeitraums entwickelten der Verwaltungsrat und das Managementteam der Schuldnerin und Ankura Consulting Group, LLC einen Umstrukturierungsplan („**Umstrukturierungsplan**"), um die Spark-Gruppe wieder rentabel zu machen und Wachstum zu erzielen. Der Umstrukturierungsplan wurde vom Verwaltungsrat der Schuldnerin bewertet und genehmigt. Der Plan wurde anschließend sowohl zur Unterstützung von

On May 25, 2023, Debtor entered into amendment no. 2 to the forbearance agreement which extended the forbearance period termination date to June 15, 2023.

On June 15, 2023, Debtor entered into amendment no. 3 to the forbearance agreement which extended the forbearance period termination date to July 14, 2023, *inter alia,* conditioned on Debtor engaging an auditor to provide an IDW S6 restructuring opinion.

From July 14, 2023, to October 20, 2023, Debtor entered into amendments nos. 4 through 14 to the forbearance agreement and amendment no. 1 to amendment no. 14 to the forbearance agreement which extended the forbearance period termination date successively to December 19, 2023. Amendment no. 14 contains various StaRUG restructuring milestones to be fulfilled in order to maintain such forbearance.

Before and throughout the forbearance period (including amendments) Debtor's administrative board and management team worked tirelessly to find alternative restructuring options.

During the forbearance period, Debtor's administrative board and management team and Ankura Consulting Group, LLC developed a transformation plan to return the Spark Group to profitability and growth that was evaluated and approved by the board of Debtor (the "**Transformation Plan**"). The Transformation

Verhandlungen über zusätzliche Investitionen von MGG als auch zur Suche nach zusätzlichen externen Investitionen verwendet.

Als sich herausstellte, dass der Verkaufsprozess wahrscheinlich nicht zu einer erfolgreichen Transaktion führen würde, zogen der Verwaltungsrat und das Managementteam mit Unterstützung von Rechts- und Finanzberatern die Durchführung eines Bezugsrechtsangebots in Betracht, um zusätzliches Kapital zu beschaffen. Nach einer umfassenden Analyse wurde festgestellt, dass dieser Prozess möglicherweise nicht genügend Mittel einwerben und einen längeren Zeitraum erfordern würde, als die Spark-Gruppe an Liquidität zur Verfügung hatte. Grund hierfür ist, dass ein Bezugsangebot ein öffentliches Angebot darstellt, das nach US-Recht die Erstellung, Prüfung und Veröffentlichung eines Wertpapierprospekts erforderlich gemacht hätte.

Eine andere, vielversprechendere Alternative zur Beschaffung zusätzlicher Liquidität war eine Privatplatzierung neuer Aktien – ein sog. Private Placement. Das Private Placement hätte den Vorteil einer potenziell kürzeren Umsetzungsdauer (kein Prospekterfordernis) und einer größeren Erfolgsgarantie geboten, wenn die wesentlichen bestehenden Aktionäre (oder andere Investoren) ausreichende Verpflichtungen eingegangen wären. Das Managementteam und der Verwaltungsrat arbeiteten mit MGG zusammen, um eine Struktur für ein solches Private Placement zu entwickeln, die, obwohl nicht zwingend erforderlich, eine Beteiligung zugelassener Aktionäre ermöglichte, in der Hoffnung, genügend Unterstützung durch die Aktionäre zu erhalten, um den erforderlichen Beschluss der Hauptversammlung der Schuldnerin herbeizuführen. Das Managementteam und der Verwaltungsrat wandten sich zu diesem Zweck an eine Reihe der größten Aktionäre der Schuldnerin (d. h. wesentliche ADR-Holder), um das Interesse an einer entsprechenden

Plan was subsequently used both to support negotiations for additional investment from MGG and to seek additional investment externally.

As it became apparent that the sale process was unlikely to result in a successful transaction, the administrative board and management team, with the assistance of legal and financial advisors, considered conducting a subscription offering to raise additional capital. After extensive analysis, it was determined that this process may not raise enough funds and would require a longer timeline than the Spark Group had liquidity to support. The reason for this is that a subscription offering constitutes a public offering that would have required the preparation, review and publication of a securities prospectus under U.S. law.

Another, more promising alternative of obtaining additional liquidity was a private placement of new shares. The private placement would have offered the advantage of a potentially shorter implementation period (no prospectus requirement) and a greater guarantee of success if sufficient commitments had been made by the existing significant shareholders (or other investors). Management and the administrative board worked with MGG to develop a structure for such a private placement that, although not mandatory, would allow for the participation of accredited shareholders in the hope of obtaining sufficient shareholder support to bring about the required resolution at Debtor's annual general meeting. For this purpose, the management and the board approached to a number of Debtor's largest shareholders (i. e., significant ADR holders) to explore interest in voting accordingly at the annual general meeting and, if applicable, in making an investment.

Stimmabgabe in der Hauptversammlung und ggf. an einer Investition zu erkunden. Zwei Aktionäre unterzeichneten Verschwiegenheitsvereinbarungen und führten über einen Zeitraum von mehreren Wochen ausführliche Gespräche und Präsentationstermine mit Managementteam und Verwaltungsrat durch. Keiner der Aktionäre war letztlich an einer Investition in die Private Placement-Struktur interessiert. Einer der Aktionäre kündigte sogar an, gegen einen entsprechenden Beschluss der Hauptversammlung über eine Kapitalerhöhung zur Umsetzung des Private Placement zu stimmen. Das Erreichen der erforderlichen Mehrheit war ohne die Unterstützung der wesentlichen Aktionäre nicht realistisch. Den beiden Aktionären wurde die Möglichkeit gegeben, ihre eigenen Vorstellungen einer Private Placement-Struktur vorzustellen, was einer von ihnen auch tat, allerdings nicht in schriftlicher Form. Trotz wochenlanger Gespräche und mehrerer Anläufe des Managementteams und des Verwaltungsrats ließ sich schließlich keine Bereitschaft der Aktionäre erzielen, hinreichende und rechtzeitige Sanierungsbeiträge für ein Private Placement zu leisten und die Liquidität der Schuldnerin aufrecht zu erhalten.

Nachdem alle Möglichkeiten ausgeschöpft waren und die Liquidität ein kritisches Niveau erreicht hatte, blieb der Schuldnerin keine andere Möglichkeit, als ein StaRUG-Verfahren zu initiieren, um die notwendige Liquidität und Unterstützung zu erhalten, um die Spark-Gruppe zu retten, indem diese in die Lage versetzt wird, das Gesamt-Restrukturierungskonzept mithilfe des Großgläubigers MGG umzusetzen und die Spark-Gruppe zu Wachstum und Rentabilität zurück zu verhelfen.

Two shareholders signed NDAs and engaged in extensive discussions and presentations with management and the board over a period of several weeks. Eventually, neither shareholder was interested in investing in the private placement structure. One of the shareholders even announced that it would vote against a corresponding resolution of the annual general meeting on a capital increase to implement the private placement. Achieving the required majority was not realistic without the support of the main shareholders. The shareholders were given the opportunity to present their own ideas of a private placement option and one did but not in writing. Despite weeks of discussions and several attempts by the management team and board, it was ultimately not possible to achieve a willingness on the part of the shareholders to make sufficient and timely restructuring contributions for a private placement and to maintain the liquidity of Debtor.

Having exhausted every option, and with liquidity reaching critical levels, Debtor had no choice but to turn to a StaRUG process to obtain the necessary liquidity and relief to save Spark Group, allow it to complete its overall restructuring concept supported by the main creditor MGG and return Spark Group to growth and profitability.

**2.    Angaben zur Vermögenslage der Schuld-nerin**

**a)    Aktuelle Vermögenslage**

Aus der als **Anlage 4** beigefügten Pro-Forma-Ein-zelbilanz der Schuldnerin zum 30. September 2023 ergibt sich die Vermögenslage der Schuldnerin.

Die Schuldnerin unterliegt den Rechnungslegungs-vorgaben des HGB und erstellt deshalb Jahresab-schlüsse nach HGB sowie Konzernabschlüsse nach den International Financial Reporting Standards („**IFRS**") gemäß § 315e Abs. 1 HGB. Darüber hin-aus erstellt die Schuldnerin auf Gruppenebene um-fassende Quartalsberichte auf Grundlage U.S.-wert-papierrechtlicher Vorgaben nach US-GAAP. Für die Zwecke der Darstellung der wirtschaftlichen Lage der Schuldnerin wird im Rahmen des Restruk-turierungsplans auf letztere zurückgegriffen, soweit nicht zwingend nach HGB zu beurteilende Plan-maßnahmen betroffen sind.

Die als Anlage 4 beigefügte Pro-Forma-Einzelbi-lanz nach Rechnungslegungsvorgaben des HGB zeigt, dass ein nicht durch Eigenkapital gedeckter Fehlbetrag in Höhe von EUR 81.413.900,00 be-steht. Dieser resultiert aus dem Umstand, dass die Tochtergesellschaften derzeit nicht in der Lage sind, die Darlehensrückzahlungen gegenüber MGG zu leisten. Weil die Schuldnerin für das MGG-Darle-hen als weiterer Darlehensnehmer mithaftet, ist die Darlehensverbindlichkeit gegenüber MGG in der Pro-Forma-Einzelbilanz der Schuldnerin als Rück-stellung für ungewisse Verbindlichkeiten in Höhe von EUR 99.421.400,00 abgebildet. Etwaige Forde-rungen aus Rückgriffsansprüchen gegenüber den

**2.    Information on Debtor's financial sit-uation**

**a)    Current financial situation**

The pro forma individual balance sheet of the Debtor as of September 30, 2023 attached as **Annex 4** shows the financial situation of Debtor.

Debtor is subject to the accounting require-ments of the German Commercial Code (*Han-delsgesetzbuch,* "**HGB**") and therefore pre-pares annual financial statements in accordance with HGB as well as consolidated financial statements in accordance with International Fi-nancial Reporting Standards ("**IFRS**") pursu-ant to Sec. 315e (1) HGB. In addition, Debtor prepares comprehensive quarterly reports at Group level based on U.S. securities law re-quirements in accordance with US-GAAP. For the purpose of presenting the economic situa-tion of Debtor, the latter is used in the context of the Restructuring Plan, insofar as plan measures that must be assessed in accordance with HGB are not affected.

The pro forma individual balance sheet at-tached as Annex 4 according to German GAAP shows a deficit not covered by equity in the amount of EUR 81,413,900.00. This results from the fact that the subsidiaries are currently not in a position to service the principal and in-terest owed to MGG. Since Debtor is liable for repayment as a further borrower, the MGG Loan debt is currently shown in the pro forma individual balance sheet of Debtor as accrual for uncertain liability in the amount of EUR 99,421,400.00. Any receivables from re-course claims against the subsidiaries are to be adjusted in full in value, so that the accrual for

Tochtergesellschaften sind in voller Höhe im Wert zu berichten, sodass der Rückstellung für ungewisse Verbindlichkeiten kein Gegenwert auf der Aktivseite des Vermögensstatus gegenübersteht. Der hieraus und aus bereits vorhandenen Verlusten resultierende Bilanzverlust in Höhe von insgesamt EUR 192.164.100,00 übersteigt die vorhandene Kapitalrücklage und das gezeichnete Kapital um den vorgenannten nicht durch Eigenkapital gedeckten Fehlbetrag.

Das MGG-Darlehen war im Jahresabschluss zum 31. Dezember 2022 noch als Eventualverbindlichkeit bei den „Angaben zu Haftungsverhältnissen" genannt; Rückstellungen für eine mögliche Inanspruchnahme wurden zum 31. Dezember 2022 noch nicht gebildet. Dasselbe gilt für die U.S.-kapitalmarktrechtlichen Rechnungslegungswerke der Schuldnerin nach US-GAAP.

**b)    Zukünftige Vermögenslage unter Planannahmen**

Das Gesamt-Restrukturierungskonzept zielt darauf ab, die Spark-Gruppe durch Umsatzwachstum sowie verbesserte Gewinnspannen, EBITDA, Cashflow und eine allgemeine Stabilisierung der Spark-Gruppe zu stärken. Die geplanten Ziele des Gesamt-Restrukturierungskonzepts sind nachfolgend dargestellt:

uncertain liabilities is not offset by any countervalue on the asset side of the pro forma individual balance sheet. The accumulated loss resulting from this and from existing losses totaling EUR 192,164,100.00 exceeds the existing capital reserve and share capital by the aforementioned deficit not covered by equity.

The MGG Loan was only listed as a contingent liability under "Disclosures on contingent liabilities"; accruals for possible utilization have not been recognized as of December 31, 2022. The same applies to the Debtor's financial statements according to US-GAAP for U.S. securities law purposes.

**b)    Future financial situation under plan assumptions**

The overall restructuring concept is focused on driving Spark Group forward through revenue growth as well as improved margins, EBITDA, cash flow and general stabilization of Spark Group going forward. Planned results of the overall restructuring concept are below:

| In Millions USD | Actuals FY 2020 | Actuals FY 2021 | Actuals FY 2022 | Budget FY 2023 | Budget FY 2024 | Budget FY 2025 |
|---|---|---|---|---|---|---|
| Revenue | 233.0 | 216.9 | 187.8 | 160.7 | 180.3 | 195.3 |
| Gross profit | 90.5 | 84.9 | 69.9 | 64.9 | 80.4 | 94.5 |
| Net loss | (46.6) | (68.2) | (44.2) | (21.6) | 3.8 | 29.3 |
| Adjusted EBITDA | 37.7 | 33.0 | 18.5 | 15.9 | 35.3 | 47.5 |

Das Gesamt-Restrukturierungskonzept führt auch dazu, dass die Spark-Gruppe ab dem zweiten Quartal 2024 einen beträchtlichen freien Cashflow gene-

The overall restructuring concept also results in Spark Group beginning to generate significant free cash flow beginning the second quarter of

rieren wird, der zur Schuldentilgung und zum Abbau des Verschuldungsgrads der Schuldnerin verwendet werden soll.

Das außergerichtliche operative Restrukturierungskonzept gemäß Umstrukturierungsplan umfasst fünf Phasen und soll ab dem zweiten Quartal 2023 über einen Zeitraum von 18 bis 24 Monaten umgesetzt werden. Phase eins konzentriert sich auf die Auslagerung von Schlüsselfunktionen an Drittanbieter, die über das nötige Fachwissen und die nötige Kapazität verfügen, um den Plan innerhalb des erforderlichen Zeitrahmens umzusetzen. Die Spark-Gruppe hat bereits damit begonnen, indem sie Verträge mit einer führenden Performance-Marketing-Agentur und einem Anbieter von Managed Services im Technologiebereich unterzeichnet hat.

Phase zwei ist dem Abschluss der Entwicklung und dem Einsatz einer Reihe neuer und verbesserter mobiler Apps für die Marken der Spark-Gruppe gewidmet.

Die dritte Phase konzentriert sich auf die Behebung der wichtigsten Schwachstellen, insbesondere auf die Plattformkonsolidierung und die Konsolidierung von Daten, Berichten und Analysen.

In der vierten Phase werden die Matching-Algorithmen modernisiert, um die Wettbewerbsfähigkeit der Spark-Gruppe auf dem Online-Dating-Markt zu verbessern.

Die fünfte Phase konzentriert sich auf die Ausrichtung der Spark-Gruppe auf Wachstum, wozu auch eine zeitgemäße Strategie und ein zeitgemäßer Ansatz zur Kundensegmentierung gehören.

Insgesamt soll das operative Restrukturierungskonzept gemäß Umstrukturierungsplan zu einem kleineren, wendigeren Mitarbeiterstamm, zu operativer

2024, which will be used to pay down debt and de-lever Debtor.

The out-of-court operational restructuring concept outlined in the Transformation Plan is a five-phase plan and is intended to be put in place over 18 to 24 months starting in the second quarter of 2023. Phase one is focused on the outsourcing of key functions to third-party providers with the depth of expertise and bandwidth to execute in the timeframe needed. Spark Group has already begun this effort signing contracts with a leading performance marketing agency and a technology managed service provider.

Phase two is dedicated to the completion of the development and deployment of a series of new and improved mobile apps for Spark Group's brands.

Phase three is focused on fixing significant issues, highlighted by platform consolidation and consolidated data, reporting, and analytics.

Phase four is to modernize matching algorithms, which will improve Spark Group's competitiveness in the online dating market.

Phase five focuses on positioning Spark Group for growth that includes moving forward with a contemporary customer segmentation strategy and approach.

Overall, the operative restructuring concept outlined in the Transformation Plan is intended to result in a smaller, nimbler employee base,

Flexibilität, zu einer niedrigeren und variablen Kostenstruktur und zu einem deutlich effizienteren und effektiveren Performance-Marketing-Programm führen. Durch die Fokussierung auf die langfristige Senkung der Kosten und die Vereinfachung der Betriebsstruktur soll das operative Restrukturierungskonzept umsetzbar, erreichbar und messbar sein.

Die Maßnahmen des Restrukturierungsplans sollen der Schuldnerin und damit der Spark-Gruppe durch Umgestaltung der Finanzverbindlichkeiten gegenüber MGG und durch Zuführung neuen Eigenkapitals sowie durch Restrukturierung der Zoosk-Notes die finanziellen Freiräume eröffnen, um die operativen Maßnahmen des Gesamt-Restrukturierungskonzepts gemäß Umstrukturierungsplan umzusetzen.

c) **Zukünftige Vermögenslage ohne Restrukturierungsplan**

Ohne den Restrukturierungsplan und die auf die Durchführung des Restrukturierungsverfahrens bedingte Interim-Finanzierung würde die Spark-Gruppe nicht genügend Liquidität generieren, um ihre Verbindlichkeiten zu bedienen. Die Schuldnerin wäre unmittelbar zahlungsunfähig und überschuldet und müsste unverzüglich einen Insolvenzantrag stellen. Eine Bedingung für die vonseiten MGG zur Verfügung gestellte Interim-Finanzierung ist die Durchführung eines StaRUG-Verfahrens, das einen vollständigen Anteilserwerb durch MGG vorsieht.

3. **Angaben zu Arbeitnehmern und zur Arbeitnehmervertretung**

Die Schuldnerin beschäftigt keine Arbeitnehmer, weshalb keine Arbeitnehmervertretung existiert. Sämtliche der fast 250 Arbeitnehmer der Spark-

operational flexibility, a lower and more variable cost structure, and a significantly more efficient and effective performance marketing program. By focusing on the long-term reduction of costs and the simplification of operating structure, the operative restructuring concept is designed to be executable, reasonably achievable, and measurable.

The measures of the Restructuring Plan shall provide Debtor, and thus the Spark Group, with the financial flexibility to implement the operational measures of the overall restructuring concept outlined in the Transformation Plan by restructuring the financial liabilities to MGG and by contributing new equity as well as by restructuring the Zoosk Notes.

c) **Future financial situation without Restructuring Plan**

Without the Restructuring Plan and the Interim Financing conditional on the implementation of the restructuring proceedings, Spark Group would not generate sufficient liquidity to pay its liabilities. Debtor would be insolvent and overindebted immediately and would have to file for insolvency without undue delay. One of the conditions of the bridge financing provided by MGG is for Debtor to execute a StaRUG process which provides for a complete acquisition of shares by MGG.

3. **Information on employees and employee representation**

Debtor does not have any employees and therefore no employee representation exists. All of the nearly 250 employees of the Spark Group

Gruppe sind bei Spark Networks Services GmbH und diverses anderen Tochtergesellschaften der Schuldnerin angestellt.

are at Spark Networks Services GmbH and various subsidiaries of Debtor.

**4.    Angaben zur Unternehmensgruppe**

**4.    Information on the company group**

**a)    Allgemeine Angaben**

**a)    General information**

Die Schuldnerin ist die oberste Muttergesellschaft der Spark-Gruppe und übt ausschließlich Holdingfunktionen aus. Die wichtigsten Tochtergesellschaften sind Spark Networks Services GmbH in Deutschland sowie Spark Networks, Inc. und Zoosk, Inc., jeweils Gesellschaften nach dem Recht des US-Bundesstaats Delaware. Die weiteren 16 Tochtergesellschaften sind aus dem folgenden Strukturschaubild der Spark-Gruppe (mit Stand vom Juli 2023) ersichtlich:

Debtor is the ultimate parent of Spark Group and has holding functions solely. The main subsidiaries consist of Spark Networks Services GmbH, located in Germany, Spark Networks, Inc., a Delaware entity, and Zoosk, Inc., a Delaware entity. The further 16 subsidiaries are shown in the following structure chart of Spark Group (as of July 2023):



**b)** **Zusätzliche Angaben zu verbundenen Unternehmen, die Sicherheiten gestellt haben, welche in den Restrukturierungsplan einbezogen werden**

Von den Regelungen des Restrukturierungsplans unmittelbar betroffen sind Spark Networks, Inc. und Zoosk, Inc. als Darlehensnehmer des MGG-Darlehens. Ebenfalls unmittelbar betroffen sind Spark Networks Services GmbH, Spark Networks USA, LLC, Smooch Labs, Inc., Minglematch, Inc., Spark Networks Limited, LOV USA, LLC in ihrer Eigenschaft als Garanten für das MGG-Darlehen. In Höhe des vorgesehenen Teilverzichts sollen auch die vorgenannten Unternehmen der Spark-Gruppe von ihrer Darlehensverbindlichkeit unter der Finanzierungsvereinbarung befreit werden.

Jedes der vorgenannten Unternehmen, insbesondere Spark Networks, Inc. und Zoosk, Inc., sollen durch den Restrukturierungsplan derart begünstigt werden, dass sie sich auf dessen Wirksamkeit berufen können.

**IV.** **Restrukturierungsbezogene Angaben**

**1.** **Beschreibung der Maßnahmen zur Bewältigung der Krise**

Das erarbeitete Restrukturierungskonzept beinhaltet sowohl finanzielle Restrukturierungsmaßnahmen auf Grundlage des Restrukturierungsplans als auch operative Restrukturierungsmaßnahmen gemäß dem Umstrukturierungsplan. Es wurde im Wege eines Sanierungsgutachtens in Anlehnung an IDW S6 und unter Berücksichtigung der höchstrichterlichen Rechtsprechung durch einen unabhängigen Sanie-

**b)** **Additional disclosures on affiliated companies the collateral provided by which is included in the Restructuring Plan**

Spark Networks, Inc. and Zoosk, Inc. are directly affected by the provisions of the Restructuring Plan as borrowers of the MGG Loan. Also directly affected are Spark Networks Services GmbH, Spark Networks USA, LLC, Smooch Labs, Inc., Minglematch, Inc., Spark Networks Limited, LOV USA, LLC in their capacity as guarantors for the MGG Loan. In the amount of the intended partial waiver of the MGG Loan, the aforementioned companies of the Spark Group are also to be released from their loan liability under the Financing Agreement.

Each such entity, particularly Spark Networks, Inc. and Zoosk, Inc., is an intended beneficiary of the Restructuring Plan and shall have the ability to invoke the authority of such Restructuring Plan, if confirmed.

**IV.** **Restructuring-related information**

**1.** **Description of the measures taken to overcome the crisis**

The restructuring concept developed includes both financial restructuring measures based on the Restructuring Plan and operational restructuring measures outlined in the Transformation Plan. An independent restructuring expert – Ernst & Young GmbH Wirtschaftsprüfungsgesellschaft Strategy and Transactions –, validated it in the form of a restructuring opinion based on IDW S6 and considering the highest court rulings.

rungsgutachter – Ernst & Young GmbH Wirtschaftsprüfungsgesellschaft Strategy and Transactions – validiert.

### a) Planbasierte Maßnahmen auf Fremdkapitalseite

Wesentliche Bestandteile des Restrukturierungsplans betreffen auf Fremdkapitalseite die Teilentschuldung der Schuldnerin, die Anpassung der Bestimmungen der Finanzierungsvereinbarung zwecks Beseitigung bestehender Kündigungsrechte sowie die Schaffung eines weiteren Liquiditätsrahmens.

### Teilforderungserlass

MGG soll Forderungen gegen die Spark-Gruppe aus dem MGG-Darlehen erlassen, soweit die MGG-Darlehensverbindlichkeiten zum Zeitpunkt der gerichtlichen Bestätigung des Restrukturierungsplans USD 100.000.000,00 übersteigen, d.h. voraussichtlich insgesamt USD 16.943.800,85 (inkl. Interim-Finanzierung und aufgelaufener Zinsen). Der Gesamtbetrag der Darlehensverbindlichkeiten, der Gegenstand des Teilforderungserlasses ist, schließt alle neuen Verpflichtungen aus der Interim-Finanzierung ein; allerdings bezieht sich der Teilforderungserlass durch MGG nur auf die Darlehensverbindlichkeiten, die vor der Einleitung des Sanierungsverfahrens nach dem StaRUG bestanden. Hierdurch wird die Schuldenlast unmittelbar reduziert. Der Teilforderungserlass des MGG-Darlehens soll auflösend bedingt werden auf die Nichteintragung der in diesem Restrukturierungsplan vorgesehenen Kapitalerhöhung in das Handelsregister der Schuldnerin bis zum 29. Februar 2024, 24:00 Uhr (MEZ). Durch die auflösende Bedingung soll ein Auseinanderfallen von Teilforderungserlass und Aktionärswechsel vermieden werden. MGG soll in Bezug auf den Teilforderungserlass auf etwaig aus § 2 Abs. 4 StaRUG resultierende Rechte verzichten.

### a) Plan-based measures on debt site

Key components of the Restructuring Plan are on the debt side relate to the partial debt relief of Debtor, the amendment of the Financing Agreement to eliminate existing termination rights, and the creation of a further liquidity framework.

### Partial Waiver

MGG shall waive claims against Spark Group under the MGG Loan to the extent such claims for MGG Loan liabilities exceed USD 100,000,000.00 as of the time of court confirmation of the Restructuring Plan, i.e. an estimated total amount of USD 16,943,800.85 (incl. Interim Financing and accrued interest). The total amount of loan liabilities which is subject to such waiver will include any new obligations under the Interim Financing, but, for the avoidance of doubt, MGG's partial claim waiver shall only relate to the obligations incurred prior to the commencement of restructuring proceedings pursuant to StaRUG. This will directly reduce the debt burden. The partial waiver of the MGG Loan shall cease to be effective (*auflösend bedingt sein*) if the capital increase provided for in this Restructuring Plan has not been registered with the commercial register of Debtor until February 29, 2024, 24:00 hours (CET). The resolving condition is intended to prevent a conflict between the partial claim waiver and the change of ownership. MGG shall waive any rights according to

Sec. 2 (4) StaRUG with regard to the partial waiver.

### Anpassung Finanzierungsvereinbarung

Die einzelnen Bestimmungen der Finanzierungsvereinbarung sollen ferner angepasst werden. Hierzu hat MGG die als **Anlage 5** beigefügte Verpflichtungserklärung unter der aufschiebenden Bedingung der rechtskräftigen Bestätigung des Restrukturierungsplans und der Durchführung der hierin vorgesehenen Kapitalmaßnahmen durch Eintragung im Handelsregister abgegeben. Spiegelbildliche, als **Anlage 6** beigefügte Erklärungen im Sinne von § 15 Abs. 3 StaRUG haben diejenigen Tochtergesellschaften der Schuldnerin abgegeben, die als Darlehensnehmer oder Garant unter der Finanzierungsvereinbarung mithaften.

### Neue revolvierende Kreditlinie

Hinsichtlich dieser Ergänzung der Finanzierungsvereinbarung wird auf Abschnitt B.IV.2. verwiesen.

### Erlass der Zoosk-Notes

Zur weiteren Entschuldung der Schuldnerin um ca. USD 13.851.262,72 erlässt MGG die Forderungen aus den Zoosk-Notes. Der Erlass der Zoosk-Notes soll auflösend bedingt werden auf die Nichteintragung der in diesem Restrukturierungsplan vorgesehenen Kapitalerhöhung in das Handelsregister der Schuldnerin bis zum 29. Februar 2024, 24:00 Uhr (MEZ). Durch die auflösende Bedingung soll ein Auseinanderfallen von Erlass und Aktionärswechsel vermieden werden.

### Amendment of Financing Agreement

The provisions of the Financing Agreement shall also be amended. For this purpose, MGG has submitted the declaration of commitment attached as **Annex 5** subject to the condition precedent of the legally binding confirmation of the Restructuring Plan and the consummation of the capital measures stipulated herein by registration in the commercial register. Inversely declarations within the meaning of Sec. 15 (3) StaRUG, attached as **Annex 6**, have been submitted by those subsidiaries of Debtor which are jointly liable as borrowers or guarantors under the Financing Agreement.

### New revolving credit facility

Regarding this amendment to the Financing Agreement, reference is made to Section B.IV.2.

### Waiver of Zoosk Notes

To further relieve Debtor of approximately USD 13,851,262.72, MGG waives the claims arising from the Zoosk Notes. The waiver of the Zoosk Notes shall cease to be effective (*auflösend bedingt sein*) if the capital increase provided for in this Restructuring Plan has not been registered with the commercial register of Debtor until February 29, 2024, 24:00 hours (CET). The resolving condition is intended to prevent a conflict between the claim waiver and the change of ownership.

**b)  Planbasierte Maßnahmen auf Eigenkapitalseite**

Im Rahmen dieses Restrukturierungsplans sollen ferner die Planbetroffenen Aktionäre Sanierungsbeiträge erbringen. So sind auf Eigenkapitalseite folgende für die Sanierung der Schuldnerin erforderliche und unverzichtbare Kapitalmaßnahmen im Interesse der Schuldnerin und ihrer Gläubiger vorgesehen:

**Vereinfachte Kapitalherabsetzung auf null**

Der Restrukturierungsplan regelt eine Kapitalherabsetzung auf null, bei der die Schuldnerin ihr Grundkapital von gegenwärtig EUR 2.661.385,00 um EUR 2.661.385,00 auf EUR 0,00 herabsetzt. Die Kapitalherabsetzung soll nach den Vorschriften über die vereinfachte Kapitalherabsetzung erfolgen (Art. 5 Verordnung (EG) Nr. 2157/2001 des Rates vom 8. Oktober 2001 über das Statut der Europäischen Gesellschaft (SE) i. V. m. § 229 Abs. 1 AktG).

Die Vornahme der vereinfachten Kapitalherabsetzung ist gemäß §§ 229 ff AktG zulässig. Sie erfolgt zum Zwecke des Ausgleichs von Wertminderungen und zur Deckung sonstiger Verluste. Die als Anlage 4 beigefügte Pro-Forma-Einzelbilanz der Schuldnerin zum 30. September 2023 weist ein negatives Eigenkapital in Höhe von **EUR 81.413.900,00** aus. Die aus der beigefügten Pro-Forma-Einzelbilanz der Schuldnerin zum 30. September 2023 ebenfalls ersichtliche Kapitalrücklage in Höhe von EUR 108.126.400,00 wurde mit Beschluss des Verwaltungsrates vom 2. November 2023 nach Maßgabe von § 229 Abs. 2 AktG vollständig aufgelöst und mit dem bestehenden Bilanzverlust verrechnet. Eine Kopie des vorgenannten Beschlusses des Verwaltungsrates ist als **An-**

**b)  Plan-based measures on equity side**

In the context of this Restructuring Plan, the Plan-Affected Shareholders are also to make restructuring contributions. On the equity side, the following capital measures, which are necessary and indispensable for the restructuring of Debtor and its creditors, are planned in the interests of Debtor and its creditors:

**Simplified capital decrease to zero**

The Restructuring Plan provides for a capital reduction to zero, whereby the Debtor will reduce its share capital by EUR 2,661,385.00 from its current level of EUR 2,661,385.00 to EUR 0.00. The capital reduction shall be effected in accordance with the provisions on the simplified capital reduction (Art. 5 Council Regulation (EC) No. 2157/2001 of October 8, 2001 on the Statute for a European company (SE) in conjunction with Sec. 229 (1) AktG).

The implementation of the simplified capital reduction is permissible pursuant to Sec. 229 *et seq.* AktG. It is made for the purpose of compensating for impairments and covering other losses. The pro forma individual balance sheet of the Debtor as of September 30, 2023, attached hereto as Annex 4, shows negative equity in the amount of **EUR 81,413,900.00**. The capital reserve in the amount of EUR 108,126,400.00, which can also be seen in the attached pro forma individual balance sheet of the Debtor as of September 30, 2023, was completely dissolved by resolution of the administrative board dated November 2, 2023, in accordance with Sec. 229 (2) AktG and offset against the existing accumulated deficit. A copy of the aforementioned resolution of the

**lage 7** beigefügt. Zwar wies der HGB-Jahresabschluss der Schuldnerin zum 31.Dezember 2022 noch ein Eigenkapital in Höhe von EUR 32.566.885 aus. Dieser Betrag ist jedoch bei aktueller Pro-Forma-Betrachtung selbst unter Zugrundelegung von Fortführungswerten beträchtlich zu reduzieren: Zum einen blieben im Einzelabschluss 2022 aus buchhalterischen Gründen die Darlehensverbindlichkeiten aus dem MGG-Darlehen in Höhe von aktuell USD 107.615.030,87 außer Betracht. Zum anderen ist gegenwärtig der tatsächliche Wert der als Aktiva ausgewiesenen Beteiligungen an verbundenen Unternehmen deutlich geringer als der im Einzelabschluss 2022 angesetzte Buchwert. Dies resultiert aus dem Umstand, dass die Tochtergesellschaften der Schuldnerin derzeit nicht in der Lage sind, die Darlehensrückzahlungen gegenüber MGG zu leisten. Die Beseitigung der Verluste durch andere im Zusammenhang mit der Kapitalherabsetzung beabsichtigte Maßnahmen, wird im Rahmen dieser Betrachtung nicht mit berücksichtigt (vgl. *Scholz*, in: Münchener Handbuch des Gesellschaftsrechts, Bd. 4, AG, 5. Aufl. 2020, § 62 Rn. 8).

### Barkapitalerhöhung

An die Kapitalherabsetzung auf null schließt sich unmittelbar eine Kapitalerhöhung unter Bezugsrechtsausschluss der Planbetroffenen Aktionäre an. Hierzu soll das Grundkapital der Schuldnerin von (sodann) EUR 0,00 durch Ausgabe von 120.000,00 neuen auf den Namen lautenden Stückaktien mit einem anteiligen Betrag am Grundkapital von je EUR 1,00 („**Neue Aktien**") auf EUR 120.000 erhöht werden.

Die Neuen Aktien werden gegen Bareinlage zum Ausgabebetrag von EUR 1,37 je Neuer Aktie (bestehend aus dem anteiligen Betrag am Grundkapital in Höhe von EUR 1,00 je Neuer Aktie und einem korporationsrechtlichen Agio im Sinne von § 272

Board of Directors is also attached as **Annex 7**. Debtor's German GAAP financial statements as of December 31, 2022 still showed an equity of EUR 32,566,885. However, this amount is to be reduced considerably in the current pro forma view, even based on on-going-concern values: Firstly, for accounting reasons, the loan payable under the MGG Loan, currently amounting to USD 107,615,030.87, was not considered in the individual financial statements for 2022. Secondly, the actual value of the investments in affiliated companies reported as assets is currently significantly lower than the book value stated in the individual financial statements 2022. This results from the fact that the Debtor's subsidiaries are currently unable to make the loan repayments to MGG. The elimination of the losses through other measures intended in connection with the capital reduction is not taken into account in the context of this consideration (*cf. Scholz*, in: Münchener Handbuch des Gesellschaftsrechts, Vol. 4, AG, 5th ed. 2020, Sec. 62 no. 8).

### Cash capital increase

The capital reduction to zero is immediately followed by a capital increase with exclusion of the subscription rights of the Plan-Affected Shareholders. For this purpose, the share capital of the Debtor shall be increased from (then) EUR 0.00 to EUR 120,000 by issuing 120,000.00 new registered no-par value shares with a pro rata amount of the share capital of EUR 1.00 each ("**New Shares**").

The New Shares will be issued against cash contributions at an issue price of EUR 1.37 per New Share (comprising the pro rata amount of the share capital of EUR 1.00 per New Share and a corporate share premium within the

Abs. 2 Nr. 1 HGB in Höhe von EUR 0,37 je Neuer Aktie), das heißt zu einem Gesamtausgabebetrag von insgesamt EUR 164.400,00, ausgegeben.

Die Kapitalerhöhung erfolgt unter Ausschluss des Bezugsrechts der Planbetroffenen Aktionäre. Zur Zeichnung und Übernahme der Neuen Aktien wird allein MGG Investor zugelassen. MGG Investor hat sich gemäß der als **Anlage 8** beigefügten Zeichnungszusage gemäß § 15 Abs. 3 StaRUG unter der aufschiebenden Bedingung der Bestätigung dieses Restrukturierungsplans verpflichtet, die Neuen Aktien zu zeichnen. MGG Investor wird mit Durchführung der Kapitalerhöhung alleiniger Aktionär der Schuldnerin.

Der Ausschluss des gesetzlichen Bezugsrechts der bisherigen Aktionäre ist zulässig. Die Zulässigkeit dieses Bezugsrechtsausschlusses folgt bereits aus § 7 Abs. 4 Satz 3 StaRUG, wonach der Restrukturierungsplan insbesondere den Ausschluss von Bezugsrechten vorsehen kann. Daher bedarf es nach überwiegender Meinung im Schrifttum im Einklang mit der ganz herrschenden Meinung zum Insolvenzplanrecht in einem Restrukturierungsplan keiner gesonderten sachlichen Rechtfertigung des Bezugsrechtsausschlusses. Die restrukturierungsrechtlichen Schutzmechanismen des StaRUG verdrängen insoweit die gesellschaftsrechtlichen Wertungen und Vorgaben (statt vieler *Skauradszun*, ZRI 2020, 625, 631; *Tresselt,* in: Morgen, StaRUG, 2. Aufl. 2022, § 7 Rn. 38 f. m.w.N.; *Seibt*, in: Seibt/Westpfahl, 2023, § 7 Rn. 97 m.w.N.; *Mulert/Steiner,* NZG 2021, 673, 677; *Skauradszun/Blum,* NZI 2022, 31, 32).

meaning of Sec. 272 (2) no. 1 HGB of EUR 0.37 per New Share), i. e., at a total issue price of EUR 164,400.00.

The capital increase will be carried out under exclusion of the subscription rights of the plan-affected shareholders. Only MGG Investor will be admitted to subscribe and acquire the New Shares. MGG Investor has undertaken to subscribe for the New Shares pursuant to the subscription commitment attached as **Annex 8** pursuant to Sec. 15 (3) StaRUG, subject to the condition precedent of the confirmation of this Restructuring Plan. MGG Investor will become the sole shareholder of Debtor upon implementation of the capital increase.

The exclusion of the statutory subscription right of the existing shareholders is permissible. The admissibility of this exclusion of subscription rights already follows from Sec. 7 (4) sent. 3 StaRUG, according to which the Restructuring Plan may provide for the exclusion of subscription rights. Therefore, according to the prevailing opinion in the literature in line with the thoroughly prevailing opinion to insolvency plan law, there is no need for a separate objective justification of the exclusion of subscription rights in a Restructuring Plan. The protective mechanisms under restructuring law of the StaRUG supersede the evaluations and requirements under corporate law in this respect (instead of many, *Skauradszun*, ZRI 2020, 625, 631; *Tresselt*, in: Morgen, StaRUG, 2. Aufl. 2022, § 7 Rn. 38 f. with further references; *Seibt*, in: Seibt/Westpfahl, 2023, § 7 Rn. 97 with further references; *Mulert/Steiner*, NZG 2021, 673, 677; *Skauradszun/Blum*, NZI 2022, 31, 32).

Der Ausschluss des gesetzlichen Bezugsrechts der Planbetroffenen Aktionäre ist jedoch auch unter Zugrundelegung der gesellschaftsrechtlichen Vorgaben der höchstrichterlichen Rechtsprechung sachlich gerechtfertigt, da er einen legitimen Zweck verfolgt und zur Erreichung des legitimen Zwecks geeignet, erforderlich und angemessen ist.

Eine Kapitalerhöhung gegen Bezugsrecht wäre nicht geeignet gewesen, die für die Sanierung der Gesellschaft erforderlichen Mittel aufzunehmen. Zunächst stand die erforderliche Zeit für die Erstellung und behördliche Prüfung eines Wertpapierprospekts nicht zur Verfügung. Zudem waren alle Versuche des Managements und des Verwaltungsrats, die bisherigen Aktionäre von einer Teilnahme an der Kapitalmaßnahme in dem erforderlichen Umfang zu überzeugen, sämtlich gescheitert. Vor diesem Hintergrund ist somit nicht zu erwarten, dass die Planbetroffenen Aktionäre der Schuldnerin im Rahmen einer Kapitalerhöhung genügend liquide Mittel zur Verfügung stellen, um die Fortführung und Sanierung der Schuldnerin zu gewährleisten. Aufgrund der Einräumung der Bezugsrechte allein zugunsten von MGG Investor leistet diese als Sanierungsbeitrag die erforderliche Bareinlage und eine Liquiditätszufuhr entweder als Zuzahlung in die freie Kapitalrücklage der Schuldnerin oder in Form der Interim-Finanzierung in Gesamthöhe von mehr als USD 20.000.000 (einschließlich Kapitalerhöhungsbetrag). Auf der Fremdkapitalseite verzichtet MGG zudem auf einen beträchtlichen Forderungsbetrag von voraussichtlich über USD 30.795.063,57 (bestehend aus dem Teilerlass des MGG-Darlehens in Höhe von voraussichtlich USD 16.943.800,85 und dem Erlass der Zoosk-Notes in Höhe von voraussichtlich USD 13.851.262,72) und erklärt sich bereit, die Finanzierungsvereinbarung zugunsten der Schuldnerin anzupassen. All diese Sanierungsbeiträge ma-

The exclusion of the statutory subscription right of the Plan-Affected Shareholders, however, is objectively justified also based on the corporate law requirements of the German federal court case law, as it pursues a legitimate purpose and is suitable, necessary and appropriate to achieve the legitimate purpose.

A capital increase against subscription rights would not have been suitable for raising the funds required to restructure Debtor. Firstly, the time required for the preparation and regulatory review of a securities prospectus was not available. In addition, all attempts by management and the administrative board to convince the existing shareholders to participate in the capital measure to the extent required had failed. Against this background, it is therefore not to be expected that the Plan-Affected Shareholders will provide Debtor with sufficient liquid funds in the context of a capital increase to ensure the continuation and restructuring of Debtor. Due to the granting of the subscription rights solely in favor of MGG Investor, the latter shall make the required cash contribution and a liquidity injection either as cash contribution to the free capital reserve of Debtor or via the Interim Financing in the total amount of more than USD 20,000,000 (inclusive of capital increase) as a restructuring contribution. On the debt side, MGG also waives a substantial amount of debt of estimated USD 30,795,063.57 (consisting of the partial waiver of the MGG Loan in the estimated amount of USD 16,943,800.85 and the waiver of the Zoosk Notes in the estimated amount of USD 13,851,262.72) and agrees to amend the Financing Agreement in favor of Debtor. MGG and MGG Investor each make all these restruc-

chen MGG und MGG Investor jeweils davon abhängig, dass MGG Investor alleiniger Aktionär der Schuldnerin wird.

**Zuzahlung in die freie Kapitalrücklage**

MGG Investor hat sich mit der als **Anlage 9** beigefügten Verpflichtungserklärung gemäß § 15 Abs. 3 StaRUG unter der aufschiebenden Bedingung der rechtskräftigen Bestätigung dieses Restrukturierungsplans dazu verpflichtet, eine Zuzahlung in die freie Kapitalrücklage der Schuldnerin in Höhe von bis zu USD 8.880.000 zu leisten. Die Zusage der Barzahlung hat MGG Investor an die Bedingung geknüpft, alleiniger Aktionär der Schuldnerin zu werden.

**c)    Maßnahmen außerhalb des Restrukturierungsplans**

Zudem erfolgt eine Umstrukturierung des operativen Geschäftsbetriebs gemäß dem Umstrukturierungsplan. Zentrale Elemente des Umstrukturierungsplans sind die Auslagerung wesentlicher Teile des Marketings sowie der technischen Entwicklung, Systempflege und des Kundenservices. Hiermit ist auch eine signifikante Reduzierung der Arbeitnehmer in der Spark-Gruppe verbunden. Der Umstrukturierungsplan wird es der Spark-Gruppe ermöglichen, die Zahl der Mitarbeiter in den Bereichen Kundenbetreuung, Strategie und Produkt, Technologie, Vertrieb und Marketing sowie allgemeiner Verwaltung von fast 250 auf 60 zu reduzieren. Als Ergebnis des Umstrukturierungsplans plant die Spark-Gruppe, ihren Personalbestand auf etwa 60 Personen zu reduzieren, wobei die Hälfte der Mitarbeiter in den Vereinigten Staaten und die andere Hälfte in Deutschland tätig sein wird. Eine bestimmte Anzahl von Arbeitnehmern wird jedoch bei einem der IT-Dienstleister der Spark-Gruppe, an das

turing contributions conditional on MGG Investor becoming the sole shareholder of Debtor.

**Cash contribution to the free capital reserve**

MGG Investor has undertaken to make an additional payment to the Debtor's free capital reserves in the amount of up to USD 8,880,000, subject to the condition precedent of the legally binding confirmation of this Restructuring Plan, in the declaration of commitment attached as **Annex 9** pursuant to Sec. 15 (3) StaRUG. MGG Investor has made the cash payment conditional upon becoming the sole shareholder of the Debtor.

**c)    Measures in addition to the Restructuring Plan**

In addition, a restructuring of business operations is taking place pursuant to the Transformation Plan. Central elements of the Transformation Plan are the outsourcing of significant parts of marketing as well as technology engineering, maintenance functions and most customer service functions. This is also associated with a significant reduction in the number of employees in the Spark Group. The initiatives that the Transformation Plan encompasses will allow the Spark Group to reduce headcount from nearly 250 employees to 60 employees across customer care, strategy and product, technology, sales and marketing and G&A. As a result of the Transformation Plan, Spark Group plans to reduce its headcount to roughly 60 individuals with half of its employees being based in the United States and half based in Germany. A certain amount of employees will

Teile des Geschäfts ausgelagert werden, weiterbeschäftigt werden.

however be reemployed at one of the IT contractors of Spark Group to which parts of the business are outsourced.

## 2. Neue Finanzierung im Sinne von § 12 StaRUG

Als Teil der Anpassung der Finanzierungsvereinbarung mit MGG wird der Schuldnerin, der Zoosk, Inc. sowie der Spark Networks, Inc. als Darlehensnehmer eine weitere revolvierende Kreditlinie in Höhe von maximal USD 10.000.000,00 eingeräumt. Wie bisher wird die Schuldnerin für diese im Bedarfsfall durch die Spark Networks, Inc. oder die Zoosk, Inc. in Anspruch genommene Kreditlinie als weitere Darlehensnehmerin mit haften. Etwaig unter dieser Kreditlinie in Anspruch genommene Darlehensbeträge werden zum 11. März 2027 zur Rückzahlung fällig.

Diese neue Kreditlinie soll der Spark-Gruppe zusätzliche Sicherheit bei unvorhergesehenen Ereignissen im Rahmen der Umsetzung des Gesamt-Restrukturierungskonzepts nach Abschluss des Restrukturierungsverfahrens bieten.

## 2. New financing within the meaning of Sec. 12 StaRUG

As part of the amendment of the Financing Agreement with MGG the Debtor, Zoosk, Inc. and Spark Networks, Inc. are provided with an additional revolving credit facility in the maximum amount of USD 10,000,000.00. As in the past, Debtor will continue to be jointly liable for this revolving credit facility, which will be drawn down by Spark Networks, Inc. or Zoosk, Inc. if necessary, as additional borrower. Any loan amounts drawn under this revolving credit facility will become due for repayment on March 11, 2027.

This new credit facility is intended to provide the Spark Group with additional security in the event of unforeseen events as part of the implementation of the overall restructuring concept following completion of the restructuring proceedings.

## 3. Auswirkungen auf Arbeitnehmer

Die unter vorstehendem Abschnitt B.IV.1.a) und B.IV.1.b) dargestellten planbasierten Maßnahmen haben keine Auswirkungen auf Arbeitnehmer der Schuldnerin, da diese keine Arbeitnehmer hat.

Zu den arbeitnehmerbezogenen Maßnahmen innerhalb des Umstrukturierungsplans gehört, wie unter vorstehendem Abschnitt B.IV.1.c) beschrieben, eine Reduktion des Personalbestands von fast 250 auf 60 sowie eine Übernahme eines Teils der Arbeitnehmer durch einen der IT-Dienstleister der Spark-Gruppe.

## 3. Effects on employees

The plan-based measures outlined in Section B.IV.1.a) and B.IV.1.b) above have no impact on employees of Debtor given that Debtor has no employees.

Employee-related measures provided for in the Transformation Plan include, as described in Section B.IV.1.c) above, reduction of headcount from nearly 250 employees to 60 and re-hiring of a certain amount of employees by one of the IT contractors of Spark Group.

**4.** **Auswirkungen auf verbundene Unternehmen bezüglich von ihnen gestellter Sicherheiten, die in den Restrukturierungsplan einbezogen werden**

**4.** **Effects on affiliated companies with regard to collateral provided by them that is included in the Restructuring Plan**

Alle verbundenen Unternehmen im Sinne von § 15 AktG sind Begünstigte dieses Restrukturierungsplans in Bezug auf die Schuldnerin (als oberste Holdinggesellschaft der Spark-Gruppe) und der vom Restrukturierungsgericht zu erlassenden Beschlüsse. Dies gilt insbesondere für diejenigen Mitglieder der Spark-Gruppe, die gesamtschuldnerisch (zusammen mit der Schuldnerin) für die Darlehensverbindlichkeiten aus der Finanzierungsvereinbarung haften. Solche Mitschuldner aus der Finanzierungsvereinbarung sind Spark Networks, Inc. und Zoosk, Inc. Darüber hinaus sind Spark Networks Services GmbH, Spark Networks USA, LLC, Smooch Labs, Inc., Minglematch, Inc., Spark Networks Limited, und Lov USA, LLC Garanten im Rahmen der Finanzierungsvereinbarung.

All affiliated entities in the meaning of Sec. 15 AktG may be beneficiaries of this Restructuring Plan regarding Debtor (being the top-level holding company of Spark Group) and of the related court orders to be issued by the Restructuring Court. This is in particular the case for those members of the Spark Group that are jointly and severally liable (together with Debtor) with respect to the loan liabilities under the Financing Agreement. Such co-borrowers under the Financing Agreement are Spark Networks, Inc. and Zoosk, Inc. In addition, guarantors under the Financing Agreement are Spark Networks Services GmbH, Spark Networks USA, LLC, Smooch Labs, Inc., Minglematch, Inc., Spark Networks Limited, and Lov USA, LLC.

Die Schuldnerin ist das einzige Unternehmen der Spark-Gruppe, das diesen Restrukturierungsplan vorlegt und damit formal Beteiligte des Verfahrens gemäß StaRUG ist. Dennoch profitieren die übrigen Mitglieder der Spark-Gruppe unmittelbar von den Rechtswirkungen dieses Restrukturierungsplans, insbesondere von einer Schuldenreduzierung in Bezug auf Verbindlichkeiten, für die das betreffende Konzernunternehmen Mitschuldner oder Garant ist. Aus diesem Grund sind auch Spark Networks, Inc. and Zoosk, Inc. (zusammen mit den Garanten) von diesem Restrukturierungsplan betroffen. Im Zusammenhang mit diesem Restrukturierungsplan wirken die Beschlüsse des Restrukturierungsgerichts auch zu Gunsten derjenigen Gesellschaften der Spark-Gruppe, die nicht der formale Antragsteller im Hinblick auf diesen Restrukturierungsplan sind; allge-

Debtor is the only entity which submits this Restructuring Plan and, thus, which is formally a party before the Restructuring Court. Nonetheless, the other members of the Spark Group (including Spark Networks, Inc. and Zoosk, Inc.) directly benefit from the legal effects of this Restructuring Plan, in particular from a debt reduction with respect to liabilities for which the group company concerned is a co-borrower or a guarantor. For this reason, also Spark Networks, Inc. and Zoosk, Inc. (along with the guarantors) are subject to this Restructuring Plan: In connection with this Restructuring Plan, also those entities that are not the formal applicant with respect to this Restructuring Plan benefit from the orders of the Restructur-

mein gesprochen sind sämtliche der o. g. Gesellschaften insoweit von der Entscheidungsgewalt des Restrukturierungsgerichts betroffen.

Die konkreten Auswirkungen für die Gesellschaften der Spark-Gruppe in Bezug auf die Modifizierung des MGG-Darlehens ergeben sich aus dem Gestaltenden Teil unter Abschnitt C.II.1.a).

### V.    Angaben zu den Planbetroffenen

#### 1.    Identität der Planbetroffenen

Planbetroffene Finanzgläubiger sind die folgenden MGG-Gesellschaften:

- MGG Specialty Finance Fund II LP,

- MGG SF Evergreen Fund LP,

- MGG SF Evergreen Unlevered Fund LP,

- MGG Insurance Fund Series Interests of the SALI Multi-Series Fund, LP,

- MGG SF Evergreen Master Fund (Cayman) LP

- MGG SF Evergreen Unlevered Master Fund II (Cayman) LP,

- MGG Canada Fund LP,

- MGG Onshore Funding II LLC,

- MGG SF Drawdown Unlevered Fund II (Luxembourg) SCSp,

ing Court; generally speaking, all of the aforementioned entities are subject to the jurisdiction of the Restructuring Court in this respect.

The specific implications for the Spark-Group entities with regard to the modification of the MGG Loan can be found in the Formative Part under Section C.II.1.a).

### V.    Information on the Plan-Affected Parties

#### 1.    Identity of the Plan-Affected Parties

Plan-Affected Financial Creditors are the following MGG entities:

- MGG Specialty Finance Fund II LP,

- MGG SF Evergreen Fund LP,

- MGG SF Evergreen Unlevered Fund LP,

- MGG Insurance Fund Series Interests of the SALI Multi-Series Fund, LP,

- MGG SF Evergreen Master Fund (Cayman) LP

- MGG SF Evergreen Unlevered Master Fund II (Cayman) LP,

- MGG Canada Fund LP,

- MGG Onshore Funding II LLC,

- MGG SF Drawdown Unlevered Fund II (Luxembourg) SCSp,

- MGG SF Drawdown Unlevered Fund III (Luxembourg) SCSp,

- MGG Offshore Funding I LLC,

- MGG SF Evergreen Unlevered Fund 2020 LP,

- MGG SF Drawdown Unlevered Fund III LP,

- MGG SF Drawdown Unlevered Master Fund III (Cayman) LP.

Da die vorgenannten MGG-Gesellschaften die Zoosk-Notes erworben haben (hierzu sogleich unter nachstehendem Abschnitt B.V.2.), sind sie zugleich Planbetroffene Finanzgläubiger in Ansehung der Zoosk-Notes. Die MGG-Gesellschaften haben die Zoosk-Notes hierbei im selben internen Verhältnis erworben, das auch auf die interne Forderungsaufteilung des MGG-Darlehens Anwendung findet.

Planbetroffene Aktionäre sind die folgenden, der Schuldnerin zuletzt bekannten Aktionäre der Schuldnerin:

- BeCon AG

- The Bank of New York Mellon SA/NV

- Bank of New York Mellon Corp ADR

- Florinda Invest GmbH

- Libola Invest UG (haftungsbeschränkt)

- Clearstream Banking S.A. (Legitimationsaktionär, § 67 Abs. 4 AktG)

---

- MGG SF Drawdown Unlevered Fund III (Luxembourg) SCSp,

- MGG Offshore Funding I LLC,

- MGG SF Evergreen Unlevered Fund 2020 LP,

- MGG SF Drawdown Unlevered Fund III LP,

- MGG SF Drawdown Unlevered Master Fund III (Cayman) LP.

Having acquired the Zoosk Notes (see in more detail Section B.V.2. below), the aforementioned MGG entities are also Plan-Affected Financial Creditors with respect to the Zoosk Notes. The MGG entities hereby acquired the Zoosk Notes in the same internal allocation ratio that applies to the internal allocation of the MGG Loan receivable.

Plan-Affected Shareholders are the following shareholders of Debtor last known to Debtor:

- BeCon AG

- The Bank of New York Mellon SA/NV

- Bank of New York Mellon Corp ADR

- Florinda Invest GmbH

- Libola Invest UG (haftungsbeschränkt)

- Clearstream Banking S.A. (legitimation shareholder, Sec. 67 Abs. 4 AktG)

- The Bank of New York Mellon SA/NV (Legitimationsaktionär, § 67 Abs. 4 AktG)

- The Bank of New York Mellon SA/NV (legitimation shareholder, Sec. 67 Abs. 4 AktG)

Im Rahmen der oben im Abschnitt B.I.5 beschriebenen ADS-Struktur wurden die Rechte an den von Bank NY Mellon als Depotbank gehaltenen Aktien an der Schuldnerin über die Nasdaq einer Vielzahl von Investoren angeboten.

Within the context of a so-called ADS structure, described in Section B.I.5., the rights to the shares in Debtor held by Bank NY Mellon as depository bank were offered to a large number of investors via Nasdaq.

## 2. Auswahl der Planbetroffenen

## 2. Selection of the Plan-Affected Parties

Gemäß § 8 S. 1 StaRUG hat die Auswahl der Planbetroffenen nach sachgerechten Kriterien zu erfolgen. Dabei hat der Schuldner ein Ermessen, welche Planbetroffenen er auswählt. Gemäß § 8 S. 2 Nr. 2 StaRUG ist die Auswahl sachgerecht, wenn die in der Auswahl angelegte Differenzierung nach der Art der zu bewältigenden wirtschaftlichen Schwierigkeiten des Schuldners und den Umständen angemessen erscheint, insbesondere, wenn ausschließlich Finanzverbindlichkeiten und die zu deren Sicherung bestellten Sicherheiten gestaltet werden. Vorliegend werden neben den Planbetroffenen Aktionären ausschließlich Finanzverbindlichkeiten und die zu deren Sicherung bestellten Sicherheiten gestaltet. Forderungen von Kleingläubigern, insbesondere Verbrauchern, Klein- und Kleinstunternehmen oder mittleren Unternehmen, bleiben vom Restrukturierungsplan unberührt.

Pursuant to Sec.8 sent. 1 StaRUG, the selection of the Plan-Affected Parties must be based on appropriate criteria. In doing so, Debtor has discretion as to which Plan-Affected Parties it selects. Pursuant to Sec. 8 sent. 2 no. 2 StaRUG, the selection is appropriate if the differentiation applied in the selection shall be appropriate to the nature of Debtor's economic difficulties to be overcome and the circumstances, in particular if only financial liabilities and the collateral provided to secure them are structured. Here, aside from the Plan-Affected Shareholders, only financial liabilities and the collateral provided to secure them are restructured. Claims of small creditors, in particular consumers, small and micro enterprises or medium-sized enterprises, remain unaffected by the Restructuring Plan.

In den vorliegenden Restrukturierungsplan werden ausschließlich die Planbetroffenen Finanzgläubiger als Gläubiger von Finanzverbindlichkeiten der Schuldnerin sowie die Planbetroffenen Aktionäre einbezogen. Es handelt sich dabei ausnahmslos um Gläubiger von Finanzverbindlichkeiten der Schuldnerin.

Only the Plan-Affected Financial Creditors as creditors of financial liabilities of Debtor and Plan-Affected Shareholders are included in the presented Restructuring Plan. They are, without exception, creditors of financial liabilities of Debtor.

Die unter vorstehendem Abschnitt B.V.1. genannten MGG-Gesellschaften werden hierbei als Planbetroffene Finanzgläubiger hinsichtlich des MGG Darlehens sowie hinsichtlich der Zoosk-Notes in den Restrukturierungsplan einbezogen. Die Verbindlichkeiten der Schuldnerin aus den Zoosk-Notes in Höhe von aktuell USD 13.710.109,97 resultieren aus dem Erwerb der Zoosk, Inc. im Jahr 2019. Sie bestanden bis zu ihrem Erwerb durch MGG gegenüber ehemaligen Gesellschaftern der Zoosk, Inc. und sind aufgrund einer bestehenden Vereinbarung mit MGG nachrangig gegenüber der Darlehensverbindlichkeit der Schuldnerin gegenüber MGG.

Verzichtet wird demgegenüber auf die Einbeziehung von MGG Investment Group LP, die im Fall einer Insolvenz als Sicherheitenagentin der MGG-Gesellschaften über ein Absonderungsrecht in Form der an MGG verpfändeten Anteile der Schuldnerin an ihren Tochtergesellschaften verfügen würde. Zwar wäre im Falle der Einbeziehung der MGG Investment Group LP eine weitere Gruppe der absonderungsberechtigten Gläubiger zu bilden. Im Innenverhältnis stehen die von MGG Investment Group LP gehaltenen Sicherheiten aber ausschließlich den MGG-Gesellschaften zu, die bereits als einfache Restrukturierungsgläubiger in die Abstimmung über den Restrukturierungsplan einbezogen sind. Zudem wäre MGG Investment Group LP hinsichtlich der Ausübung des Stimmrechts in der Abstimmung über den Restrukturierungsplan an die Weisung der MGG-Gesellschaften gebunden. Es erscheint daher unzweckmäßig, (mittelbar) dieselben Gläubiger mit demselben wirtschaftlichen Interesse in einer weiteren Gruppe zur Abstimmung zuzulassen.

The MGG entities enumerated under Section B.V.1. above are included in the Restructuring Plan as Plan-Affected Financial Creditors both with respect to the MGG Loan and the Zoosk Notes. The liabilities of Debtor vis-à-vis the so-called Zoosk noteholders in the current amount of USD 13,710,109.97 result from the acquisition of Zoosk, Inc. in 2019. They existed to former shareholders of Zoosk, Inc., up until the purchase of the Zoosk Notes by MGG and are subordinated to the MGG Loan debt of Debtor to MGG.

Also refrained from is the inclusion of MGG Investment Group LP, which, in the event of insolvency, as collateral agent of the MGG entities, would have a severance right (*Absonderungsrecht*) in the form of Debtor 's shares in its subsidiaries pledged to MGG. It is true that in the event of the inclusion of MGG Investment Group LP, a further group of creditors entitled to severance rights (*Absonderungsrechte*) would have to be formed. In the intercompany relationship, however, collateral held by MGG Investment Group LP as collateral agent is exclusively attributable to the MGG entities, which are already included in the vote on the Restructuring Plan as simple restructuring creditors. In addition, MGG Investment Group LP would be bound by the instructions of the MGG entities with regard to the exercise of the voting right in the vote on the Restructuring Plan. It therefore appears inexpedient to admit (indirectly) the same creditors with the same economic interest in another group to the vote.

Ebenfalls nicht in den Restrukturierungsplan einbezogen werden Gläubiger in Bezug auf den operativen Geschäftsbetrieb der Schuldnerin wie Lieferanten und Dienstleister.

Furthermore, creditors with respect to the operating business of Debtor such as suppliers and service providers are also not included in the Restructuring Plan.

### 3. Einteilung der Planbetroffenen in Gruppen

### 3. Allocation of the Plan-Affected Parties into groups

Für Zwecke der Abstimmung über den vorgeschlagenen Restrukturierungsplan sollen drei Gruppen gebildet werden.

For the purpose of voting on the presented Restructuring Plan, three groups shall be formed.

Die erste Gruppe besteht ausschließlich aus den Planbetroffenen Finanzgläubigern als einfache Restrukturierungsgläubiger. Es handelt sich dabei um die MGG-Gesellschaften, welche Gläubiger des MGG-Darlehens gegenüber der Schuldnerin sind.

The first group consists solely of the Plan-Affected Financial Creditors as simple restructuring creditors. This includes the MGG entities which are creditors of Debtor which, with respect to the MGG Loan.

Die zweite Gruppe besteht ebenfalls ausschließlich aus den MGG-Gesellschaften als Planbetroffene Finanzgläubiger, jedoch in ihrer Eigenschaft als Inhaber der Zoosk-Notes. Es besteht ein wirtschaftliches Interesse daran, eine weitere Gruppe zu bilden, weil die Forderungen aus den Zoosk-Notes im Verhältnis zu den Forderungen aus dem MGG-Darlehen nachrangig sind. Zudem ist Schuldner der Verbindlichkeiten aus den Zoosk-Notes allein die Schuldnerin, während die Schuldnerin nur eine von mehreren Haftenden für das MGG-Darlehen ist.

The second group shall consist of the MGG entities as Plan-Affected Financial Creditors as well, though in their capacity as holder of the Zoosk Notes. There is an economic interest in forming a further group because the claims from the Zoosk Notes against Debtor are subordinate in relation to MGG's claims against Debtor. In addition, Debtor alone is debtor of the liabilities from the Zoosk Notes, while Debtor is only one of several liable parties for the MGG Loan.

Die dritte Gruppe wird aus den Planbetroffenen Aktionären der Schuldnerin gebildet.

The third group shall consist of the Plan-Affected Shareholders.

Die Bildung einer weiteren Gruppe der Planbetroffenen Finanzgläubiger als Inhaber von gruppeninternen Drittsicherheiten für das MGG-Darlehen gemäß § 9 Abs. 1 S. 3 StaRUG ist nicht erforderlich, unterbleibt zumindest aber aus Vereinfachungsgründen, da in sämtlichen Gläubigergruppen ausschließlich MGG stimmberechtigt wäre (nur in

The formation of an additional group of the Plan-Affected Creditors as holders of intragroup third-party collateral for the MGG Loan pursuant to Sec. 9 (1) sent. 3 StaRUG is not necessary, but is at least omitted for reasons of simplification, since only MGG would be enti

der Gruppe der Planbetroffenen Aktionäre stimmen andere Planbetroffene als MGG ab). Gegen das Erfordernis einer eigenen Gruppe gemäß § 9 Abs. 1 S. 3 StaRUG spricht, dass die Planbetroffenen Finanzgläubiger auf etwaig aus § 2 Abs. 4 StaRUG resultierende Rechte verzichten. Darüber hinaus sind die Planbetroffenen Finanzgläubiger nach Maßgabe ihres jeweiligen Anteils am MGG-Darlehen in gleichem Maße durch den Teilforderungserlass des MGG-Darlehens betroffen und daher bereits in Gruppe 1 stimmberechtigt. Würde eine gesonderte Gruppe der Drittsicherheiteninhaber gebildet, würde in beiden Gruppen zusammen das Stimmgewicht der Planbetroffenen Finanzgläubiger höchstens dem Nominalbetrag der Forderungen aus dem MGG-Darlehen entsprechen (vgl. *Brünkmans* in: Jacoby/Thole, StaRUG, 1. Aufl. 2023, § 9 Rn. 23; Begr. RegE, BT-Drucks. 19/24181, S. 125 f.). Vor diesem Hintergrund rechtfertigt sich zur Vereinfachung die Zusammenfassung der Planbetroffenen Finanzgläubiger in Bezug auf das MGG-Darlehen in einer einzigen Gruppe, d.h. in Gruppe 1.

tled to vote in all creditor groups (Plan-Affected Parties other than MGG do only vote in the group of the Plan-Affected Shareholders). An argument against the requirement of a separate group pursuant to Sec. 9 (1) sent. 3 StaRUG is that the Plan-Affected Financial Creditors waive any rights resulting from Sec. 2 (4) StaRUG. In addition, the Plan-Affected Financial Creditors are affected to the same extent by the partial waiver of the MGG Loan in accordance with their respective share of the MGG Loan and are therefore already entitled to vote in Group 1. If a separate group of third-party collateral holders were formed, the voting weight of the Plan-Affected Financial Creditors in both groups together would correspond at most to the nominal amount of the claims under the MGG Loan (cf. *Brünkmans* in: Jacoby/Thole, StaRUG, 1st ed. 2023, Sec. 9 no. 23; Begr. RegE, BT-Drucks. 19/24181, p. 125 f.). Against this background, the pooling of the Plan-Affected Financial Creditors in relation to the MGG Loan into a single group, i.e. Group 1, is justified for the purpose of simplification.

### 4.    Vorgesehene Restrukturierungsbeiträge nach Gruppen

Gruppe 1 der Planbetroffenen wird die folgenden Restrukturierungsbeiträge erbringen:

- ein Teilforderungserlass der Darlehensverbindlichkeiten der Spark-Gruppe aus dem MGG-Darlehen gegenüber MGG, soweit sie zum Zeitpunkt der gerichtlichen Bestätigung dieses Restrukturierungsplans USD 100.000.000,00 übersteigen, d.h. voraussichtlich insgesamt USD 16.943.800,85 (inkl. Interim-Finanzierung und aufgelaufe-

### 4.    Planned restructuring contributions by group

Group 1 of the Plan-Affected Parties will make the following contributions to restructuring:

- a partial waiver of claims for the loan liabilities of Spark Group deriving from the MGG Loan to the extent such claims exceed USD 100,000,000.00 at the time of the court confirmation of the Restructuring Plan, i.e. an estimated total amount of USD 16,943,800.85 (incl. Interim Financing and accrued interest), which, for the avoidance of doubt, do

ner Zinsen), wobei sich der Teilforderungserlass nicht auf Darlehensverbindlichkeiten bezieht, die aufgrund der Interim-Finanzierung entstehen;

not include any new obligations incurred under the Interim Financing;

- eine Anpassung der Covenants der Finanzierungsvereinbarung mit MGG, die Wiederherstellung der Finanzierungsvereinbarung im Übrigen mit einem reduzierten Zinssatz von SOFR+8,50 Prozentpunkte, einem hinausgeschobenen Tilgungsplan und der ursprünglichen Laufzeit des MGG-Darlehens bis 11. März 2027 sowie das Einräumen einer neuen revolvierenden Kreditlinie in Höhe von maximal USD 10.000.000,00 durch MGG nach Abschluss des StaRUG-Verfahrens.

- a modification of covenants of the Financing Agreement with MGG, as the reinstatement of the remaining financing agreement with a reduced interest rate of SOFR+8.50 percentage points, a postponed amortization schedule and the original maturity ending on March 11, 2027 as well as the provision of a new revolving credit facility in the maximum amount of USD 10,000,000.00 by MGG after going through the StaRUG process.

Gruppe 2 der Planbetroffenen wird folgenden Restrukturierungsbeitrag erbringen:

Group 2 of the Plan-Affected Parties will make the following contribution to restructuring:

- ein vollständiger Forderungserlass betreffend die Zoosk-Notes.

- a full waiver of claims regarding the Zoosk Notes.

Gruppe 3 der Planbetroffenen wird folgenden Restrukturierungsbeitrag erbringen:

Group 3 of the Plan-Affected Parties will make the following contribution to restructuring:

- eine vereinfachte Kapitalherabsetzung auf null und damit Ausscheiden der Planbetroffenen Aktionäre.

- a simplified capital decrease to zero and thus the exit of the Plan-Affected Shareholders.

## 5.    Angaben zu den Stimmrechten

## 5.    Information on voting rights

Zur Annahme des Restrukturierungsplans ist grundsätzlich erforderlich, dass in jeder Gruppe auf die in dem Restrukturierungsplan zustimmenden Gruppenmitglieder mindestens drei Viertel der Stimmrechte in dieser Gruppe entfallen.

For the adoption of the Restructuring Plan, generally it is necessary that in each group at least three quarters of the voting rights in that group are held by the group members voting in favor of the Restructuring Plan.

Die Planbetroffenen Finanzgläubiger in Gruppe 1 stellen bezüglich des MGG-Darlehens eine Gruppe

With regard to the MGG Loan, the Plan-Affected Financial Creditors in Group 1 represent

von Kreditgebern dar, die einem Konsortium ähnelt. Das Stimmrecht der einzelnen MGG-Gesellschaften in Gruppe 1 bestimmt sich nach ihrem jeweiligen Anteil am MGG- Darlehen (inkl. bis zur Planvorlage aufgelaufener Zinsen und bereits abgerufener Beträge der Interim-Finanzierung). Die hieraus abzuleitenden Stimmrechte der Planbetroffenen Finanzinvestoren in Gruppe 1 ergeben sich im Einzelnen aus der als **Anlage 10** beigefügten Stimmrechtsliste.

Die Stimmrechte der Planbetroffenen Finanzgläubiger in Gruppe 2 bestimmen sich gleichermaßen bezogen auf den zum Zeitpunkt der Planvorlage ausstehenden Betrag der Zoosk-Notes. Die hieraus abzuleitenden Stimmrechte der Planbetroffenen Finanzinvestoren in Gruppe 2 ergeben sich im Einzelnen aus der als Anlage 10 beigefügten Stimmrechtsliste.

Das Stimmrecht der Planbetroffenen Aktionäre in Gruppe 3 bemisst sich nach ihrem Anteil am Grundkapital der Schuldnerin in Höhe von EUR 2.661.385,00. Die hieraus abzuleitenden voraussichtlichen Stimmrechte der Planbetroffenen Finanzinvestoren in Gruppe 3 ergeben sich im Einzelnen aus der als Anlage 10 beigefügten Stimmrechtsliste.

## VI.    Vergleichsrechnung zu den Befriedigungsaussichten mit und ohne Restrukturierungsplan

Eine von Ernst & Young GmbH Wirtschaftsprüfungsgesellschaft Strategy and Transactions erstellte Vergleichsrechnung zu den Befriedigungsaussichten mit und ohne Restrukturierungsplan ist dem Restrukturierungsplan als **Anlage 11** beigefügt.

a group of lenders similar to a syndicate. The voting rights of the individual MGG entities in Group 1 amount to their respective share in the MGG Loan (incl. accrued interest and already drawn amounts of the Interim Financing at the time of the plan submission). The voting rights of the Plan-Affected Financial Creditors in Group 1 resulting thereof are shown in detail in the voting rights list attached hereto as **Annex 10**.

The voting rights of the Plan-Affected Financial Creditors in Group 2 are determined in the same way in relation to the amount of Zoosk Notes outstanding at the time this Restructuring Plan is submitted. The voting rights of the Plan-Affected Financial Creditors in Group 2 resulting thereof are shown in detail in the voting rights list attached hereto as Annex 10.

The voting rights of the Plan-Affected Shareholders in Group 3 is based on the share of each Plan-Affected Shareholder of the registered share capital of Debtor amounting to EUR 2,661,385.00. The expected voting rights of the Plan-Affected Shareholders in Group 3 resulting thereof are shown in detail in the voting rights list attached hereto as Annex 10.

## VI.    Comparative calculation of the prospects of satisfaction with and without Restructuring Plan

A comparative calculation of the prospects of satisfaction with and without the Restructuring Plan prepared by Ernst & Young GmbH Wirtschaftsprüfungsgesellschaft Strategy and Transactions is attached hereto as **Annex 11**.

Aus dieser Vergleichsrechnung ergibt sich, dass die Planbetroffenen Aktionäre im einzig in Betracht kommenden Vergleichsszenario einer Insolvenz voraussichtlich ebenso keine Zahlungen erhielten wie unter den im Restrukturierungsplan vorgesehenen Maßnahmen. MGG als Planbetroffener Finanzgläubiger hat im Vorfeld bereits selbst abgewogen, welches die für ihn wirtschaftlich sinnvollste Alternative ist, und gelangte zum Entschluss, den vorliegenden Restrukturierungsplan zu unterstützen.

Dass einzig (noch) eine Insolvenz als Vergleichsszenario in Betracht kommt, ergibt sich daraus, dass die Schuldnerin die übrigen Möglichkeiten einer Sanierung bereits erfolglos ausgeschöpft hat. Hierzu wird auf die Ausführungen in vorstehendem Abschnitt B.III.1.e) verwiesen.

### VII. Gesetzliche Erklärungen

1. **Beseitigung der drohenden Zahlungsunfähigkeit und Sicherstellung der Bestandsfähigkeit**

Die in diesem Restrukturierungsplan vorgesehenen Maßnahmen sind geeignet, die drohende Zahlungsunfähigkeit der Schuldnerin zu beseitigen und die Bestandsfähigkeit der Schuldnerin sicherzustellen (§ 14 Abs. 1 StaRUG). Insoweit wird auf Anlage 3 (Erklärung zur Bestandsfähigkeit gemäß § 14 Abs. 1 StaRUG) und **Anlage 12** (Ergebnis- und Finanzplan gemäß § 14 Abs. 2 StaRUG) verwiesen. Die Durchfinanzierung und Bestandsfähigkeit der Schuldnerin als Holdinggesellschaft ergibt sich hierbei aus der Durchfinanzierung und Bestandsfähigkeit ihrer operativen Tochtergesellschaften. Aus diesem Grund wird dem Restrukturierungsplan kein Ergebnis- und Finanzplan auf Einzelgesellschaftsebene sondern eine konsolidierte Planung auf Gruppenebene zum Nachweis der

This comparative calculation shows that the Plan-Affected Shareholders would probably receive no value in the only possible comparison scenario of insolvency as they would under the measures provided for in the Restructuring Plan. MGG, as the Plan-Affected Financial Creditor, has already fully secured in advance itself, which is the most economically sensible alternative for MGG and came to the decision to support the present Restructuring Plan.

The fact that insolvency is (yet) the only possible comparison scenario results from the fact that Debtor has already exhausted all other possibilities for restructuring without success. In this respect, reference is made to the explanations in Section B.III.1.e) above.

### VII. Mandatory declarations

1. **Eliminating the threat of insolvency and ensuring viability**

The measures provided for in this Restructuring Plan are suitable to eliminate the Debtor's imminent illiquidity and to ensure the viability of Debtor (Sec. 14 (1) StaRUG). In this respect, reference is made to Annex 3 (Statement of viability pursuant to Sec. 14 (1) StaRUG) and **Annex 12** (profit and financial plan pursuant to Sec. 14 (2) StaRUG). Debtor's ability to finance itself and its viability as a holding company is derived from the ability of its operating subsidiaries to finance themselves and their viability. For this reason, the Restructuring Plan is not supplemented by a profit and financial plan at the level of the individual companies, but by a consolidated plan at the level of the

Durchfinanzierung und Bestandsfähigkeit beige-
fügt.

Spark Group to demonstrate the ability to fi-
nance and viability.

**2.    Gewährleistung der Zahlungsfähigkeit während des Restrukturierungszeitraums**

**2.    Ensuring solvency during the restructuring period**

Durch Umsetzung der in diesem Restrukturierungsplan vorgesehenen Maßnahmen ist die Zahlungsfähigkeit der Schuldnerin während des Zeitraums, während dessen die Gläubiger befriedigt werden sollen, gewährleistet (§ 14 Abs. 2 Sätze 2 und 3 StaRUG).

By implementing the measures provided for in this Restructuring Plan, the solvency of the Debtor is ensured during the period, during which the creditors are to be satisfied (Sec. 14 (2) sent**.** 2 and 3 StaRUG).

Welche Aufwendungen und Erträge für den Zeitraum zu erwarten sind, während dessen die Gläubiger befriedigt werden sollen, sowie welche Abfolge von Einnahmen und Ausgaben die Zahlungsfähigkeit der Schuldnerin in diesem Zeitraum gewährleisten, ergibt sich aus der als **Anlage 2** beigefügten Liquiditätsplanung. Auch insoweit wird aus den vorgenannten Gründen auf die Gruppenebene abgestellt.

What expenses and income are to be expected for the period during which the creditors are to be satisfied, as well as what sequence of income and expenses will ensure the Debtor's solvency during this period, can be seen from the liquidity planning attached as **Annex 2**. In this respect, reference is made to the Group level as well for the aforementioned reasons.

**VIII. Erläuterung weiterer Regelungen des Gestaltenden Teils des Plans**

**VIII. Explanation of further regulations of the Constructive Part of the plan**

Weitere Regelungen sollen im Gestaltenden Teil des Restrukturierungsplans nicht getroffen werden.

No further regulations shall be implemented in the Constructive Part of the Restructuring Plan.

| | |
|---|---|
| **C.  Gestaltender Teil** | **C.  Constructive Part** |
| **I.  Gruppenbildung** | **I.  Group formation** |
| Es werden folgende Gruppen gebildet: | The following groups are formed: |

- **Gruppe 1:** Planbetroffene Finanzgläubiger MGG bezüglich MGG-Darlehen;

- **Group 1**: Plan-Affected Financial Creditors MGG with respect to MGG Loan;

- **Gruppe 2:** Planbetroffene Finanzgläubiger MGG bezüglich Zoosk-Notes;

- **Group 2:** Plan-Affected Financial Creditors MGG with respect to Zoosk Notes;

- **Gruppe 3:** Planbetroffene Aktionäre der Schuldnerin.

- **Group 3:** Plan-Affected Shareholders of Debtor.

**II.  Regelungen zur Änderung der Rechtsstellung der Planbetroffenen nach Gruppen**

**II.  Stipulations for changing the legal status of the Plan-Affected Parties by group**

Mit Wirksamkeit dieses Restrukturierungsplans werden die Forderungen beziehungsweise Anteils- und Mitgliedschaftsrechte der Planbetroffenen den folgenden Rechtsgestaltungen unterworfen:

Upon effectiveness of this Restructuring Plan, the claims or share and membership rights of the Plan-Affected Parties shall be subject to the following legal structures:

**1.  Teilerlass und Anpassung MGG-Darlehen**

**1.  Partial waiver and amendment of MGG Loan**

Die unter vorstehendem Abschnitt B.V.1. aufgelisteten Planbetroffenen Finanzgläubiger erlassen ihre Forderungen aus dem MGG-Darlehen gegen die Schuldnerin und die anderen unter dem MGG-Darlehen mithaftenden Mitglieder der Spark-Gruppe, soweit sie am Tag der gerichtlichen Bestätigung des Restrukturierungsplans einen Betrag von USD 100.000.000,00 übersteigen d.h. voraussichtlich insgesamt USD 16.943.800,85 (inkl. Interim-Finanzierung und aufgelaufener Zinsen), wobei (i) sich der Teilforderungserlass, auf den Teil der Darlehensverbindlichkeiten aus dem MGG-Darle-

The Plan-Affected Financial Creditors listed in Section B.V.1. above shall waive their claims under the MGG Loan against the Debtor and the other members of the Spark Group jointly liable under the MGG Loan to the extent, as of the day of the court confirmation of the Restructuring Plan, such claims exceed USD 100,000,000.00, i.e. an estimated total amount of USD 16,943,800.85 (incl. Interim Financing and accrued interest), which, for the avoidance of doubt, (i) such partial waiver shall be with respect to the portion of the existing loan liabilities deriving from the MGG Loan existing

hen bezieht, der bereits vor der Interim-Finanzierung bestand, und (ii) der Teilforderungserlass jeden der unter vorstehendem Abschnitt B.V.1. aufgelisteten Planbetroffenen Finanzgläubiger *pro rata* betrifft. Der Teilforderungserlass des MGG-Darlehens ist auflösend bedingt auf die Nichteintragung der in diesem Restrukturierungsplan vorgesehenen Kapitalerhöhung in das Handelsregister der Schuldnerin bis zum 29. Februar 2024, 24:00 Uhr (MEZ). Die unter vorstehendem Abschnitt B.V.1. aufgelisteten Planbetroffenen Finanzgläubiger verzichten in Bezug auf den Teilforderungserlass auf etwaig aus § 2 Abs. 4 StaRUG resultierende Rechte.

Gemäß der als **Anlage 5** beigefügten Verpflichtungserklärung verpflichten sich MGG Investment Group LP sowie die Planbetroffenen Finanzgläubiger gegenüber der Schuldnerin und den weiteren Parteien der Finanzierungsvereinbarung vom 11. März 2022, ihre Rechte aus der Finanzierungsvereinbarung aufschiebend bedingt auf die Rechtskraft der gerichtlichen Bestätigung dieses Restrukturierungsplans und die Durchführung der hierin vorgesehenen Kapitalmaßnahmen durch Eintragung im Handelsregister anzupassen. Die Tochtergesellschaften der Schuldnerin, die als Darlehensnehmer, Garanten oder sonstige Drittsicherheitengeber unter der Finanzierungsvereinbarung mithaften, haben insoweit korrespondierende, als **Anlage 6** beigefügte Erklärungen abgegeben.

## 2.    Erlass der Zoosk-Notes

Die Planbetroffenen Finanzgläubiger erlassen ihre Forderungen aus den Zoosk-Notes in voller Höhe. Der Erlass der Zoosk Notes ist auflösend bedingt auf die Nichteintragung der in diesem Restrukturierungsplan vorgesehenen Kapitalerhöhung in das Handelsregister der Schuldnerin bis zum 29. Februar 2024, 24:00 Uhr (MEZ).

prior to the Interim Financing and (ii) the partial waiver shall affect each of the Plan-Affected Financial Creditors listed in Section B.V.1. on a *pro rata* basis. The partial waiver of the MGG Loan shall cease to be effective (*ist auflösend bedingt*) if the capital increase provided for in this Restructuring Plan has not been registered with the commercial register of Debtor until February 29, 2024, 24:00 hours (CET). The Plan-Affected Financial Creditors listed in Section B.V.1. above shall waive any rights according to Sec. 2 (4) StaRUG with regard to the partial waiver.

Pursuant to the letter of undertaking attached hereto as **Annex 5**, MGG Investment Group LP as well as the Plan-Affected Financial Creditors undertake vis-à-vis Debtor and the other parties to the Financing Agreement dated March 11, 2022, to adjust their rights under the Financing Agreement, subject to the condition precedent of the court confirmation of this Restructuring Plan becoming final and the consummation of the capital measures stipulated herein by registration in the commercial register. The subsidiaries of Debtor, which are jointly liable under the Financing Agreement as borrowers, guarantors or other third-party guarantors, made corresponding declarations in this respect, attached as **Annex 6**.

## 2.    Waiver of Zoosk Notes

The Plan-Affected Financial Creditors waive their claims under the Zoosk Notes in full. The waiver of the Zoosk Notes shall cease to be effective (*ist auflösend bedingt*) if the capital increase provided for in this Restructuring Plan has not been registered with the commercial register of Debtor until February 29, 2024, 24:00 hours (CET).

3. **Aktionäre**

Die Planbetroffenen Aktionäre stimmen den in Abschnitt C.III. des Restrukturierungsplans geregelten Kapitalmaßnahmen zu und scheiden als bisherige Aktionäre vollständig aus.

### III. Gesellschaftsrechtliche Maßnahmen

1. **Vereinfachte Kapitalherabsetzung auf null und gleichzeitige Erhöhung des herabgesetzten Grundkapitals gegen Bareinlage mit Bezugsrechtsausschluss**

Das Grundkapital der Schuldnerin, das gegenwärtig EUR 2.661.385,00 (in Worten: zwei Millionen sechshunderteinundsechzigtausend dreihundertfünfundachtzig Euro) beträgt und in 2.661.385 (in Worten: zwei Millionen sechshunderteinundsechzigtausend dreihundertfünfundachtzig) auf den Namen lautende Stückaktien eingeteilt ist, wird um EUR 2.661.385,00 (in Worten: zwei Millionen sechshunderteinundsechzigtausend dreihundertfünfundachtzig Euro) auf EUR 0,00 (in Worten: null Euro) herabgesetzt. Durch diese Herabsetzung entfällt auf jede Stückaktie ein anteiliger Betrag des Grundkapitals von EUR 0,00 statt wie bisher von EUR 1,00. Die Kapitalherabsetzung erfolgt nach den Vorschriften über die vereinfachte Kapitalherabsetzung (Art. 5 Verordnung (EG) Nr. 2157/2001 des Rates vom 8. Oktober 2001 über das Statut der Europäischen Gesellschaft (SE) i. V. m. §§ 229 ff. AktG) in voller Höhe zum Zwecke des Ausgleichs von Wertminderungen und zur Deckung sonstiger Verluste (vgl. Abschnitt B.IV.1.b)). Die Kapitalherabsetzung erfolgt soweit möglich durch Zusammenlegung der Aktien.

3. **Shareholders**

The Plan-Affected Shareholders agree to the capital measures stipulated in Section C.III. of the Restructuring Plan and cease to be shareholders in full.

### III. Corporate law measures

1. **Simplified capital decrease to zero and simultaneous increase of the reduced share capital against cash contribution with exclusion of subscription rights**

The registered share capital of Debtor, which currently amounts to EUR 2,661,385.00 (in words: two million six hundred sixty one thousand three hundred eighty five Euro) and is subdivided into 2,661,385 (in words: two million six hundred sixty one thousand three hundred eighty five) registered no-par value shares, shall be decreased by EUR 2,661,385.00 (in words: two million six hundred sixty one thousand three hundred eighty five Euro) to EUR 0,00 (in words: zero Euro). As a result of this decrease, each no-par value share will account for a proportionate amount of the share capital of EUR 0.00 instead of EUR 1.00 as previously. The capital decrease is carried out in accordance with the provisions on simplified capital reduction (Art. 5 Council Regulation (EC) No 2157/2001 of October 8, 2001 on the Statute for a European company (SE) in conjunction with Sec. 229 et. seq. AktG in full for the purpose of offsetting impairment losses and covering other losses (cf. Section B.IV.1.b)). To the extent possible, the capital reduction takes place by amalgamation of shares.

Der Verwaltungsrat der Schuldnerin wird ermächtigt, die weiteren Einzelheiten der Herabsetzung des Grundkapitals und ihrer Durchführung festzusetzen.

Das Grundkapital der Schuldnerin wird sodann von EUR 0,00 (in Worten: null Euro) um EUR 120.000,00 (in Worten: einhundertzwanzigtausend Euro) auf EUR 120.000,00 (in Worten: einhundertzwanzigtausend Euro) durch Ausgabe von 120.000 neuen, auf den Namen lautende Stückaktien erhöht. Die neuen Aktien mit je einem anteiligen Betrag am Grundkapital von EUR 1,00 werden zu einem Ausgabebetrag von EUR 1,37 je neuer Aktie ausgegeben. Der Ausgabebetrag setzt sich zusammen aus dem geringsten Ausgabebetrag (§ 9 Abs. 1 AktG) in Höhe von EUR 1,00 und einem durch Barleistung zu erbringenden korporationsrechtlichen Agio im Sinne des § 272 Abs. 2 Nr. 1 HGB in Höhe von EUR 0,37. Der Gesamtausgabebetrag für sämtliche 120.000 aus der Barkapitalerhöhung hervorgehenden Aktien beträgt mithin EUR 164.400,00.

Die aus der Barkapitalerhöhung hervorgehenden neuen Aktien sind ab dem 1. Januar 2023 gewinnbezugsberechtigt.

Das Bezugsrecht der Planbetroffenen Aktionäre wird ausgeschlossen. Zur Zeichnung aller neuen Aktien wird allein

> MGG SPV 33 LLC, eine nach dem Recht von Delaware gegründete Gesellschaft mit beschränkter Haftung (*Limited Liability Company*) mit Sitz in New York, Vereinigten Staaten,

zugelassen.

The Debtor's administrative board is authorized to determine the further details of the reduction of the share capital and its implementation.

The registered share capital of Debtor shall thereafter be increased from EUR 0.00 (in words: zero Euro) by EUR 120,000.00 (in words: one hundred twenty thousand Euro) to EUR 120,000.00 (in words: one hundred twenty thousand Euro) by way of issuance of 120,000 new registered no-par value shares. The new shares, each with a pro rata amount of the share capital of EUR 1.00, will be issued at an issue price of EUR 1.37 per new share. The issue price comprises the minimum issue price of EUR 1.00 (Sec. 9 (1) AktG) and a corporate share premium within the meaning of Sec. 272 (2) no. 1 HGB of EUR 0.37 to be paid in cash. The total issue price for all 120,000 shares resulting from the cash capital increase is therefore EUR 164,400.00.

The new shares resulting from the cash capital increase are entitled to dividends from January 1, 2023.

The subscription rights of the Plan-Affected Shareholders are excluded. Only

> MGG SPV 33 LLC, a limited liability company incorporated under the laws of Delaware, with its registered office in New York, United States,

will be admitted to subscribe for all new shares.

Der Gesamtausgabebetrag (einschließlich des korporationsrechtlichen Agios) ist unmittelbar nach Zeichnung (Ausfertigung eines vollständigen Zeichnungsscheins) in voller Höhe zur Einzahlung fällig und auf ein von der Schuldnerin zu benennendes Konto einzuzahlen.

The total issue price (including the corporate share premium) is due for payment in full immediately after subscription (issue of a complete subscription certificate) and is to be paid into an account to be designated by the Debtor.

Der Verwaltungsrat der Schuldnerin wird ermächtigt, die weiteren Einzelheiten der Erhöhung des Grundkapitals und ihrer Durchführung festzusetzen.

The Debtor's administrative board is authorized to determine the further details of the increase of the share capital and its implementation.

**2. Satzungsänderungen**

**2. Amendment of the Articles of Association**

**a) Änderung von Grundkapital und Aktien in der Satzung der Schuldnerin**

**a) Amendment of share capital and shares in the Articles of Association of Debtor**

§ 4 Abs. 1 und Abs. 2 der Satzung der Schuldnerin wird in Anpassung an die in Abschnitt C.III.1. vorgesehenen Kapitalmaßnahmen geändert und wie folgt neu gefasst:

To reflect the capital measures provided for in Section C.III.1., § 4 para. 1 and para. 2 of the Articles of Association of Debtor is amended and restated as follows:

**§ 4**
**Höhe und Einteilung des Grundkapitals**

**§ 4**
**Amount and Subdivision of the Share Capital**

(1) Das Grundkapital der Gesellschaft beträgt EUR 120.000,00 (in Worten: einhundertzwanzigtausend Euro).

(1) The share capital of the Company amounts to EUR 120,000.00 (in words: one hundred twenty thousand Euro).

(2) Das Grundkapital ist eingeteilt in 120.000 auf den Namen lautende Stückaktien.

(2) The share capital of the Company is subdivided into 120,000 registered no-par value shares.

**b)  Aufhebung des Genehmigten Kapitals 2022 gemäß § 4 Abs. 3 der Satzung der Schuldnerin**

Die in § 4 Abs. 3 der Satzung der Schuldnerin erteilte Ermächtigung des Verwaltungsrats, das Grundkapital um bis zu insgesamt EUR 1.064.554,00 durch Ausgabe von bis zu 1.064.554 neuen, auf den Namen lautenden Stückaktien zu erhöhen (Genehmigtes Kapital 2022), wird aufgehoben.

§ 4 Abs. 3 der Satzung der Schuldnerin wird ersatzlos gestrichen.

**c)  Aufhebung des Genehmigten Kapitals 2020/I gemäß § 4 Abs. 4 der Satzung der Schuldnerin**

Die in § 4 Abs. 4 der Satzung der Schuldnerin erteilte Ermächtigung des Verwaltungsrats, das Grundkapital um bis zu insgesamt EUR 266.138,00 durch Ausgabe von bis zu 266.138 neuen, auf den Namen lautenden Stückaktien zu erhöhen (Genehmigtes Kapital 2020/I), wird aufgehoben.

§ 4 Abs. 4 der Satzung der Schuldnerin wird ersatzlos gestrichen.

**d)  Aufhebung des Bedingten Kapitals 2020/I gemäß § 4 Abs. 5 der Satzung der Schuldnerin**

Die von der ordentlichen Hauptversammlung der Schuldnerin am 29. Juli 2020 erteilte Ermächtigung zur Ausgabe von Wandelschuldverschreibungen und/oder Optionsschuldverschreibungen sowie die in diesem Zusammenhang in § 4 Abs. 5 der Satzung der Schuldnerin geregelte bedingte Erhöhung des Grundkapitals der Schuldnerin um bis zu

**b)  Cancellation of the Authorized Capital 2022 pursuant to Art. 4 para. 3 of the Articles of Association of Debtor**

The authorization of the administrative board granted in § 4 para. 3 of the Articles of Association of Debtor to increase the share capital by up to a total of EUR 1,064,554.00 by issuing up to 1,064,554 new no-par value registered shares (Authorized Capital 2022) is cancelled.

§ 4 para. 3 of the Articles of Association of Debtor shall be deleted without replacement.

**c)  Cancellation of the Authorized Capital 2020/I pursuant to Art. 4 para. 4 of the Articles of Association of Debtor**

The authorization of the administrative board granted in § 4 para. 4 of the Articles of Association of Debtor to increase the share capital by up to a total of EUR 266,138.00 by issuing up to 266,138 new no-par value registered shares (Authorized Capital 2020/I) is cancelled.

§ 4 para. 4 of the Articles of Association of Debtor shall be deleted without replacement.

**d)  Cancellation of Conditional Capital 2020/I pursuant to Art. 4 para. 5 of the Articles of Association of Debtor**

The authorization granted by the Debtor's ordinary general meeting of July 29, 2020 to issues convertible and/or option bonds as well as the corresponding conditional increase of the share capital of Debtor by up to EUR 1,330,692.00 by issuing up to 1,330,692

EUR 1.330.692,00 durch Ausgabe von bis zu 1.330.692 neuen, auf den Namen lautenden Stückaktien (Bedingtes Kapital 2020/I), werden aufgehoben.

§ 4 Abs. 5 der Satzung der Schuldnerin wird ersatzlos gestrichen.

### 3. Zuzahlung in die freie Kapitalrücklage

MGG Investor verpflichtet sich des Weiteren, eine schuldrechtliche, von der Kapitalerhöhung gemäß Abschnitt C.III.1. unabhängige Zuzahlung in Höhe von bis zu USD 8.880.000,00 in die freie Kapitalrücklage der Schuldnerin gemäß § 272 Abs. 2 Nr. 4 HGB einzuzahlen und gibt hierzu die als **Anlage 9** beigefügte Erklärung gemäß § 15 Abs. 3 StaRUG ab.

### 4. Handelsregisteranmeldung

Die Kapitalherabsetzung, die Barkapitalerhöhung und ihre Durchführung sowie die Satzungsänderungen sind von den geschäftsführenden Direktoren und, im Falle der Barkapitalerhöhung und ihrer Durchführung zusätzlich vom Vorsitzenden des Verwaltungsrats unverzüglich zur Eintragung in das Handelsregister der Schuldnerin anzumelden.

### IV. Weitere Regelungen

### 1. Bereitstellung von Mitteln gemäß § 64 Abs. 3 StaRUG

Gemäß § 64 Abs. 3 StaRUG werden Mittel in Höhe von EUR 100.000,00 durch Hinterlegung auf einem Sonderkonto der Schuldnerin bereitgestellt für den Fall, dass ein Planbetroffener nachweist, dass er

new no-par value registered shares (Conditional Capital 2020/I), as provided for in § 4 para. 5 of the Articles of Association of Debtor, are cancelled.

§ 4 para. 5 of the Articles of Association of Debtor shall be deleted without replacement.

### 3. Cash contribution to the capital reserve

MGG Investor further undertakes to pay a contractual cash contribution, independent from the capital increase under Section C.III.1. above, in the amount of up to USD 8,880,000.00 into the free capital reserve of the Debtor under Sec. 272 (2) no. 4 HGB and submits the declaration pursuant to Sec. 15 (3) StaRUG attached hereto as **Annex 9**.

### 4. Registration with commercial register

The capital reduction, the cash capital increase and its implementation as well as the amendments to the Articles of Association shall be notified without undue delay for entry in the commercial register of Debtor by the managing directors and, in the case of the cash capital increase and its implementation, additionally by the chairman of the administrative board.

### IV. Further Provisions

### 1. Provision of funds pursuant to Sec. 64 (3) StaRUG

Pursuant to Sec. 64 (3) StaRUG, funds in the amount of EUR 100,000.00 shall be made available by deposit in a special account of Debtor in the event that a Plan-Affected Party

durch den Restrukturierungsplan voraussichtlich schlechter gestellt wird, als er ohne Restrukturierungsplan stünde. Die Schuldnerin ist berechtigt, nicht jedoch verpflichtet, den hinterlegten Betrag zu erhöhen, falls das Restrukturierungsgericht dies für erforderlich hält, um eine Entscheidung zugunsten der Schuldnerin zu treffen.

Soweit ein Nachweis über eine etwaige Schlechterstellung gelingen sollte, ist die Schuldnerin verpflichtet, nach Verkündung einer rechtskräftigen Entscheidung im Sinne von § 64 Abs. 3 Satz 2 StaRUG den gerichtlich festgesetzten Betrag zu Lasten der hinterlegten Mittel an den Planbetroffenen auszuzahlen, der den Antrag auf Versagung der Bestätigung des Restrukturierungsplans gemäß § 64 Abs. 1 StaRUG gestellt hat. Freiwerdende Beträge stehen der Schuldnerin zu.

### 2.    Offensichtliche Fehler

Die Schuldnerin wird bevollmächtigt, offensichtliche Fehler des Restrukturierungsplans zu berichtigen.

### 3.    Salvatorische Klausel

Sollte eine Bestimmung dieses Restrukturierungsplans unwirksam sein oder werden, so berührt dies die Wirksamkeit der übrigen Bestimmungen nicht. Die unwirksame Bestimmung ist durch eine wirksame zu ersetzen, die inhaltlich dem Gewollten möglichst weitgehend entspricht. Gleiches gilt für eine Lücke.

proves that it is likely to be placed in worse position as a result of the Restructuring Plan than it would have been without the Restructuring Plan. Debtor shall be entitled, but not obliged, to increase the amount deposited if the Restructuring Court deems it necessary to do so in order to reach a decision in favor of Debtor.

Insofar as proof of any worse position can be furnished, Debtor shall be obliged, following the pronouncement of a final decision within the meaning of Sec. 64 (3) sent. 2 StaRUG, to pay the amount determined by the court to the debit of the deposited funds to the Plan-Affected Party which filed the application for refusal of confirmation of the Restructuring Plan pursuant to Sec. 64 (1) StaRUG. Debtor shall be entitled to any amounts released.

### 2.    Obvious mistakes

Debtor is authorized to correct obvious mistakes of the Restructuring Plan.

### 3.    Severability Clause

If any provision of this Restructuring Plan is or becomes invalid, this shall not affect the validity of the remaining provisions. The invalid provision shall be replaced by a valid provision whose content corresponds as closely as possible to what was intended. The same shall apply in the event of an omission.

**4.    Gerichtliches Planabstimmungsverfahren; keine Planüberwachung**

Die Abstimmung über den Restrukturierungsplan wird im Wege eines gerichtlichen Planabstimmungsverfahrens gemäß §§ 23, 45 StaRUG durchgeführt.

Eine Planüberwachung ist nicht vorgesehen.

**4.    Court proceeding for voting on the plan; no plan monitoring**

The vote on the Restructuring Plan shall be conducted by way of a court plan voting procedure pursuant to Sec. 23, 45 StaRUG.

No plan monitoring is provided.

| **Anlagen** | | **Annexes** | |
|---|---|---|---|
| **Anlage 1** | Liquiditätsplanung unter Außeracht-lassung der Planmaßnahmen und der auf die Durchführung des Restruktu-rierungsverfahrens bedingten Interim-Finanzierung | **Annex 1** | Liquidity planning not consider-ing the plan measures and the In-terim Financing conditional on the implementation of the re-structuring proceedings |
| **Anlage 2** | Liquiditätsplan | **Annex 2** | Liquidity statement |
| **Anlage 3** | Erklärung zur Bestandsfähigkeit ge-mäß § 14 Abs. 1 StaRUG | **Annex 3** | Statement of viability according to Sec. 14 (1) StaRUG |
| **Anlage 4** | Pro-Forma-Einzelbilanz der Schuld-nerin zum 30. September 2023 | **Annex 4** | Pro forma individual balance sheet of Debtor as of Septem-ber 30, 2023 |
| **Anlage 5** | Erklärung von MGG über die Abände-rung der Finanzierungsvereinbarung vom 11. März 2022 | **Annex 5** | Declaration of MGG regarding amendments of the Financing Agreement dated March 11, 2022 |
| **Anlage 6** | Erklärung der Spark-Gruppengesell-schaften gemäß § 15 Abs. 3 StaRUG über die Abänderung der Finanzie-rungsvereinbarung vom 11. März 2022 | **Annex 6** | Declaration of Spark Group members according to Sec. 15 (3) StaRUG regarding amendments of the Financing Agreement dated March 11, 2022 |
| **Anlage 7** | Beschluss des Verwaltungsrats zur Auflösung der Kapitalrücklage vom 2. November 2023 | **Annex 7** | Administrative board resolution on dissolution of capital reserve dated November 2, 2023 |
| **Anlage 8** | Zeichnungszusage von MGG Investor gemäß § 15 Abs. 3 StaRUG | **Annex 8** | Pre-subscription declaration of MGG Investor pursuant to Sec. 15 (3) StaRUG |

| | | | |
|---|---|---|---|
| **Anlage 9** | Erklärung über Erbringung einer Einlage in die freie Kapitalrücklage von MGG Investor gemäß § 15 Abs. 3 StaRUG | **Annex 9** | Equity commitment letter of MGG Investor pursuant to Sec. 15 (3) StaRUG |
| **Anlage 10** | Stimmrechtsliste | **Annex 10** | Voting rights list |
| **Anlage 11** | Vergleichsrechnung | **Annex 11** | Comparative Calculation |
| **Anlage 12** | Ergebnis- und Finanzplan | **Annex 12** | Profit and financial plan |

## **Schedule A**

**Persons or Bodies Authorized to Administer Foreign Proceedings**

1.  Mr. Adrian Frankum
    485 Lexington Avenue, 10th Floor, New York, New York, United States 10017

**<u>Schedule B</u>**

**List of Pending U.S. Litigation**

To the best of the Foreign Representative's knowledge and belief, the following is a list of pending litigation in which Spark Networks, Inc. is a party in the United States at the time of the filing of this petition:

| Case | Name and Address |
|---|---|
| *Doe v. Termehi*, No. 22VECV01943 (Cal. Super. Ct. Los Angeles Cnty., filed November 9, 2022) | **Law Offices of Christopher G. Hook**<br>Christopher G. Hook, Esq.<br>1801 Century Park East, 25th Floor<br>Los Angeles, California 90067-2336 |

**<u>Schedule C</u>**

**List of Entities Subject to Provisional Relief Request**

None.